**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DICKSTEIN SHAPIRO, LLP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 08-CV-226 (PLF) |
| | ) |
| U.S. DEPARTMENT OF DEFENSE, | ) |
| ET AL. | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, defendants, the United States Department of Defense, and

the Department of the Navy,  respectfully move for summary judgment on the claims of plaintiff

Dickstein Shapiro, LLP.  In support thereof, the Court is respectfully referred to Defendants'

Statement of Material Facts, the accompanying Memorandum in Support of Defendants' Motion

for  Summary Judgment, and the supporting declarations and exhibits.

Dated: August 21, 2008                        Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General, Civil Division

JEFFREY A. TAYLOR
United States Attorney

JOHN R. TYLER
Senior Trial Counsel

 _/s/_ William B. Jaffe
WILLIAM B. JAFFE
Trial Attorney
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| DICKSTEIN SHAPIRO, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-CV-226 (PLF) |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, | ) | |
| ET AL. | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Dated: August 22, 2008

GREGORY G. KATSAS
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JOHN R. TYLER
Senior Trial Counsel

_____ /s/ William B. Jaffe _____
WILLIAM B. JAFFE
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Tel: (202) 353-7633
Attorneys for Defendants

## TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
      BECAUSE THEIR COMPONENTS HAVE CONDUCTED
      REASONABLE SEARCHES AND HAVE WITHHELD ONLY
      INFORMATION EXEMPT FROM DISCLOSURE UNDER FOIA. . . . . . . . . . . . . . . 6

I.     STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.    THE DOD COMPONENTS HAVE CONDUCTED
       REASONABLE SEARCHES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.   DOD HAS PROPERLY WITHHELD
       INFORMATION PURSUANT TO FOIA EXEMPTIONS . . . . . . . . . . . . . . . . 10

      A.    DoD Properly Withheld Information Under
           Exemption 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           1.    Information Related to Military Plans and
                Operations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

           2.    Intelligence Data about Al Salami and Intelligence
                Sources. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

           3.    Intelligence Assessments and Conclusions. . . . . . . . . . . . . . . . . 16

           4.    Information Concerning Intelligence Methods. . . . . . . . . . . . . . 17

      B.    DoD Properly Withheld Information Under
           Exemption 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      C.    DoD Properly Withheld Personally Identifying Information
           of Individuals Under Exemptions 3 and/or 6. . . . . . . . . . . . . . . . . . . . 22

           1.    Withholdings Under Exemption 3. . . . . . . . . . . . . . . . . . . . . . . 22

        2.     Withholdings Under Exemption 6. . . . . . . . . . . . . . . . . . . . . . . . . 24

    D.    DoD Properly Withheld Information Under Exemption 5. . . . . . . . . . . . . 26

        1.     Deliberative Process Privilege. . . . . . . . . . . . . . . . . . . . . . . . . . 26

        2.     Attorney Work Product Privilege. . . . . . . . . . . . . . . . . . . . . . . . 29

    E.    DoD Properly Withheld Information Under FOIA

        Exemption 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        1.     Personally Identifying Information Withheld Under

             Exemption 7(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        2.     Confidential Sources Information Withheld Under

             Exemption 7(D. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

        3.     Law Enforcement Techniques, Procedures and Guidelines

             Withheld Under Exemption 7(E). . . . . . . . . . . . . . . . . . . . . . . 34

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Aronson v. I.R.S., 973 F.2d 962 (1st Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

Ass'n of Retired R.R. Workers, Inc. v. Railroad Retirement Bd.,
    830 F.2d 331 (D.C. Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Azmy v. Dep't of Defense, -- F. Supp. 2d --, No. 06. . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 22

Blanton v. Dep't of Justice, 63 F. Supp. 2d 35 (D.D.C. 1999). . . . . . . . . . . . . . . . . . . . . . 19, 35

CIA v. Sims, 471 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Center for Nat'l Sec. Studies v. Dep't of Justice, 331 F.3d 918
    (D.C. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 11

Center for Nat'l Sec. Studies v. INS, No. 87-2068, 1990 WL 236133
    (D.D.C. Dec. 19, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

Coastal Delivery Corp. v. Customs Services, 272 F. Supp. 2d 958
    (C.D. Cal. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051
    (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Davis v. Dep't of Justice, 968 F.2d 1276 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 30, 31

Dep't of Justice v. Landano, 508 U.S. 165 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Department of Justice v. Reporters Comm. for Freedom of the Press,
    489 U.S. 749 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 31

Department of State v. Washington Post Co., 456 U.S. 595 (1982). . . . . . . . . . . . . . . . . . . . 24

Department of the Air Force v. Rose, 425 U.S. 352 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Dow Jones & Co., Inc. v. U.S. Dep't of Justice, 917 F.2d 571
    (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 33

Dunkelberger v. Dep't of Justice, 906 F.2d 779 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . 31

FBI v. Abramson, 456 U.S. 615 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 23

Frugone v. CIA, 169 F.3d 772 (D.C. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.,
    656 F.2d 856 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . .  7

Halperin v. CIA, 629 F.2d 144 (D.C. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Halkin v. Helms, 598 F.2d 1 (D.C. Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Hickman v. Taylor, 329 U.S. 495 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Hogan v. Huff, No. 00 Civ. 6753, 2002 WL 1359722 (S.D.N.Y. June 21, 2002). . . . . . . . . . .  15

Hopkins v. U.S. Dep't of Housing and Urban Dev., 929 F.2d 81 (2d Cir. 1991). . . . . . . . . . .  27

James v. Secret Service, 06-C 2007 WL 2111034 (D.D.C. July 23, 2007). . . . . . . . . . . . . . . .  33

John Doe Agency v. John Doe Corp., 493 U.S. 146 (1989). . . . . . . . . . . . . . . . . . . . . . . . . .  6

Judicial Watch, Inc. v. Exp. Imp. Bank, 108 F. Supp. 2d 19 (D.D.C. 2000). . . . . . . . . . . . . . .  29

Krikorian v. Dep't of State, 984 F.2d 461 (D.C. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . .  8

Lesar v. Dep't of Justice, 636 F.2d 472 (D.C. Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

Long v. OPM, No. 05-CV-1522, 2007 U.S. DIST. LEXIS 72887
    (N.D.N.Y. Sept. 30, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 26, 28

Mapother v. Department of Justice, 3 F.3d 1533 (D.C. Cir. 1993). . . . . . . . . . . . . . . . . . . . . .  27

Martin v. Department of Justice, 488 F.3d 446 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . .  31

Martin v. Office of Special counsel, 819 F.2d 1181 (D.C. Cir. 1987). . . . . . . . . . . . . . . . .  29, 30

Meeropol v. Meese, 790 F.2d 942 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

iv

Military Audit Project v. Casey, 656 F.2d 724 (D.C. Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . .  11

NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214 (1978).. . . . . . . . . . . . . . . . . . . . . . . . . .  6

NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . .  26, 27

Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157 (2004). . . . . . . . . . . . . . . . . . . . . .  31

Oglesby v. Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . .  7

Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Reed v. NLRB, 927 F.2d 1249 (D.C. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168 (1975). . . . . . . . . . . . .  27, 28

SafeCard Services, Inc. v. SEC, 926 F.2d 1197 (D.C. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . .  7

Schiller v. NLRB, 964 F.2d 1205 (D.C. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Schrecker v. U.S. Dep't of Justice, 254 F.3d 162 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . .  15

Schwarz v. Dep't of Treasury, 131 F. Supp. 2d 142 (D.D.C. 2000). . . . . . . . . . . . . . . . . . . . .  34

Stern v. FBI, 737 F.2d 84 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31

Students Against Genocide v. Dep't of State, 257 F.3d 828 (D.C. Cir. 2001). . . . . . . . . . . . . .  11

Summers v. Dep't of Justice, 140 F.3d 1077 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . .  8

Sussman v. U.S. Marshals Service, 494 F.3d 1106 (D.C. Cir. 2007). . . . . . . . . . . . . . .  19, 30, 31

Taylor v. Dep't of the Army, 684 F.2d 99 (D.C. Cir. 1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Tax Analysts v. I.R.S., F.3d 607 (D.C. Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Texas Independent Producers Legal Action Ass'n v. IRS, 605 F. Supp. 538
      (D.D.C. 1984) (quoting *Perry*, 684 F.2d at 127). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

Voinche v. FBI, 940 F. Supp. 323 (D.D.C. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

Weisberg v. Dep't of Justice, 745 F.2d 1476 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Williams v. FBI, 69 F.3d 1155 (D.C. Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Wolf v. C.I.A, 473 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

Wolfe v. HHS, 839 F.2d 768 (D.C. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

## STATUTES

5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 552(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5 U.S.C. §552(b)(7)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5 U.S.C. § 552(b)7(E)        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

5 U.S.C. § 552(b)7(F). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

10 U.S.C. § 424. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

10 U.S.C. § 130b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## FEDERAL RULE

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DICKSTEIN SHAPIRO, LLP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-CV-226 (PLF) |
| | ) | |
| U.S. DEPARTMENT OF DEFENSE, | ) | |
| ET AL. | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

Attorneys for Salah Ali Abdullah Ahmed Al Salami ("Al Salami"), an alien who had been

detained as an enemy combatant by the Department of Defense and the Department of the Navy

("defendants" or collectively "DoD") at the Guantanamo Bay Naval Base in Cuba

("Guantanamo"), filed this action against defendants alleging that defendants improperly

withheld agency records responsive to a Freedom of Information Act ("FOIA") request seeking

all records relating to Al Salami. *See* 5 U.S.C. § 552. Defendants now move for summary

judgment with respect to information withheld from responsive documents located in all DoD

components, offices and organizations that have conducted a search.[1]

As demonstrated by the accompanying declarations of ten DoD components, as well as

the declarations of the Federal Bureau of Investigation ("FBI") and the Department of State

---

[1] Eleven Documents, totaling 42 pages, were referred by DoD to the Department of State ("State") for its review. Grafeld Decl. ¶ 4. 94 pages were referred by DoD to the FBI for its review. Hardy Decl. ¶¶ 5-6.

("State"),[2] DoD has discharged its statutory obligations under FOIA by conducting reasonably adequate searches and by withholding only information protected from disclosure by a FOIA exemption – namely, Exemptions 1, 2, 3, 5, 6 and 7, 5 U.S.C. §§ 552(b)(1), (2), (3), (5), (6) & (7).

Some of the withheld information involves classified intelligence methods, codes, sources, intelligence data relating to the plaintiff and other individuals of intelligence interest, and information relating to foreign relations and foreign activities of the United States, including confidential sources. Such information is properly withheld under Exemption 1 because the disclosure of such information reasonably could be expected to result in damage to national security.

In addition, a substantial amount of the withheld information falls within Exemption 2, which protects internal agency guidelines and practices, the disclosure of which may risk circumvention of the law. Information withheld in this category, which overlaps significantly with information already protected from disclosure under Exemption 1, consists primarily of information that reflects internal guidelines and methods regarding investigative steps, interrogation techniques, assessment and analysis of intelligence data, threat level and intelligence value, and practices for gathering intelligence. DoD and the FBI have determined that if such information were to be disclosed, it would allow hostile individuals and entities to develop countermeasures or otherwise thwart the government's intelligence gathering efforts and

---

[2] An index of the supporting declarations, including the DoD components or outside agencies that the declarants represent, is attached at the end of this brief. When referring to the declarations, this brief will cite only the declarant's last name and the relevant paragraph number(s).

compromise the United States' defense against transnational terrorism.

Moreover, pursuant to Exemptions 3, 6, and 7(C), DoD, and the FBI have withheld personally identifying information of law enforcement and other government personnel, third parties mentioned in the responsive documents, third parties interviewed by DoD or the FBI, and the subjects of the FBI or DoD law enforcement components' investigations. While the disclosure of some of this information is exempt by a specific statute, the remainder is also protected from disclosure because the balancing of these individuals' privacy interests outweigh any public interest in the disclosure. Indeed, the nature of responsive information in this case relates to the government's investigation of suspected terrorists and their organizations. The individuals whose personally identifying information have been withheld here have a strong privacy interest in not being connected to such investigations. Disclosure of the information, moreover, would not serve any public interest because it would not shed light on how the government is performing its statutory duties.

DoD has also withheld privileged information under Exemption 5, which protects privileged information that would not be available to a party in civil litigation. Disclosure of this category of information is likely to chill full, frank, and open discussions within the agency and impair the quality of decisionmaking regarding the designation, treatment, and disposition of detainees.

Finally, DoD and the FBI have invoked Exemption 7 to protect against the disclosure of their law enforcement files, which include information regarding techniques and procedures for law enforcement investigations or prosecutions. Thus, as demonstrated by the declarations of the FBI and DoD's law enforcement components, disclosure of this category of information

3

would reveal techniques, procedures and guidelines used during these investigations and

prosecutions and pose significant harm to the interests of the United States in its ongoing

terrorism-related investigations and future prosecutions.

## BACKGROUND

Al Salami is an alien who was detained by DoD at Guantanamo as an enemy combatant,

which is defined as an individual who was part of or who supported Taliban or al Qaeda forces,

or associated forces that are engaged in hostilities against the United States or its coalition

partners. *See* CSRT Implementation Order (July 14, 2006), Encl. (1), sec. B. (available at

http://www.defenselink.mil/news/Combatant_Tribunals.html).

On June 14, 2007, plaintiff submitted a FOIA request to DoD's FOIA office for records

relating to Al Salami. Specifically, the FOIA request sought

> all documents, including but not limited to photographs, video
> tapes, memoranda, reports, and electronic mail or other digital
> media, relating in any way to the detention at Guantanamo Bay,
> Cuba of Salah Ali Abdullah Ahmed Al Salami, whose ISN at
> Guantanamo Bay was 693, as well as all documents, including but
> not limited to photographs, video tapes, memoranda, reports, and
> electronic mail or other digital media, relating in any way to the
> death at Guantanamo Bay, Cuba of Salah Ali Abdullah Ahmed Al
> Salami, ISN 693, at Guantanamo Bay, in June 2006.

Complaint Exhibit 1; Kammer Decl. Exhibit 1. Shortly thereafter, DoD's FOIA office forwarded

plaintiff's request to the Naval Criminal Investigative Service ("NCIS"). NCIS received the

request on July 19, 2007.

On August 16, 2007, Chris D. Connor, Lieutenant Commander, Judge Advocate

General's Corps, U.S. Navy, denied the request based on Exemption 7(A), 5 U.S.C. §

552(b)(7)(A), because the information sought pertained to a pending law enforcement

investigation, and release of the details of the investigation could be reasonably expected to interfere with law enforcement proceedings.  Complaint Exhibit 3.

On October 11, 2007 plaintiff appealed the denial of the request to the Office of the Judge Advocate General.  Complaint Exhibit 4.  On January 18, 2008, James A. Protin, Commander, Judge Advocate General's Corps, U.S. Navy, affirmed the NCIS' denial of plaintiff's request. Complaint Exhibit 7.  On February 27, 2008, plaintiff filed the Complaint in this action in U.S. District Court.

On May 12, 2008, the NCIS officially closed its investigation into the death of Al Salami. Ceglio Declaration, ¶ 11.

The DoD Office of Freedom of Information tasked the following DoD Components to search for documents:  Joint Task Force - Guantanamo Bay through the U.S. Southern Command, the Armed Forces Institute of Pathology through the Office of the Surgeon General; the DoD Office of General Counsel; the Office of the Assistant Secretary of Defense for Detainee Affairs; the Criminal Investigation Task Force; the Naval Criminal Investigative Service; The Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC"). Kammer Decl. ¶ 4; Reheuser Decl. ¶ 4.

The United States Central Command ("Centcom") and the Defense Intelligence Agency ("DIA") reviewed documents that were referred to them by the DoD Office of Freedom of Information.  Scott Declaration ¶ 2; Williams Decl. ¶ 5.

In addition, two outside agencies were referred responsive records that either originated from them or contained information that originated from them: the Department of State; and the FBI.  Grafeld Decl. ¶ 4; Hardy Decl. ¶¶ 5-6.

All components have conducted a line-by-line and page-by-page review of the responsive documents to ensure maximum disclosure of reasonably segregable portions. *See, e.g.,* Ceglio Decl. ¶ 12; Thomas Decl. ¶¶ 7,9,10; Kaster Decl. ¶ 6;

**ARGUMENT**

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THEIR COMPONENTS HAVE CONDUCTED REASONABLE SEARCHES AND HAVE WITHHELD ONLY INFORMATION EXEMPT FROM DISCLOSURE UNDER FOIA**

## I.    STANDARD OF REVIEW

FOIA generally mandates disclosure, upon request, of government records held by an agency of the federal government except to the extent such records are protected from disclosure by one of nine exemptions. "[P]ublic access to Government documents" is the "fundamental principle" that animates FOIA. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Act is designed "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b). While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152. The FOIA thus "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information

6

confidential." *Center for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir.

2003).

Summary judgment is the procedure by which courts resolve nearly all FOIA actions. "In

order to obtain summary judgment the agency must show that it made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir.

1990). "There is no requirement that an agency search every record system." *Id.* Failure to

uncover a responsive document does not render the search inadequate; "the issue to be resolved

is not whether there might exist any . . . documents possibly responsive to the request, but rather

whether the search for those documents was adequate." *Weisberg v. Dep't of Justice*, 745 F.2d

1476, 1485 (D.C. Cir. 1984) (internal quotations omitted); *see also Meeropol v. Meese,* 790 F.2d

942, 952-53 (D.C. Cir. 1986) (search is not presumed unreasonable simply because it fails to

produce all relevant material); *Perry v. Block,* 684 F.2d 121, 128 (D.C. Cir. 1982) (agency need

not demonstrate that all responsive documents were found and that no other relevant documents

could possibly exist).

In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of

good faith which cannot be rebutted by purely speculative claims about the existence and

discoverability of other documents." *SafeCard Services, Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C.

Cir. 1991) (internal quotation marks and citation omitted); *see also Ground Saucer Watch, Inc. v.

CIA,* 692 F.2d 770, 771 (D.C. Cir. 1981) (same). Declarations should be "sufficiently detailed,"

but "[t]he standard . . . is not 'meticulous documentation [of] the details of an epic search.'"

*Texas Independent Producers Legal Action Ass'n v. IRS*, 605 F. Supp. 538, 547 (D.D.C. 1984)

(quoting *Perry*, 684 F.2d at 127). "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Meeropol,* 790 F.2d at 952.

As for sustaining its burden of justifying nondisclosure of information, *see* 5 U.S.C. § 552(a)(4)(B), the agency must provide declarations that identify the information at issue and the bases for the exemption(s) claimed. *See Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Courts review *de novo* the agency's use of a FOIA exemption to withhold documents. *Wolf v. C.I.A*, 473 F.3d 370, 375 (D.C. Cir. 2007). "Yet in conducting *de novo* review in the context of national security concerns, courts must accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record." *Id.* (citations and internal quotation marks omitted) (emphasis in original); *see also Krikorian v. Dep't of State,* 984 F.2d 461, 464 (D.C. Cir. 1993) (noting deference to expertise of agencies engaged in national security and foreign policy). Indeed, "[s]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail" and "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf*, 473 F.3d at 375 (citations and internal quotation marks omitted). Moreover, "a reviewing court 'must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm.'" *Id.* (quoting *Halperin v. CIA,* 629 F.2d 144, 149 (D.C. Cir. 1980)). "Ultimately, an agency's justification for invoking an exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.*

In support of its motion for summary judgment, DoD has attached the declarations of ten

DoD components, and the FBI. As discussed below, those declarations demonstrate that DoD has satisfied its burden under FOIA.

## II. THE DOD COMPONENTS HAVE CONDUCTED REASONABLE SEARCHES

DoD initially tasked all five components most likely to have responsive records concerning Guantanamo detainees to search for records relating to Al Salami: the Naval Criminal Investigative Service; the DoD Office of General Counsel; Joint Task Force Guantanamo ("JTF-GTMO"); the Criminal Investigation Task Force; and the Office of Detainee Affairs. For example, the Office of Detainee Affairs is responsible for providing policy advice to the Under Secretary of Defense for Policy on matters regarding detainees in DoD custody. *See* Hodgkinson Decl. ¶ 1. The Criminal Investigation Task Force conducts worldwide criminal investigations to substantiate or refute alleged or suspected war crimes or acts of terrorism, *see* Kaster Decl. ¶ 2. JTF-GTMO conducts detention and interrogation operations in support of the global war on terror, coordinates and implements detainee screening operations, and supports law enforcement and war crimes investigations. *See* Thomas Decl. ¶ 1.

All DoD components that were initially tasked to process plaintiff's FOIA request conducted searches that were reasonably calculated to locate all documents relating to Al Salami. Typically, the tasked DoD component conducted both electronic and manual searches of its records to identify responsive documents. The Criminal Investigative Task Force searched all of its records from its inception in 2002 until a cutoff date of June 2008. *See* Kaster Decl.¶ 6.

The Office of the Administrative Review of the Detention of Enemy Combatants, in contrast, identified and copied the official CSRT and ARB records of proceedings pertaining to plaintiff because it had no other files reasonably likely to contain responsive information. *See*

9

Johnson Decl. ¶ 10.  As the above discussion makes clear, DoD's various components have conducted a reasonable search in response to plaintiff's FOIA request.

## III.    DOD HAS PROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTIONS

All DoD components whose searches yielded exempt responsive records have provided detailed declarations justifying the withholding of information under one or more of FOIA's exemptions.  Moreover, because the FBI was referred responsive information that had originated from them, the FBI has submitted a declaration supporting its withholdings.

### A.    DoD Properly Withheld Information Under Exemption 1

Some of the withheld information falls within Exemption 1, which protects records that are:  (A) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (B) in fact properly classified pursuant to an Executive Order.  5 U.S.C. § 552(b)(1).  The relevant Executive Order ("E.O.") is E.O. 12958, "Classified National Security Information," as amended.[3]  Information may be classified pursuant to E.O. 12958 if it meets the following four conditions:

(1)    an original classification authority is classifying the information;

(2)    the information is owned by, produced by or for, or is under the control of the United States Government;

(3)    the information falls within one or more of the categories of information listed in section 1.4 of th[e] order; and

(4)    the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in

---

[3]  Executive Order 12958 was amended by Executive Order 13292.  *See* E.O. 13292, 68 Fed. Reg. 15315 (Mar. 25, 2003).  All citations in this brief to Executive Order 12958 are to the Order as amended.

damage to the national security, which includes defense against
transnational terrorism, and the original classification authority is able to
identify or describe the damage.

E.O. 12958, § 1.1(a). Substantial weight is accorded to an agency's determination that potential

harm merits classification of particular information, and a court should be reluctant to second-

guess such agency determinations in a national security FOIA case. *See, e.g., Students Against

Genocide v. Dep't of State*, 257 F.3d 828, 837 (D.C. Cir. 2001); *Frugone v. CIA*, 169 F.3d 772,

775 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990); *Taylor v. Dep't of

the Army*, 684 F.2d 99, 109 (D.C. Cir. 1982); *Military Audit Project v. Casey*, 656 F.2d 724, 745

(D.C. Cir. 1981); *Halperin*, 629 F.2d at 148.

Moreover, the Court should be mindful that classification decisions are not made in a

vacuum, but must be examined in the context in which the information is found. While it is true

that, whenever possible, sensitive information must be disentangled from nonsensitive

information to allow for the release of the latter, the inherent risk of disclosure involved in trying

to separate classified and unclassified information is significant. As the D.C. Circuit explains:

"[t]housands of bits and pieces of seemingly innocuous information can be analyzed and fitted

into place to reveal with startling clarity how the unseen whole must operate." *Halkin v. Helms*,

598 F.2d 1, 8 (D.C. Cir. 1978); *cf. Center for Nat'l Sec. Studies*, 331 F.3d at 928-29 (in deferring

to agency determination that withheld information would allow knowledgeable persons to piece

together a "composite picture" of the September 11 investigation and enable terrorists to evade

investigation and devise countermeasures, the court stated that "[w]hile the name of any

individual detainee may appear innocuous or trivial, it could be of great use to al Qaeda in

plotting future terrorist attacks or intimidating witnesses in the present investigation"). Thus,

facts that, in isolation, are unclassified may nonetheless be classified because, when aggregated and discussed in the context of the responsive records, they would reveal another underlying fact, association, or relationship that is classified. *Halperin*, 629 F.2d at 150 (observing that "[e]ach individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"); *see also* E.O. 12958, § 1.7(e).

Under Exemption 1, DoD and the FBI have withheld information that is classified pursuant to E.O. 12958, § 1.4(a) (military plans and operations); § 1.4(b) (foreign government information); § 1.4(c) (intelligence activities, intelligence sources or methods, and/or cryptology); or § 1.4(d) (foreign relations or foreign activities of the United States, including confidential sources). All information withheld under Exemption 1 was properly classified by an original classification authority at the time of plaintiff's FOIA request and remains properly classified. *See, e.g.,* Thomas Decl. ¶ 2. Each category of the classified information will be discussed below

### 1.    Information Related to Military Plans and Operations

JTF-GTMO withheld under Exemption 1 information related to military plans and operations against hostile forces. Information concerning military plans and operations may be classified under the authority of Section 1.4(a) of E.O. 12958, as amended, if its release could cause damage to the national security of the United States. See Thomas Decl. ¶ 16. As the Thomas declaration demonstrates, release of this information could permit hostile entities to determine the effectiveness and vulnerabilities in military operations in the United States and abroad, including Guantanamo. Specifically, information concerning Guantanamo's layout,

arrangement, and dimensions would be revealed by release of these documents which contain drawings and diagrams of the cells and the camp.  Thomas Decl. *Id.* Accordingly, the information is properly withheld under Exemption 1.

### 2.    Intelligence Data about Al Salami and Intelligence Sources

Section 1.4(c) of E.O. 12958, as amended, permits the classification of "intelligence activities (including special activities), intelligence sources or methods, or cryptology," recognizing that disclosure of such information could cause harm to national security.  JTF-GTMO withheld intelligence data and intelligence sources that are classified pursuant to Section 1.4(c).  This category of information includes intelligence information about plaintiff; biographical information, the circumstances of his capture, the circumstances and date of his transfer to Guantanamo, his travel, his affiliations with individuals and organizations of intelligence interest; how those affiliations came about; the actions he took while associated with those individuals and organizations; his activities in support of those organizations; and information about those individuals and organizations.  See Thomas Decl. ¶ 21.

As The Thomas declaration demonstrates, disclosure of this intelligence data reasonably could be expected to damage the national security because it would reveal details about the intelligence the government has gleaned regarding individuals and organizations of intelligence interest, the sources of that intelligence, and the specific information obtained from such sources. Revealing the extent of intelligence gathered concerning Al Salami would show, among other things, what the United States knows about certain individuals and organizations; what the government does not know; and the leads it followed or did not follow based on the intelligence it obtained.  It would also reveal intelligence concerning other individuals and organizations.

13

These critical facts could then be pieced together with other information that has entered the public domain to reveal details about the government's intelligence.  *See* Thomas Decl. ¶¶ 22-23. Additionally, public release of such intelligence data would damage our ability to collect intelligence on our targets or those associated with them and would also have a chilling effect on human intelligence collection.  Se*e* Thomas Decl. ¶ *23.*

As explained in the declaration of Rear Admiral Thomas, due to the nature of terrorist organizations such as al Qaeda and these organizations' methods of operation, human intelligence is the most essential piece of the strategic intelligence being gathered in the global war on terror.  *Id.* ¶ 24.  Releasing the withheld intelligence data would reveal who has cooperated with the United States and the information they provided, placing those sources (or individuals perceived by others as sources) at risk of retribution.  *Id.*   It would also dissuade other sources from cooperating with ongoing intelligence collection efforts, thus impeding the United States' ability to gather actionable intelligence.  *Id.*

The FBI's declaration explains that redactions were made to protect from disclosure information that would reveal intelligence activities and methods employed by the FBI; information that would reveal current specific targets of the FBI's current investigations; information that would reveal the criteria used – and priorities assigned to – current intelligence and counterintelligence investigations. Hardy Decl. ¶ 19.

For example, the FBI's declaration explains that a code word was withheld because it is being used in ongoing investigations.  Public disclosure of this code word would allow a hostile analysts to patch bits and pieces of information together until the actual use of this application can  be determined.  In addition, disclosure would inform hostile analysts of the possible range of

14

the FBI's intelligence capabilities, as well as intelligence that the FBI has gathered or can gather. Hardy Decl. ¶ 22.

The Defense Intelligence Agency's declaration has explained, for example, that DIA relies on a variety of intelligence sources to collect foreign intelligence critical to our national security. Those sources can include individuals, foreign or American, foreign entities, and the intelligence and security services of foreign governments. Intelligence sources can be expected to furnish information only when confident that they are protected from retribution by the secrecy surrounding their relationship to the United States government. Sources that are compromised become extremely vulnerable to retaliation from a variety of entities including their own governments or others having a stake in the confidentiality of the information provided by the source. In certain parts of the world, the consequences of public disclosure of the identity of an individual who has served as a U.S. source are often swift and far reaching, from economic reprisals to possible harassment or threat to physical safety. *See* Williams Decl. *¶ 9.*

For all of these reasons, the information is properly withheld under Exemption 1. Indeed, another court recently upheld DoD's Exemption 1 claim with respect the same type of intelligence information concerning another Guantanamo detainee. *See Azmy v. Dep't of Defense, -- F. Supp. 2d --,* No. 06 Civ 15340, 2008 WL 2501053, *2-*4 (S.D.N.Y. June 22, 2008). *See also Schrecker v. U.S. Dep't of Justice,* 254 F.3d 162, 166 (D.C. Cir. 2001) (upholding Exemption 1 withholding based on FBI determination that "release of the information in question would damage national security by dissuading current and future sources from cooperating"); *Hogan v. Huff,* No. 00 Civ. 6753, 2002 WL 1359722, at *8 (S.D.N.Y. June 21, 2002) (sustaining withholding of information "fall[ing] into the category of intelligence activities

that were compiled through interviews with intelligence sources").

### 3.   Intelligence Assessments and Conclusions

JTF GTMO withheld under Exemption 1 intelligence assessments and conclusions

pertaining to Al Salami and other individuals and organizations of intelligence interest, which are

classified pursuant to Section 1.4(c) of E.O. 12958, as amended. *See* Thomas Decl.¶ 23. The

intelligence assessments concerning Al Salami and other individuals and organizations of

intelligence interest are vital to DoD's assessment of plaintiff's activities, and remain vital to its

ongoing efforts to obtain intelligence on other individuals and organizations. Disclosure of these

assessments and conclusions (such as threat level and intelligence value), especially in

conjunction with disclosure of the specific intelligence data that are necessarily intertwined with

them, would reveal how analysts evaluate intelligence information and the conclusions they

reach. Specifically, when factual information is contained within a document setting forth

intelligence assessments, conclusions or recommendations, the selection of, and emphasis on,

particular facts reveal information about the analyst's thought processes, the methods being

applied to analyze the intelligence data, and the limits of, or gaps in, available intelligence. Such

revelations could aid persons hostile to the United States in hiding their activities and thwarting

the government's intelligence gathering efforts. *See* Thomas Decl. ¶ 23.

Accordingly, the withheld intelligence assessments and conclusions are properly

classified and exempt from disclosure under Exemption 1. *See Azmy,* No. 06 Civ 15340, 2008

WL 2501053 at *2-*4 (upholding under Exemption 1 DoD's withholding of intelligence

assessment and conclusions regarding a Guantanamo detainee).

16

### 4.    Information Concerning Intelligence Methods

DoD has withheld under Exemption 1 information reflecting intelligence methods in gathering, analyzing, and coordinating intelligence data, which is classified pursuant to E.O. 12958, as amended, § 1.4(c).  Included in this category of withholdings are tools and methods for analyzing intelligence data; tools and requirements for coordinating intelligence gathering and analysis among DoD components and other agencies; criteria used and priorities assigned to current intelligence or counterintelligence investigations; and plans for further intelligence gathering based on specific intelligence data obtained from intelligence sources.  *See* Scott Decl. ¶ 3; Williams Decl. ¶ 10; Thomas Decl. ¶¶ 22, 26-29.

Intelligence methods are the means by which DoD and other intelligence agencies collect intelligence data to support military operations, assist in national policymaking, assess military threats, conduct counterterrorism activities, or otherwise accomplish their missions.  These methods and practices must be protected because knowledge of such information would allow hostile entities to develop countermeasures and be of material assistance to those who seek to penetrate, detect, prevent, avoid or otherwise damage the intelligence operations of the United States.  *See* Williams Decl. *Id;* Thomas Decl. ¶ 28(a).

Of particular concern is an individual's ability to anticipate particular investigative or interrogation techniques.  Indeed, public disclosure of specific methods used with sources of human intelligence, whose identities are themselves classified as described above, would allow individuals of intelligence interest to anticipate and immunize themselves from those methods. Thomas Decl. ¶ 28(b).  Accordingly, DoD has properly determined that disclosure of such information could hamper the United States' intelligence gathering efforts, thereby causing

17

damage to national security.  *See* Scott Decl. ¶ 3;

Similarly, the government's methods of coordinating intelligence gathering and analysis among agencies and components are central to its efforts to counter acts of terrorism and support military operations.  Effective military and counterterrorism strategy depends on the coordination of intelligence gathering among agencies and components responsible for gathering and analyzing intelligence data.  Revealing the nature of that coordination and how agencies and components work together could reveal their areas of relative competence or the distinct intelligence tools they employ, thereby permitting persons hostile to the United States to tailor their behaviors and adopt means to thwart the government's intelligence gathering efforts.  *See* Thomas Decl. ¶ 29.

Thus, the Criminal Investigative Task Force ("CITF") withheld the names of certain intelligence community databases, as well as the results of CITF's search of those databases, the disclosure of which would permit persons hostile to the United States to glean information about how the government maintains and shares information among intelligence organizations involved in the information gathering process.  *See* Kaster Decl. ¶ 12.  As CITF's declaration demonstrates, revealing such information would also identify the connection between the procedures used in investigating individuals of law enforcement or intelligence interest, as well as the specific information about Al Salami and sources contained in those various databases used by CITF to conduct the investigation.  *See Id.*

For all of these reasons, the withheld intelligence methods are properly exempt from disclosure under Exemption 1.  *See, e.g., Hogan,* 2002 WL 1359722, at *8 (upholding Exemption 1 withholding of information that "would potentially harm the agency by exposing its

18

methods"); see Wolf, 473 F.3d at 376-77 (upholding CIA's refusal to confirm or deny Agency interest in foreign national because doing so "could damage sources and methods by revealing CIA priorities, thereby providing foreign intelligence sources with a starting point for applying countermeasures against the CIA and thus wasting Agency resources").

## B.    DoD Properly Withheld Information Under Exemption 2

DoD has also withheld information under Exemption 2, which overlaps to a significant extent with the classified information already withheld under Exemptions 1 and/or 7.  Exemption 2 covers internal matters "related solely to the internal personnel rules and practices of an agency" if the material relates to trivial administrative matters of no genuine public interest [known as low 2]; or if the disclosure may risk circumvention of agency regulation [known as high 2].[4]  *See* 5 U.S.C. § 552(b)(2); *Sussman v. U.S. Marshals Service*, 494 F.3d 1106, 1112 (D.C. Cir. 2007); *see also Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc).

DoD components have also withheld internal information under the former category, low 2.  The Office of Administrative Review of the Detention of Enemy Combatants redacted Al Salami's full Internment Serial Number ("ISN") but did not redact Al Salami's abbreviated ISN. *See* Johnson Decl. ¶ 13.  The DoD Office of General Counsel redacted office phone numbers and similar trivial information.  Reheuser Decl. ¶ 7.  The Defense Intelligence Agency withheld

---

[4]  The reference to circumvention of agency regulation in Exemption 2 has been interpreted to cover circumvention of an agency's law enforcement function.  *See, e.g., Blanton v. Dep't of Justice*, 63 F. Supp. 2d 35, 43 (D.D.C. 1999) (Exemption 2 properly invoked to withhold information "the release of which might provide the public with insight into the internal handling of investigations involving race crimes" (internal quotation marks omitted)); *see also infra,* note 9.

internal matters under the latter category, which include administrative handling codes, Intelligence Information Report numbers, the web addresses of DIA offices' websites on a classified network, internal office symbols, internal phone numbers and other similar points of contact information, and message routing data.  See Williams Decl.  ¶ 13.  Such information has no substantive value or legitimate public interest, and is properly withheld under Exemption 2 (low).  *Id.*

DoD components withheld information under Exemption 2(high) reflecting guidelines and procedures internal to the government, which, if revealed, could allow persons hostile to the United States to tailor their behavior to thwart the government's intelligence gathering and circumvent the United States' counterterrorism efforts.  *See* Kaster Decl. ¶¶ 11-13, 14; Ceglio Decl. ¶ 15; Scott Decl. ¶ 4; Thomas Decl. ¶¶ 36-38.  The majority of the information withheld by these DoD components relate to intelligence assessments and methods that are classified and withheld under Exemption 1.[5]  The specifically withheld information is discussed below.

The Naval Criminal Investigative Service withheld information about intelligence sources or activities.  As explained in the NCIS declaration, disclosure of this information could enable persons hostile to the United States to discern the government's methods for handling detainees and related detention facility intelligence data, risking circumvention of U.S. counterterrorism efforts in the global war on terror. Ceglio Decl. ¶ 15.

Certain DoD components withheld intelligence methods – such as interrogation

---

[5]  Indeed, with respect to any record subject to such overlapping claims of exemption, this Court need only find any one exemption applicable in order to grant summary judgment to DoD. *Fund for Constitutional Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 864 n.19 (D.C. Cir. 1981).

techniques and plans, tools and methods for analyzing intelligence data, tools and requirements for coordinating intelligence gathering and analysis among DoD components and other government agencies, and plans for further intelligence gathering – because their disclosure would reveal internal guidelines and practices for gathering and analyzing intelligence. *See* Kaster Decl. ¶ 10-13; Scott Decl. ¶ 4.

The Criminal Investigation Task Force, for example, withheld details regarding investigative steps undertaken by CITF; statements regarding contemplated next steps in CITF's investigation; and procedures for coordinating CITF's investigation with other agencies. *See* Kaster Decl. ¶ 10. Disclosure of the investigative procedures used and steps taken by CITF in Al Salami's case would reveal the internal guidelines CITF follows in conducting law enforcement investigations of Guantanamo detainees and other persons of investigative interest in the global war on terror. *Id.* ¶ 11. Persons hostile to the United States could then discern the types of information the government looks for in conducting terrorism-related law enforcement investigations and take steps to counter or thwart the government's efforts to obtain such information in the future. *Id.*

Additional withheld material includes portions of the DOD report into the suicides, termed the AR15-6 Investigative Report. The AR 15-6 report and other documents contain selections from and references to GTMO Standard Operating Procedures ("SOP"). The SOP contain detailed information about running the camp, controlling access to, and conduct within, the camps, and managing, controlling, and caring for the detainees. It contains information about chain of command, security issues, and specific duties of guards and other personnel involved in camp operations. A detainee, armed with the knowledge of these procedures would be able to

undermine the ability of Guantanamo officials to maintain order and security in the camp.
Thomas Decl. ¶¶ 43-45.

Another court has recently upheld DoD's withholding under Exemption 2 (high) DoD's withholding of similar information relating to another Guantanamo detainee – including law enforcement and threat level assessment of the detainee; interrogation methods; and investigative procedures used in investigating and assessing the detainee – because the disclosure would risk circumvention of U.S. law enforcement efforts in the global war on terror. *See Azmy*, No. 06 Civ 15340, 2008 WL 2501053 at *5-*6. For this same reason, this Court should uphold DoD's withholdings under Exemption 2.

### C.    DoD Properly Withheld Personally Identifying Information of Individuals Under Exemptions 3 and/or 6

#### 1.    Withholdings Under Exemption 3

DoD components withheld from the responsive records the personally identifying information of government personnel and certain other individuals under Exemption 3. Exemption 3 protects matters "specifically exempted from disclosure by statute . . . , provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The exemption's "unmistakable thrust" is "to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch." *Ass'n of Retired R.R. Workers, Inc. v. Railroad Retirement Bd.*, 830 F.2d 331, 333 (D.C. Cir. 1987). To determine whether a withholding of information is proper under Exemption 3, the court is first to determine whether the statute is one of exemption as contemplated by Exemption 3, and, if so, whether the

information is covered by the statute. *CIA v. Sims*, 471 U.S. 159, 167 (1985); *Fitzgibbon*, 911

F.2d at 761. "[O]nce a court determines that the statute in question is an Exemption 3 statute,

and that information requested at least arguably falls within the statute, FOIA *de novo* review

normally ends." *Aronson v. I.R.S.*, 973 F.2d 962, 967 (1st Cir. 1992) (Breyer, J.); *see also*

*Fitzgibbon*, 911 F.2d at 761-62.

Here, the Defense Intelligence Agency withheld the names, office affiliations, and contact

information, of DIA personnel based on 10 U.S.C. § 424. *See* Williams Decl. ¶ 15. Section

424(a) of that statute provides that, except as required by the President or as provided in

subsection (c), no provision of law shall be construed to require the disclosure of (1) the

organization or any function of an organization of the Department of Defense named in

subsection (b); or (2) the number of persons employed by or assigned or detailed to any such

organization or the name, official title, occupational series, grade, or salary of any such person.

DIA is a covered organization under this provision. See 10 U.S.C. § 424(b).

JTF-GTMO  invoked 10 U.S.C. § 130b, which provides that the Secretary of Defense

"may, notwithstanding section 552 of title 5, authorize to be withheld from disclosure to the

public personally identifying information regarding . . . any member of the armed forces assigned

to an overseas unit, a sensitive unit, or a routinely deployable unit." 10 U.S.C. § 130b(a)(1).  The

statue defines "personally identifying information" to include "the person's name, rank, duty

address, and official title . . . ." 10 U.S.C. § 130b(c)(1).  There is no question that this statute is

an Exemption 3 statute because it specifically permits DoD to withhold the specified information

notwithstanding the disclosure requirements of FOIA.  The DoD personnel whose personally

identifying information has been withheld here belonged to an overseas unit.  *See* Thomas  Decl.

23

¶ 53.

## 2.     Withholdings Under Exemption 6

Certain DoD components, as well as the FBI and State have also withheld personally identifying information of both the DoD personnel and other individuals from the responsive records under Exemption 6, which allows the government to withhold information about individuals in "personnel and medical and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6). *See Department of State v. Washington Post Co.*, 456 U.S. 595, 599-600 (1982) ("the primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters").  For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual."  *Id.* at 602.  Once this threshold requirement is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure.  *See Department of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *see also Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

In this case, the DoD components, the FBI, and State have determined that releasing the personally identifying information of its personnel and other individuals in certain responsive records would constitute a clearly unwarranted invasion of the those individuals' privacy.  *See* Kaster Decl. ¶ 17; Reheuser Decl. ¶ 6; Hardy Decl. ¶¶ 33-35, 36-38, 39-44; Peterson Decl. ¶ 6; Grafeld Decl. ¶ 12.

There is no legitimate public interest in the disclosure of such information because the information would not inform the plaintiff or the general public about how DoD, the FBI, or State performed its statutory duties.  *See, e.g.,* Kaster Decl. ¶ 17 (averring that disclosure of

24

personally identifying information of CITF personnel would not inform the general public about CITF's performance of its mission to investigate individuals suspected of committing offenses related to international terrorism); Hardy Decl. ¶ 35, 38, 41 (disclosure of personally identifying information of FBI personnel would not inform the general public about the FBI's performance of its mission).  Grafeld Decl. ¶ 12 (disclosure of personally identifying information would not inform the general public of what the government is up to).

In fact, the information is irrelevant to the work of the agency and cannot be said to "reveal [anything] about an agency's own conduct."  *See Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (information that does not directly reveal the operations of activities of the federal government "falls outside the ambit of the public interest that the FOIA was enacted to serve"); *see also Long v. OPM*, No. 05-CV-1522, 2007 U.S. DIST. LEXIS 72887 at *5-*6 (N.D.N.Y. Sept. 30, 2007) (withholding of DoD employee names and duty station under Exemption 6 proper because such information "does not relate to the employee's performance of public duties"); *Voinche v. FBI*, 940 F. Supp. 323, 330 (D.D.C. 1996) ("There is no reason to believe that the public will obtain a better understanding of the workings of various agencies by learning the identities of [various federal employees] . . .").

On the other side of the scale, the government personnel and other third parties whose personally identifying information has been withheld have a legitimate privacy interest and personal safety interest not to have their information disclosed.  Thus, for example, the CITF withheld the personally identifying information of its personnel involved in the human intelligence collection and evaluation efforts to protect their safety and privacy including telephone numbers and email addresses.  *See* Kaster Decl. ¶ 17.  Similarly, the Office of the

25

Surgeon General/MEDCOM withheld personally identifying information of its personnel

involved in the performance of Al Salami's autopsy.  Peterson Decl. ¶ 6.  *See also Long*, No. 05-

CV-1522, 2007 U.S. DIST. LEXIS 72887 at *47-48 (upholding the withholding of DoD

employee names and duty stations under Exemption 6 because disclosure could allow enemies of

the United States to target DoD employees performing specific missions for harassment or

attack).

    The strong privacy interests of these individuals clearly outweigh any public interest in

the disclosure of their personally identifying information.  Accordingly, the information is

properly withheld under Exemption 6.

### D.    DoD Properly Withheld Information Under Exemption 5

    Certain DoD components, as well as State, have invoked Exemption 5 in withholding

certain responsive information.  That Exemption protects "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the

agency."  5 U.S.C. § 552(b)(5).  The Supreme Court has construed this language to "exempt

those documents . . .  normally privileged in the civil discovery context."  *NLRB v. Sears,

Roebuck & Co.*, 421 U.S. 132, 149 (1975).  In this case, the withheld information implicates the

deliberative process privilege.

### 1.    Deliberative Process Privilege

    The deliberative process privilege is predicated on the recognition "'that the quality of

administrative decision-making would be seriously undermined if agencies were forced to

operate in a fishbowl.'"  *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 917 F.2d 571, 573 (D.C.

Cir. 1990) (quoting *Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988) (*en banc*)).  Thus, the

agency need not disclose "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). Because the privilege protects the decision-making process, the document in question must be pre-decisional, *i.e.*, it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975); *see also NLRB*, 421 U.S. at 151 n.18; *Mapother v. Department of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). Documents prepared by agency officials who "themselves lack any authority to take final agency action . . . are necessarily predecisional." *Hopkins v. U.S. Dep't of Housing and Urban Dev.*, 929 F.2d 81, 85 (2d Cir. 1991). The communication also must be "a direct part of the deliberative process" in that it "makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975); *see also Wolfe*, 839 F.2d at 773-74.

In this case, certain DoD components withheld predecisional deliberations under the deliberative process privilege: Thomas Decl. ¶ 56 (JTF-GTMO); Johnson Decl. ¶ 14 (OARDEC). The majority of that information relates to assessments of Al Salami's intelligence value.

Specifically, the Office for the Administrative Review of the Detention of Enemy Combatants withheld assessments, recommendations, and opinions regarding the plaintiff provided by DoD components and other agencies to the Administrative Review Boards ("ARBs"). *See* Johnson Decl. ¶¶ 14-15. The ARB is an administrative body comprised of DoD personnel that assesses whether a detainee, such as the plaintiff, continues to present a threat and to what degree. Unlike the Combatant Status Review Tribunals ("CSRT"), which determines whether individuals detained at Guantanamo are properly classified as enemy combatants based

27

on law enforcement and intelligence information, and other data and assessments in the possession of the government, *id.* at ¶¶ 4-5, the ARB panel makes only non-final, non-binding recommendations to a Designated Civilian Official ("DCO"), here the Deputy Secretary of Defense, regarding whether DoD custody of a enemy combatant should be continued, and, if not, whether a detainee should be transferred to the custody of another country, or released.  *Id.* ¶ 6. To assist the ARB in making its recommendation to the DCO, each agency and DoD component involved in the process makes its own assessments of, and recommendations concerning, particular detainees.  *Id.* ¶ 7.  These agencies and DoD components often include the Department of State, the FBI, the CIA, the Criminal Investigation Task Force ("CITF"), the Office of Detainee Affairs ("ODA"), and Joint Task Force-Guantanamo. *Id.*

      The withheld information clearly falls within the deliberative process privilege because it is "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd.,* 421 U.S. at 184.  The withheld assessments and recommendations were quintessentially predecisional and integral to DoD's decision-making process regarding whether to release, transfer or continue to detain the plaintiff through the ARB process.  The DoD components and other U.S. government agencies that participate in the ARB process must be able to engage in open and frank discussions with regard to detainee matters, both internally and with each other.  The disclosure of this withheld information would have a chilling effect on such candid, open, and frank discussions, and compromise the quality of decision concerning the designation and disposition of particular detainees.  *See* Johnson Decl. ¶ 15.  Accordingly, the information is properly withheld under Exemption 5.  *See  Long*, No. 05-CV-1522, 2007 U.S. DIST. LEXIS 72887 at *7 (upholding under exemption 5 DoD's withholding of assessment and

recommendations regarding a Guantanamo detainee prepared by DoD components and other agencies and submitted to CSRT, ARBs and DCO).

In addition, the DoD Office of General Counsel withheld internal discussions relating to (1) preliminary opinions and (2) advice, proposals, and recommendations as part of the consultative process, all of which assisted the individuals involved to make assessments and come to certain conclusions. *See* Reheuser Decl. ¶ 5. Accordingly, the withholding of this information under Exemption 5 claim is proper.

The Department of State withheld one document under the deliberative process privilege, a draft of a diplomatic note whose text was subsequently changed before it was delivered to the foreign government. Grafeld Decl. ¶¶ 8, 14; *see Judicial Watch, Inc. v. Exp. Imp. Bank,* 108 F. Supp. 2d 19, 36 (D.D.C. 2000).

## 2. Attorney Work Product Privilege

DoD withheld information under the attorney work product privilege. *See* Reheuser Decl. ¶ 5. The attorney work product privilege is incorporated in FOIA Exemption 5 and shields materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative." *Judicial Watch*, 432 F.3d at 369. "[A]s the Supreme Court has made clear, the doctrine should be interpreted broadly and held largely inviolate." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)). Notably, in contrast to the deliberative process privilege, "'[t]he work-product doctrine simply does not distinguish between factual and deliberative material.'" *Id.* (quoting *Martin v. Office of Special counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987). "'Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product

29

doctrine and falls under exemption 5.'"  *Id.* (quoting *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997)).  In other words, factual material is itself privileged when it appears within documents that are attorney work product.  *Id.*

Here, the OGC withheld under the attorney work product privilege discussions of legal analysis and opinions prepared by DoD attorneys in connection with the plaintiff.  *See* Reheuser Decl. ¶ 6.  The work product of OGC attorneys relating to plaintiff is therefore properly protected under the attorney work product privilege.

### E.    DoD Properly Withheld Information Under FOIA Exemption 7

Finally, certain DoD components and the FBI have withheld information under Exemptions 7(A), (C), (D), or (E), which also overlaps to a significant extent with information already withheld under other exemptions, including Exemptions 1 and 2.

### 1.    Personally Identifying Information Withheld Under Exemption 7(C)

Four DoD law enforcement components and the FBI invoked Exemption 7(C) to protect materials compiled for law enforcement purposes whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). To determine whether Exemption 7(C) applies, courts "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. Dep't of Justice,* 968 F.2d 1276, 1281 (D.C. Cir. 1992).  Where a legitimate privacy interest is implicated, the requester must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake; and (2) show the information is likely to advance that interest.  *See Sussman,* 494 F.3d at 1115.  As the D.C. Circuit has explained, on one side of the scale, the exemption protects the privacy

30

interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants. *Id; Schrecker,* 349 F.3d at 661 (citing cases). On the other side, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to." *Davis,* 968 F.2d at 1282 (internal quotation marks omitted) (quoting *Reporters Comm. for Freedom of the Press,* 489 U.S. at 773). In other words, the only recognized public interest is that which sheds light on the operations and activities of the United States.

Importantly, the Supreme Court has furthermore observed that the statutory privacy right protected by Exemption 7(C) is broader than the protection accorded under other provisions. *See Reporters Comm. for Freedom of Press,* 489 U.S. at 762. The Court has made clear that because "[l]aw enforcement documents ... often contain information about persons ... whose link to the official inquiry may be the result of mere happenstance," "[t]here is special reason ... to give protection to [ ] intimate personal data, to which the public does not have a general right of access in the ordinary course." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 166 (2004) (citing *Reporters Comm. for Freedom of Press,* 489 U.S. at 780; *see also Martin v. Department of Justice,* 488 F.3d 446, 456-457 (D.C. Cir. 2007)). The categorical withholding of information that identifies third parties in law enforcement records will ordinarily be appropriate under this exemption, given the traditional recognition of the strong privacy interests inherent in law enforcement records. *See Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) ("Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'") (quoting *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984)).

Here, JTF-GTMO, the Defense Intelligence Agency, the Criminal Investigative Task Force, the Naval Criminal Investigative Service, and the FBI all withheld personally identifying information of individuals contained in their law enforcement records responsive to plaintiff's FOIA request. These individuals include special agents and other law enforcement personnel; government support personnel; third parties mentioned in the files or interviewed by the law enforcement agency; and subjects of the law enforcement agency's investigation. *See* Kaster Decl. ¶ 20; Ceglio Decl. ¶ 16; Thomas Decl. ¶ 69; Hardy Decl. ¶¶ 33-44.

As these declarations demonstrate, disclosure of the identities of law enforcement agents and government support personnel involved in the investigation of suspected terrorists and their organizations would not only subject these agents and government personnel to harassment and annoyance in the conduct of their official duties and their private lives, but also jeopardize their safety as well as the safety of their family members. *See* Kaster Decl. (Ex. 1) ¶¶ 22-24. On the other hand, there is no legitimate public interest in the identities of these law enforcement and other government personnel because the disclosure would not inform the public about DoD's and the FBI's performance of their statutory duties. *See* Kaster Decl. ¶ 22; Ceglio Decl. ¶ 16. Similarly, the disclosure of the identities of third parties connected with the government's counterterrorism law enforcement activities (whether because they were simply mentioned in the law enforcement records, interviewed or were the subjects of the government's investigation) could significantly intrude on these individuals' personal privacy and expose them to potential harassment, retaliation or stigma. *See* Kaster Decl. ¶ 24-25. Again, there is no public interest in the disclosure to outweigh this potential harm. *Id.*

Accordingly, due to the breadth of privacy protection under Exemption 7(C), the potential

32

harm that could result from release, and the lack of public interest in the disclosure, DoD's and the FBI's withholdings of the names and other identifying information of their personnel and the third parties mentioned in their files are proper under Exemption 7(C).[6] *James v. Secret Service*, 06-CV-1951, 2007 WL 2111034, 6 (D.D.C. July 23, 2007) ("The deletion of the names and identifying information of law enforcement personnel has been routinely upheld.") (citing *Lesar v. Dep't of Justice,* 636 F.2d 472, 487 (D.C. Cir. 1980)).

### 2. Confidential Sources Information Withheld Under Exemption 7(D)

The FBI has withheld FBI information under Exemption 7(D), which permits the withholding of law enforcement records, the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Unlike Exemption 7(C), Exemption 7(D) requires no balancing of public and private interests. *See Dow Jones & Co.,* 917 F.2d at 575-76. The exemption applies if the agency establishes that a source has provided information under either an express or implied promise of confidentiality. *See Dep't of Justice v. Landano,* 508 U.S. 165, 172 (1993); *Williams v. FBI,* 69 F.3d 1155, 1159 (D.C. Cir. 1995).

---

[6] Indeed, because all investigations conducted by CITF involve suspected terrorism and threats to homeland security from groups that are hostile to the United States and have carried out attacks on Americans within the United States and abroad, disclosure of the identity of any individuals associated with these investigations could jeopardize their personal physical safety as well as that of their family members. *See* Kaster Decl. (Ex. 1) ¶ 26. Thus, all exemptions CITF asserted under 7(C) are also asserted and incorporated by reference under Exemption 7(F), which covers documents whose release "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)7(F).

The FBI withheld the names and identifying information of individuals who were interviewed by the FBI in the course of its criminal, counterterrorism, and national security investigations.  As discussed in the declaration of David M. Hardy of the FBI, these individuals provided information about the background and activities of suspected terrorists, and in light of the terrorist organizations' well-documented history of violence, the individuals who provided intelligence information to the FBI reasonably could be inferred to expect that their identities, and any information that they provided (which, by its nature and content could reasonably be expected to identify them) would not be released to the general public.  *See* Hardy Decl. ¶ 48.

Because the FBI has demonstrated that the nature of its investigations leads to a reasonable inference that the individuals provided information to the FBI under an implied or express promise of confidentiality, the FBI's withholdings of these confidential sources, as well under the information provided by those sources, are proper under Exemption 7(D).

### 3.   Law Enforcement Techniques, Procedures and Guidelines Withheld Under Exemption 7(E)

Exemption 7(E) authorizes the withholding of law enforcement information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)7(E).[7]  Like

---

[7]  The anti-circumvention requirement in the second clause regarding disclosure of law enforcement guidelines is similar to the anti-circumvention requirement of Exemption (b)(2). *See, e.g., Coastal Delivery Corp. v. Customs Services,* 272 F. Supp. 2d 958, 965 (C.D. Cal. 2003) (agency's withholding under Exemption 2 is proper for same reason withholding is proper under Exemption 7(E)); *Schwarz v. Dep't of Treasury*, 131 F. Supp. 2d 142, 150 (D.D.C. 2000) (Secret Service information evaluating threat potential of individuals was "clearly exempt" under both Exemptions 2 and 7(E)).

Exemption 7(A), Exemption 7(E) has been interpreted to cover a broad range of law enforcement information related to national security. *See, e.g., Center for Nat'l Sec. Studies v. INS*, No. 87-2068, 1990 WL 236133, at *5 (D.D.C. Dec. 19, 1990) (upholding under Exemption 7(E) agency's withholding of contingency plan in event of attack on United States).

JTF-GTMO has asserted Exemption 7(E) to protect a broad array of details relating to the investigation of the suicides. For instance, release of certain camp photos may reveal the methodology and techniques used in collecting evidence for investigation. Thomas Decl. ¶¶ 70-71.

Similarly, the Naval Criminal Investigative Service has asserted Exemption 7(E) to protect certain guidelines pertaining to detainee handling and detention facility security. As the NCIS declaration indicates, this information, if it were to be released, could risk circumvention of sensitive law enforcement techniques. See Ceglio Decl. ¶¶ 18-19. Accordingly, because disclosure of this type of information could reasonably be expected to risk circumvention of law, the FBI has properly withheld this information pursuant to Exemption 7(E). *See, e.g., Blanton,* 63 F. Supp. 2d at 49-50 (certain polygraph information, such as the "sequence of questions," properly withheld because disclosure would allow individuals to employ countermeasures).

## CONCLUSION

For all the foregoing reasons, this Court should grant DoD's motion for summary judgment.

Dated: August 22, 2008                    Respectfully submitted,

                                          GREGORY G. KATSAS
                                          Assistant Attorney General

                                          JEFFREY A. TAYLOR

United States Attorney

JOHN R. TYLER
Senior Trial Counsel

_____ /s/ William B. Jaffe _____
WILLIAM B. JAFFE
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Tel: (202) 353-7633
Attorneys for Defendants

## INDEX OF EXHIBITS

## <u>DECLARATIONS</u>

Exhibit 1:     Declaration of Jefferson L. Kaster
               Criminal Investigation Task Force ("CITF"), DoD

Exhibit 2:     Declaration of Alesia Y. Williams
               Defense Intelligence Agency ("DIA"), DoD

Exhibit 3      Declaration of Michael Reheuser
               Office of General Counsel ("OGC"), DoD

Exhibit 4      Declaration of Sandra Hodgkinson
               Office of Detainee Affairs ("ODA"), DoD

Exhibit 5      Declaration of Margaret A. Johnson
               Office for the Administrative Review of the Detention of Enemy Combatants
               ("OARDEC"), DoD

Exhibit 6      Declaration of Jacqueline J. Scott
               United States Central Command ("USCENTOM"), DoD

Exhibit 7      Declaration of Joseph P. Ceglio
               Naval Criminal Investigative Service ("NCIS"), DoD

Exhibit 8      Declaration of David M. Thomas
               Joint Task Force-Guantanamo ("JTF-GTMO"), DoD

Exhibit 9      Declaration of John P. Peterson
               Office of the Surgeon General, Medical Command  ("OTSG-MEDCOM"), DoD

Exhibit 10     Declaration of William T. Kammer
               Office of Freedom of Information ("OFOI"), DoD
                    Exhibits 1 - 4.

Exhibit 11     Declaration of David M. Hardy
               Federal Bureau of Investigation ("FBI")


                    Exhibits A - C.

Exhibit 12     Declaration of Margaret P. Grafeld
               Department of State ("State")

37

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2008, a true and correct copy of the foregoing

Motion for Summary Judgment was served via ECF upon plaintiffs' counsel of record at the

address listed below:

David L. Engelhardt, Esq.
Lisa M. Kaas, Esq.
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, D.C. 20006

*Counsel for Plaintiff*

Dated: August 22, 2008

<u>s/ William B. Jaffe</u>
WILLIAM B. JAFFE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO, LLP )
)
)
   Plaintiff, )
)
)  Civil Action No. 1:08-cv-226
)
)  DECLARATION OF
)  LtCol JEFFERSON L. KASTER
  v. )  USMC
)
UNITED STATES DEPARTMENT OF )
DEFENSE, )
)
   Defendant. )
)

Pursuant to 28 U.S.C. Sec. 1746, I, Jefferson L .Kaster, declare as follows:

1. I am a Lieutenant Colonel in the United States Marines Corps, with more than 13 years of active duty service.  I currently serve as the Deputy Staff Judge Advocate of the Department of Defense (DoD) Criminal Investigation Task Force (CITF), Fort Belvoir, Virginia. I have been in this position since July, 2006.

2. As the Deputy Staff Judge Advocate of CITF, I am largely responsible for the planning and execution of many of the legal aspects of CITF's mission, as well as counseling and advising the Commander and staff on that mission.  Under the direction of the Secretary of the Army, CITF conducts worldwide criminal investigations to substantiate or refute alleged or suspected war crimes or acts of terrorism committed by certain individuals against U.S. persons, property or interests. CITF is a joint, operational, criminal investigative task force, comprised primarily of Special Agents from the U.S. Army Criminal Investigations Division, the U.S. Air Force Office

of Special Investigations, and the U.S. Navy Criminal Investigation Service. Special Agents assigned to CITF conduct law enforcement interests of suspects and memorialize record of these interviews on documents known as CITF Form 40s.

3. As Deputy Staff Judge Advocate, I am in a position to oversee many of the functions and operations of the Task Force. Due to the nature of my position, I am familiar with the procedures followed by CITF in responding to requests for information from its files pursuant to the provisions of the Freedom of Information Act (FOIA), 5 U.S.C. Sec. 552. I am familiar with the FOIA request filed by Mr. Dickstein Shapiro. Dickstein Shapiro is a private law firm with its principal place of business in Washington, D.C. Dickstein Shapiro represents clients that include large corporations, entrepreneurs, charitable organizations, as well as a variety of *pro bono* clients. The statements contained in this declaration are based on my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

### Purpose of This Declaration

4. This declaration describes the record system at CITF, provides an accounting of CITF documents determined to be responsive to Plaintiff's requests and justifications for withholding responsive information from CITF records pursuant to FOIA exemptions (b)(1), (b)(2), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(F). See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

### Explanation of CITF'S Record System

5. Special Agents assigned to CITF conduct law enforcement interviews of persons suspected of involvement in international terrorism at locations throughout the world and

2

memorialize records of these interviews on CITF Form 40s.   Form 40s are scanned or transmitted electronically to a database accessible at several locations, including CITF Headquarters.   In addition, other CITF documents, such as transfer recommendations and jurisdictional assessment are routinely created by CITF personnel and stored electronically in CITF computer databases.

CITF Records Responsive To
Plaintiff's FOIA Request

6. On May 28, 2008 CITF was tasked to conduct a search for documents responsive to plaintiff's FOIA request.  Using electronic search programs known as I2G and Orion Magic, and a manual review of files, CITF employed an extensive list of search terms that identified documents that appeared to be responsive to Plaintiffs' request.  The search encompassed all CITF records created since its inception in 2002 until a cutoff date of June 2008.  Hard copy records were also manually reviewed by CITF personnel to identify other documents responsive to the request.

Explanation of Format Used For The
Justification of Redacted Material

7. All documents located as responsive were processed to achieve maximum disclosure consistent with provisions of the FOIA.  Every effort was made to provide Plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. The FOIA exemptions asserted as grounds for nondisclosure of portions of the documents are FOIA Exemptions (b)(1), (b)(2), (b)(3), (b)(5), (b)(6), and (b)(7)(A)(C)(E).

8. Copies of the documents released contain, on their face, coded categories of exemptions which detail the nature of information withheld pursuant to the provisions of the FOIA.  To further describe the information withheld in more detail than that provided in this

3

declaration could identify the very material that is being protected. No reasonably segregable, non-exempt portions were withheld from Plaintiff. In other words, all material withheld is exempt from disclosure pursuant to a FOIA exemption, or is so intertwined with protected material that segregation was not possible without revealing the underling protected material.

9. The coded categories are provided to aid the court's and plaintiff's review of the explanation of FOIA exemptions used to withhold the protected material within the context of the documents themselves. Each instance of information withheld pursuant to the FOIA on the attached documents is accompanied by a coded designation that corresponds to the categories listed below. For example, if (b)(7)(C) appears on a document, the (b)(7)(C) designation refers to Exemption (b)(7)(C) of the FOIA concerning "Law Enforcement Records – Unwarranted Invasion of Privacy." "Names and Identifying Information of CITF Special Agents." Listed on the next page are the categories used to explain the FOIA exemptions asserted to withhold protected material:

## SUMMARY OF JUSTIFICATION CATEGORIES

| CODED CATEGORIES | INFORMATION WITHHELD |
|---|---|
| Exemption (b)(1) | Classified Information |
| Exemption (b)(2) | Internal Agency Personnel Rules and Practices |
| (b)(2)-1 | Document identification numbers |
| (b)(2)-2 | Agent identification numbers |
| (b)(3) | Information Specifically Exempted by Other Statutes |
| Exemption (b)(5) | Inter/Intra-agency documents |
| (b)(5)-1 | Deliberative Process Privilege |
| (b)(5)-2 | Attorney Work-Product |
| (b)(5)-3 | Attorney-Client Privilege |
| Exemption (b)(6) | Third Party Privacy |
| Exemption (b)(7) | Law Enforcement Records |
| Exemption (b)(7)(A) | Pending Law Enforcement Investigation |
| Exemption (b)(7)(C) | Unwarranted Invasion of Personal Privacy – Law Enforcement Records (claimed in conjunction with (b)(6)) |
| (b)(7)(C)-1 | Names and identifying information of CITF Special Agents |
| (b)(7)(C)-2 | Names and identifying information of US government support personnel (non- |

| | agent) |
|---|---|
| (b)(7)(C) | Names and identifying information of third parties mentioned |
| (b)(7)(C)-4 | Names and identifying information of third parties interviewed |
| (b)(7)(C)-5 | Names and identifying information of subjects of criminal investigations |
| (b)(7)(C)-6 | Names and identifying information of non-CITF law enforcement agents |
| Exemption (b)(7)(E) | Law Enforcement Technique |
| Exemption (b)(7)(F) | Information Which Could Endanger the Life or Safety of Third Parties |

## EXEMPTIONS (b)(2)
### Internal Personnel Rules and Practices

10. CITF is the declaring agency and needs to show with reasonable specificity, and in good faith, why certain documents fall within a particular exemption. FOIA Exemption 2 exempts from disclosure the internal guidelines, rules, practices and procedures of an agency if the disclosure would risk circumvention of the law. Information contained in this category of withholdings includes: results of CITF's agency checks and intelligence community database checks; details regarding other investigative steps undertaken by CITF; statements regarding contemplated next steps in CITF's investigation; and procedures for coordinating CITF's investigation with other agencies.

11. Disclosure of the investigative procedures used and steps taken by CITF would reveal the internal guidelines CITF follows in conducting law enforcement investigations of Guantanamo detainees and other persons of investigative interest in the GWOT. If this information were publicly released, persons hostile to the United States could discern the types of information the government looks for in conducting terrorism-related law enforcement investigations and take steps to counter or thwart the government's effort to obtain such information in the future. Revelation of the nature of CITF's coordination with other agencies would reveal the agencies' areas of relative competence or responsibility, and the distinct investigative tools they employ, thereby permitting persons of interest to the United States to

5

tailor their behavior and adopt means to thwart the agencies' efforts, and risking circumvention of the government's efforts to bring terrorists to justice.

12. Likewise, revelation of the results of CITF's use of certain intelligence community databases to investigate cases would identify the databases CITF uses to conduct its investigations of individuals of law enforcement or intelligence interest, as well as the specific information about any case contained in those various databases. In doing so, disclosure would permit persons hostile to the United States to glean information about how the government maintains and shares information by organizations known to be involved in the information gathering process, thereby risking circumvention of U.S. law enforcement and counter-terrorism efforts.

13. Certain internal numbers, namely document identification numbers and full detainee identification numbers have been withheld under Exemption 2 (high), the disclosure of which information could impede the effectiveness of CITF's internal law enforcement investigative procedures.

14. Exemption 2 has been asserted to protect the document form numbers. Each document is assigned a unique identification number. At times, these numbers are used in lieu of detainees' names and numbers in order to identify a specific interview of a particular detainee that occurred on a specific date. In addition, full Internment Serial Numbers are withheld under exemption 2 because the full ISN is used as an identification tool for each individual detainee as well as other information pertinent to detainee operations and intelligence-gathering operations.

15. If CITF disclosed these numbers, personnel hostile to the United States could use these numbers to access CITF or other Government database systems in an attempt to retrieve information about particular detainees. In addition, disclosure of these numbers may facilitate

disclosure of the identity of a detainee and the detainee's relationship to sensitive on-going investigations involving suspected members of terrorist organizations. Cross referencing of documents could also allow knowledgeable persons to ascertain the identity of detainees and their relationships to certain intelligence. In sum, disclosure of these numbers would impede CITF's effectiveness by allowing unauthorized individuals to access sensitive information within CITF or other agency's database system related to detainees or to identify detainees and specific information related to these detainees.    Therefore this information is withheld pursuant to exemption (b)(2).

### EXEMPTION (b)(3)
#### Information Specifically Exempted by Others Statutes

16.    Exemption 3 incorporates the disclosure prohibitions that are contained in various other federal statutes. As originally enacted in 1966, Exemption 3 was broadly phrased so as to simply cover information "specifically exempted from disclosure by statute." The new Exemption 3 statute prohibits agencies from releasing under the FOIA any proposal "submitted by a contractor in response to the requirements of a solicitation for a competitive proposals," unless that proposal "is set forth or incorporated by reference in a contract entered into between the agency and the contractor that submitted the proposal. (50 U.S.C. § 403-1, with the withheld material being detainee identification numbers).

### EXEMPTION (b)(6)
#### Privacy Interest

17. Exemption 6 permits the Government to withhold  information about individuals contained in personnel and medical files and similar files when the disclosure of such information "would constitute a clearly unwarranted invasion of privacy." Information withheld under this exemption includes telephone numbers and e-mail addresses of DoD personnel.

7

Disclosure of the information would clearly intrude on these DoD personnel's privacy interest. There is no public interest in the disclosure because the information would not inform the general public about CITF's performance of its mission to investigate individuals suspected of committing offenses related to international terrorism in which charges may be brought before military commissions

18. In addition, as discussed in detail later, this same information is exempt from disclosure under Exemptions (b)(7)(C).

## EXEMPTION (b)(7)
### Investigatory Records Compiled For
### Law Enforcement Purposes

19. 5 U.S.C. Sec. 552 (b)(7) exempts from disclosure certain "records compiled for law enforcement purposes." The CITF is a joint law enforcement task force whose sole, overarching mission is to conduct law enforcement investigations. All CITF documents identified as responsive to plaintiff's FOIA request are records compiled for law enforcement purposes.

## EXEMPTION (b)(7)(C)
### Personal Information In Law Enforcement Records

20. Exemption (b) 7(C) covers materials compiled for law enforcement purposes whose disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The categorical withholding of information that identifies third parties in law enforcement records will ordinarily be appropriate under this exemption, given the traditional recognition of the strong privacy interests inherent in law enforcement records.

8

21. The names and identifying information of the following categories of individuals have been withheld from the responsive law enforcement documents: CITF special agents and other law enforcement personnel; government support personnel; third parties mentioned or interviewed; and subjects of CITF's investigation.

### EXEMPTION (b)(7)(E)
#### Records or Information the Disclosure of Which Would Disclose Techniques and Procedures for Law Enforcement Investigations or Prosecutions Which Could Reasonably be Expected to Risk Circumvention of the Law

22. This Exemption affords protection to all law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

### Names of CITF Special Agents

23. Disclosure of the identities of CITF Special Agents, other law enforcement agents and government support personnel involved in the investigation of suspected terrorists and their organizations would subject the Special Agents to harassment and annoyance in the conduct of their official duties and their private lives. Further, release of their names could jeopardize their safety as well as the safety of their family members, and cause undue worry and stress regarding their personal security. There is no legitimate public interest in the identities of these agents and support personnel because of the disclosure would not inform the public about DoD's performance of its statutory duties. Due to the breadth of privacy protection under Exemption (b)(7)(C) and potential harm resulting from release, any release pertaining to these government personnel, would be unwarranted intrusion on these individuals' personal privacy.

9

## Names of U.S. Government Support Personnel

24. Disclosure of the names of U.S. Government Support Personnel, would subject these persons to harassment and annoyance in the conduct of their official duties and their private lives. Further, release of their names could jeopardize their safety and the safety of their family members, and cause undue worry and stress regarding their personal security. Most of the personnel who fall under these categories are translators or non-law enforcement agents working at CITF. Nothing in these documents alleges any wrongdoing by an U.S. Government Support Personnel whose names have been withheld that would justify any public disclosure of their identities. There is no legitimate public interest in the identities of these agents. Therefore, any release of support personnel names would be an unwarranted intrusion of these persons' privacy.

## Names of Third Parties Mentioned

25. Similarly, third parties mentioned in the law enforcement documents, including third parties interviewed by CITF and the subjects to CITF's criminal investigation, have a legitimate privacy interest in not being identified as associated with CITF's criminal investigation of suspected terrorist acts. Disclosure of their identities could subject them to harassment and annoyance and potentially, jeopardize their safety and the safety of their family members. Some of the third parties who fall under this category are potentially unaware of their names have been mentioned in law enforcement files. There is no legitimate public interest in their identities. Due the breadth of privacy protection under exemption (b)(7)(C), and in light of the magnitude of harm that might befall these individuals if they are identified in these investigations of suspected terrorists and their organizations, protection of their identities is appropriate. Therefore, any release of third parties names would be unwarranted intrusion on these persons' privacy.

## Names of Third Parties Interviewed

26. Disclosure of the names of third parties interviewed in the released law enforcement documents would subject these persons to harassment and annoyance. Further, release of their names could jeopardize their safety and the safety of their family members, and cause undue worry and stress regarding their personal security. The fact that they were interviewed could subject them to threats of physical harm. There is no legitimate public interest in the identities of these individuals. Due to the breadth of privacy protection under exemption (b)(7)(C), and in light of the magnitude of harm that might befall these individuals if they are identified in these investigation of suspected terrorists and their organizations, protection of their identities is appropriate. Therefore, any release of third party names would be an unwarranted intrusion on these persons' privacy.

## Names of Subjects of Criminal Investigations

27. Disclosure of the names of subjects of law enforcement investigations into potential terrorists activities and terrorists organizations would subject these persons to harassment and annoyance. Further, release of their names could jeopardize their safety and the safety of their family members, and cause undue worry and stress regarding their personal security. Most of the documents released under this request contain names of the subjects as well as summaries of their comments to investigations. Release of the subjects' names would allow their names to be matched with their comments. Others taking issue with the disclosures could retaliate against the subjects either directly or through threats and attacks against family members or property. There is no legitimate public interest in the identities of these subjects. Due to the breadth of privacy protection under exemption (b)(7)(C), and in light of the magnitude of harm that might befall

these individuals if they are identified in these investigations of suspected terrorists and their organizations, protection of their identities is appropriate. Therefore, any release of subjects' names would be an unwarranted intrusion on these persons' privacy.

### Names of Non-CITF Law Enforcement Agents

28. Disclosure of the names of non-CITF law enforcement agents investigating suspected terrorists and their organizations would subject the agents to harassment and annoyance in the conduct of their official duties and their private lives. Further, release of their names could jeopardize their safety and the safety of their family members, and cause undue worry and stress regarding their personal security.. There is no legitimate public interest in the identities of these agents. Due to the breadth of privacy protection under Exemption (b)(7)(C) and potential harm resulting from release, any release of Agent names would be an unwarranted intrusion on these agents' personal privacy, even with respect to the discharge of their official duties.

Pursuant to 28 U.S.C. Sec. 1746, under the penalty of perjury, I declare the foregoing to be true and correct.

Executed this 21st day of August, 2008.

for: CPT, JA

JEFFERSON L. KASTER
LtCol, USMC
Deputy Staff Judge Advocate

12

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 2,3 | 10-Jun-06 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(2); (b)(3); (b)(6); (b)(7)(C); (b)(7)(E) | (b)(2) - This exemption is taken in order to protect document form numbers pertaining to detainee operations and intelligence gathering operations. (b)(3) This exemption is taken in order to protect information specifically exempted from disclosure by other Federal Statute; (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7) This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. (b)(7)(E) - This exemption is taken to protect law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions preventing to circumvention of the law. |
| CITF 4 | Unknown | Letter written in Arabic | b(1); b(1) Sec 1.4c; (b)(2) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors determining whether disclosure would damage the national security. (b)(1) Sec 1.4 - This exemption is taken in order to protect against unauthorized disclosure of Foreign Government information. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinent to detainee operations and intelligence-gathering operations. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 5 | 10-Jun-06 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(2); (b)(3); (b)(6); (b)(7)(C) | (b)(2) - This exemption is ta protect document form num detainee operations and int gathering operations.(b)(3) other Federal Statute.(b)(6 specifically exempted from is taken in order to protect i unwarranted invasions of p This exemption is taken in investigatory information cc enforcement purposes, whi reasonably be expected to unwarranted invasion of pe |
| CITF 6-30 | Unknown | Pictures | (b)(1); (b)(1) Sec 1.4C; (b)(2) | (b)(1) - This exemption is ta protect national security int specifically tasked with inv international terrorism susp qualified to consider the co determining whether disclo damage the national securi - This exemption is taken ir against unauthorized disclc Government information. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 31-88 | (1) 9-June-2006; remainder 10-June-2006 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(1) Sec 1.4C; (b)(2); (b)(3); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(1)Sec 1.4 C - This exemption is taken in order to protect against unauthorized disclosure of Foreign Government information. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(3) This exemption is taken in order to protect information specifically exempted from disclosure by any other Federal Statute; (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 89-91 | 24-Sept-2003 & 26-Sept 2003 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(6); (b)(7)(A)&(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings; (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 92 | 18-Sep-03 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(3); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(3) This exemption is taken in order to protect information specifically exempted from disclosure by any other Federal Statute; (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 93-94 | 2003–16-Sept-2003 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(6); (b)(7)(A)&(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings; (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 95-96 | 10-Sep-03 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(6); (b)(7)(A)&(C) | (b)(1) - This exemption is taken in order to protect national security interests. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations.  (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings; (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| CITF 97-98 | 2-Sep-03 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(2); (b)(6); (b)(7)(A)&(C) | (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations.  (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings; (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 99 | 10-May-04 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(2); (b)(6); (b)(7)(A)&(C) | (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinent to detainee operations and intelligence-gathering operations.  (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings; (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| CITF 100-102 | 13-Dec-04 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(2); (b)(6); (b)(7)(A)&(C) | (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinent to detainee operations and intelligence-gathering operations.  (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings; (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 103 | 26-Mar-04 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(3); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(3) This exemption is taken in order to protect information specifically exempted from disclosure by any other Federal Statute; (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy.(b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 104 | 3-Apr-04 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(3); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinent to detainee operations and intelligence-gathering operations. (b)(3) This exemption is taken in order to protect information specifically exempted from disclosure by any other Federal Statute; (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 105-127 | 10-May-04(x2); 3-Nov-04;16-Nov-04;6-Jan-05 | Criminal Investigative Task Force (CITF) Report of Investigative Activity; CITF Memoranda; Interview report; Pictures | (b)(1); (b)(2); (b)(5); (b)(6); (b)(7)(A)&(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinent to detainee operations and intelligence-gathering operations. (b)(5)- This exemption is taken to protect privileged interagency or intra-agency meoranda or letters which would not be available by law to a party in litigation. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(A) - This exemption is taken to protect information concerning pending law enforcement proceedings. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 128 | 26-Oct-04 | CITF Memorandum | (b)(1); (b)(2); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 129,130 | 23-Jan-06 | Investigative Summary | (b)(1); (b)(2); (b)(5); (b)(6); (b)(7)(C)&(E) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(5) - This exemption is taken to protect privileged interagency or intra-agency meoranda or letters which would not be available by law to a party in litigation. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. (b)(7)(E) - This exemption is taken to protect law enforcement information that would disclose techniques and procedures for law enforcement investigations or prosecutions pr |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 133-137 | 26-Aug-03 | Summary of case file | (b)(1); (b)(2); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 138-141 | 20-Mar-04 | Intelligence Assessment | (b)(1); (b)(2); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF 142,143 | 6-Feb-06 | Memorandum | (b)(1); (b)(2); (b)(5); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(5)- This exemption is taken to protect privileged interagency or intra-agency meoranda or letters which would not be available by law to a party in litigation. (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| CITF Document Number | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| CITF-144 | 6-Jan-05 | Criminal Investigative Task Force (CITF) Report of Investigative Activity | (b)(1); (b)(2); (b)(3); (b)(6); (b)(7)(C) | (b)(1) - This exemption is taken in order to protect national security interests. CITF is specifically tasked with investigating international terrorism suspects. It is uniquely qualified to consider the complex factors in determining whether disclosure would damage the national security. (b)(2) - This exemption is taken in order to protect disclosure of document form numbers pertinant to detainee operations and intelligence-gathering operations. (b)(3) This exemption is taken in order to protect information specifically exempted from disclosure by any other Federal Statute; (b)(6) - This exemption is taken in order to protect against unwarranted invasions of privacy. (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO LLP,

        Plaintiff,

        v.

DEPARTMENT OF DEFENSE,

and

DEPARTMENT OF THE NAVY

        Defendants.

Civil Action No. 1:08-cv-00226-PLF

## DECLARATION OF ALESIA Y. WILLIAMS

I, Alesia Williams, Chief of the Freedom of Information Act Staff, Defense Intelligence Analysis Center, Boiling Air Force Base, Washington, D.C. 20340, do hereby declare the following to be true and correct:

1.     I am the Chief of the Freedom of Information Act Staff for the Defense Intelligence Agency ("DIA" or "Agency"), Department of Defense ("DOD"). I have served as the Chief of the Freedom of Information Act (FOIA) Staff since January 2008. Prior to that I was an administrative officer processing FOIA requests at DIA from November 2006 to December 2007, and I was a contractor assigned to DIA as a FOIA Senior Document Reviewer from January to November 2006. Prior to coming to DIA, one of my duties in the United States Air Force (USAF) was to work with FOIA requests. I also spent over 5 years supervising two USAF FOIA offices. I oversee DIA's FOIA staff within the FOIA and Declassification Services Branch (DAN-1A) that receives, processes, and responds to

requests for DIA records under the FOIA and the Privacy Act, and I am the initial denial authority for this Agency. At my direction, DIA personnel search Agency records systems under their control to identify documents and other information which may be responsive to individual requests. They forward any potentially responsive records located to my office, which in turn determines whether responsive records should be withheld under any applicable statutory FOIA or Privacy Act exemptions. The activities of my staff are governed by the Department of Defense, "DOD Freedom of Information Act Program Regulation," found at 32 C.F.R Part 286, as supplemented by the "Defense Intelligence Agency (DIA) Freedom of Information Act," regulation found at 32 C.F.R. Part 292. In the course of my official duties at DIA, I have become personally familiar with the FOIA request by Lisa Marie Kaas, attorney at Dickstein Shapiro LLP.

2.      The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon determinations made by me in accordance therewith.

3.      The Defense Intelligence Agency is a component of DOD. Its mission is to collect, analyze, and provide intelligence on the military capabilities of foreign military forces to the Secretary of Defense, the Joint Chiefs of Staff, and other DOD components. The Defense Intelligence Agency also manages the Defense Attaché System for the Department of Defense. The DIA organization and mission is more fully set out at 32 C.F.R. Part 385, "Defense Intelligence Agency." Because of its mission to collect, analyze and provide foreign intelligence, the vast majority of Agency records are classified in the interests of national security in accordance with Executive Order 12958, as amended, "Classified National Security Information."

4. On 14 June 2007, one of the plaintiff's attorney's, Ms. Lisa Marie Kaas, submitted a request to the DOD FOIA office for records pertaining to the death of Salah Ali Abdullah Ahmed Al Salami, ISN 693, at Guantanamo Bay in June 2006.

5. On 21 May 2008, the DOD FOIA office referred one document to DIA for review. DIA reviewed the document and responded back to DOD with release recommendations on 29 May 2008.

6. Certain segments of the above-described document have been redacted by Freedom of Information Act employees in the FOIA and Declassification Services Branch, as reflected in the accompanying Vaughn Index. These redactions are explained in detail below.

## FOIA EXEMPTIONS CLAIMED

### Portions of Document Withheld Under 5 U.S.C. 552(b)(1)

7. The current basis for classification of national security information is found in Executive Order (E.O.) 12958, as amended by E.O. 13292. Section 1.1 of E.O. 12958, as amended, authorizes an Original Classification Authority (OCA) to classify information owned, produced or controlled by the United States government if it falls within one of the following eight classification categories specified in Section 1.4 of E.O. 12958:

(a) military plans, weapons systems, or operations;

(b) foreign government information;

(c) intelligence activities (including special activities), intelligence sources or methods, or cryptology;

(d) foreign relations or foreign activities of the United States, including confidential

sources;

(e) scientific, technological, or economic matters relating to the national security;

(f) United States government programs for safeguarding nuclear materials or facilities;

(g) vulnerabilities or capabilities of systems, installations, projects or plans relating to the national security; or

(h) weapons of mass destruction.

8.      Section 1.2 of E.O. 12958, as amended, provides that information covered by one or more of these classification categories may be classified at one of three classification levels - Top Secret (TS), Secret (S) or Confidential (C) - depending on the degree of harm that would result from the unauthorized disclosure of such information. Information is classified at the Confidential level if unauthorized disclosure would reasonably be expected to cause damage to national security. Information is classified at the Secret level if its release would cause serious damage to the national security. Classification at the Top Secret level is maintained if its release would cause grave damage to national security.

### 1.4(c) — Intelligence Sources and Methods

9.      Material withheld under Exemption (b)(1) is information relating to intelligence sources and methods. Section 1.4(c) of E.O. 12958, as amended, recognizes that the disclosure of intelligence sources can cause damage to the national security. DIA relies on a variety of types of intelligence sources to collect foreign intelligence critical to our national security. Intelligence sources can include individuals, foreign or American, foreign entities, and the intelligence and security services of foreign governments. Intelligence sources can be expected to furnish information only when confident that they

are protected from retribution by the absolute secrecy surrounding their relationship to the United States government. Sources that are compromised become extremely vulnerable to retaliation from a variety of entities including their own governments or others having a stake in the confidentiality of the information provided by the source. In certain parts of the world, the consequences of public disclosure to an individual that has served as a U.S. source are often swift and far reaching, from economic reprisals to possible harassment, imprisonment, or even death.

10.    Section 1.4(c) of E.O. 12958, as amended, also recognizes that the release of intelligence methods can cause damage to national security. Intelligence methods are the means and the manner in which an intelligence agency collects information to support military operations, assist in national policymaking, assess military threats, and otherwise accomplish its mission. Detailed knowledge of the methods and practices of an intelligence agency must be protected from disclosure because such knowledge would be of material assistance to those who would seek to penetrate, detect, prevent, avoid, or damage the intelligence operations of the United States.

11.    Disclosure of information the U.S. government obtains through intelligence sources or methods could reasonably be expected to enable foreign authorities to identify U.S. intelligence activities, methods or sources, and to emplace countermeasures to them, which would damage the ability of the U.S. government to acquire information that is often critical to the formulation of U.S. foreign policy and the conduct of foreign relations. Based on the information provided to me in the course of my official duties, the document identified in the Vaughn Index as being withheld in part under Section 1.4(c) of E.O. 12958, as amended, contains information concerning intelligence sources and methods.

Release of this information would reveal intelligence sources and methods and impair the intelligence collection mission of the intelligence community. Release of this information could negatively impact the government's ability to defend the nation against terrorism. This information remains currently and properly classified under E.O. 12958, as amended, and it is appropriately withheld under FOIA exemption (b)(1).

### Portions of the Document Withheld Under 5 U.S.C. § 552(b)(2)

12.    Portions of the document are not releasable pursuant to 5 U.S.C. § 552(b)(2) if they pertain to "internal matters of a relatively trivial nature" or "more substantial internal matters, the disclosure of which would risk circumvention of a legal requirement." Such information includes government office names, symbols and codes, telephone identifiers, and internal procedures.

13.    Administrative handling codes, the Intelligence Information Report number, the email addresses on classified networks, internal office symbols, internal phone numbers and other similar point of contact information, and message routing data were withheld under (b)(2) because they are internal and trivial in nature and are of no public interest. An administrative number assigned to the preparer of the Intelligence Information Report and a source code were also withheld because they are more substantial internal matters. Release of this information may reveal the identity of the report's preparer and the identity of the source. Additionally, sensitive unclassified material dealing with transnational terrorism was withheld within the report because it describes the type of information the intelligence community is interested in collecting as well as the analysis used and the level of accuracy of the method. Disclosure of this information would risk circumvention of a legal requirement.

**Portions of the Document Withheld Under 5 U.S.C. 552(b)(3)**

14.     Subsection (b)(3) of the FOIA permits the withholding of documents that are "specifically exempted from disclosure by statute provided that such statute. . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . ." 10 U.S.C. § 424 provides as follows: (a) Exemption from disclosure--Except as required by the President or as provided in subsection (c), no provision of law shall be construed to require the disclosure of--(1) the organization or any function of an organization of the Department of Defense named in subsection (b); or (2) the number of persons employed by or assigned or detailed to any such organization or the name, official title, occupational series, grade, or salary of any such person.  Section 424(b) "[c]overed organizations" provides that this section applies to the following organizations of the Department of Defense: (1) The Defense Intelligence Agency . . . .

15.     Portions of document have been withheld under exemption (b)(3) because they specifically identify the name, office affiliation, and contact information of a DIA employee.  The number of the Intelligence Information Report was also withheld under (b)(3).  Release of this information would reveal DIA's organizational structure and affect the agency's mission.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 20th day of August, 2008.

*Alesia Y. Williams*

Alesia Y. Williams
Chief, Freedom of Information Act Staff

**DICKSTEIN SHAPIRO LLP'S FOIA REQUEST VAUGHN INDEX TO THE
DECLARATION OF ALESIA Y. WILLIAMS**

Document Number 1
Bates Number(s): N/A
Document Type: Intelligence Report
Classification: CONFIDENTIAL
Date of Document: 131845Z MAR 07
Author: DIA
Addressee: Military Organization
Subject: Results of DNA Analysis of Guantanamo Detainees.
Pages: 2
Document Released in Part
Exemption: 552 (b)(1) The document contains information which, if publicly released,
would reveal intelligence sources and methods and compromise the intelligence
information collection mission effectiveness of the intelligence community. Release of
this information may reveal the identity of a human source. Accordingly, the information
is to be accorded protection from mandatory release under Executive Order 12958, as
amended, section 1.4 (c).
Exemption: 552 (b)(2) was used to protect information that pertains solely to the internal
rules and practices of the agency. Information withheld under (b)(2) includes the
Intelligence Information Report (IIR) number, message routing data, administrative
handling codes, an administrative number assigned to the preparer of the IIR, a source
code, internal office symbols, email addresses, and phone numbers. Portions of the ISN
number were withheld. The release of this information may reveal the identity of the
source, as well as the preparer of the report.
Exemption: High (b)(2) was used to protect sensitive unclassified information regarding
transnational terrorism. The material withheld under high (b)(2) describes intelligence
that the intelligence community is interested in collecting, as well as the analytical
methodology used. Release of this information would inform our adversaries what types
of information the intelligence community is interested in and our methods of collecting
and analyzing it.
Exemption: 552(b)(3) Title 10 Section 424 was used to withhold DIA employee names,
office symbols, and phone numbers, and the IIR number. The release of this information
would reveal DIA's organizational structure.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Dickstein Shapiro LLP | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Case No.  1:08-cv-00226 |
| Department of Defense et al., | ) |
| | ) |
| Defendants | ) |
| | ) |

---

## DECLARATION OF MICHAEL E. REHEUSER

---

I, Michael E. Reheuser, hereby declare under penalty of perjury that the following information is true and correct to the best of my knowledge:

1.    I am an Associate Deputy General Counsel in the Office of General Counsel (OGC) of the United States Department of Defense ("DoD").  OGC provides legal advice to the Secretary of Defense and other leaders within the DoD.  I am responsible for, among other things, overseeing Freedom of Information Act (FOIA) litigation involving the DoD.

2.    The statements in this declaration are based upon my personal knowledge, upon my review of information available to me in my official capacity, and upon my conclusions.

3.    On June 14, 2007, DoD received a FOIA request from Ms. Lisa Kass of Dickstein Shapiro LLP (plaintiff) for documents concerning the detention and death of Guantanamo detainee Salah Ali Abdullah Ahmed A. Salami.  I am familiar with that request, and the litigation related to the request.

1

3.      The purpose of this declaration is to describe the search for documents conducted by DoD's Office of General Counsel (OGC) in response to plaintiff's FOIA request, to explain the nature of the information withheld from those documents and to describe which DoD components were searched.

4.      The following DoD components were tasked to search for documents: Joint Task Force-Guantanamo Bay through the U.S. Southern Command, the DoD Office of General Counsel, the Office of the Assistant Secretary of Defense for Detainee Affairs, the Naval Criminal Investigative Service, the Criminal Investigation Task Force, the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC), and the Armed Forces Institute of Pathology through the Army Surgeon General.   The U.S. Central Command (Centcom) and the Defense Intelligence Agency (DIA) reviewed documents that were referred to them by other DoD components.  In addition, two outside agencies were referred responsive records that either originated with them, or contained information that originated with them: the Department of State and the FBI.

5.      After receiving the FOIA request from the DoD FOIA office, personnel in OGC undertook a search of our records systems.  A search was conducted of electronic and email file systems, both classified and unclassified of those OGC personnel who were reasonably expected to have responsive information to the plaintiff's FOIA request.  A hard copy record search was also done.  The terms of the search included the detainee's ISN number and his name.  I reviewed each of the responsive records and determined which exemptions should be applied.

## Explanation of Withholdings in DoD GC Documents

6.    All of the responsive documents that were located by OGC were "bates" stamped and any relevant exemptions to those documents were noted on the attached *Vaughn* index. As noted in the *Vaughn* index, some of the documents contained information being withheld by our office under exemption (b)(5) as "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure.

7.    The *Vaughn* index also references withholding under exemption (b)(6) by OGC. This information consists of the names and phone numbers of various DoD personnel and is being withheld because the disclosure of such information "would constitute a clearly unwarranted invasion of [their] personal privacy." This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld.

7.    Finally, the *Vaughn* index also references withholdings under exemption (b)(2). Portions of these documents that are being withheld under this exemption are internal matters

3

that shed no light on the operations of the government, specifically; office numbers, phone numbers and other trivial information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this _____ 21ˢᵗ day of August 2008, at Arlington, Virginia.

Michael E. Reheuser

4

8/21/2008

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 1-9 | Email | DoD OGC | OASD-PA | 16-Jun-06 | Draft media notices re: suicides (FOUO) | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| 10-11 | Email | DoD OGC | DoD OGC | 12-Jun-06 | Draft court filings re: suicides | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |

8/21/2008

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 12 | Email | DoD OGC | DOJ | 12-Jun-06 | Draft Court filings re: suicides | Two exemptions apply to this document:  Exemptions 5 and 6.  (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails.  These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process.  Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors.  Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material.  (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifing information of DoD and non-DoD employees.  DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.  Under this exemption, names, emails addresses and other personal information are withheld. |
| 13-14 | Email | DoD OGC | SOUTHCOM | 12-Jun-06 | GTMO draft could notices re suicides | Three exemptions apply to this document:  Exemptions 2, 5 and 6.  (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government.  Specifically, they consist of office numbers, phone numbers and other trivial information.  (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails.  These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process.  Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors.  Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material.  (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to pr DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.  Under this exemption, names, emails addresses and other personal information are withheld.  This document is denied in full. |
| | | | | | | |
| | | | | | | |
| | | | | | | |

2

8/21/2008

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 15 | Email | DoD OGC | DoJ | 12-Jun-06 | GTMO Suicides | Two exemptions apply to this document: Exemptions 5 and 6. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. |
| 17-18 | Email | DoD OGC | DoD OGC | 26-Jun-06 | Motions for Preservation Order of all evidence regarding suicides | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| | | | | | | |
| | | | | | | |
| | | | | | | |

3

8/21/2008

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 19 | Email | DoD OGC | DoJ | 15-Jun-06 | CSS Report on Suicides | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| 20 | Email | DoD OGC | Redacted | 16-Jun-06 | Article on suicides | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |

4

DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|
| 21 | Email | DOD OGC | Redacted | Article on suicides | Three exemptions apply to this document: Exemptions 2, 5 and 6.<br>(b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information.<br>(b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material.<br>(b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees.<br>DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.<br>Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| 36 | Email | DoD OGC | DoD OGC | GTMO suicides | Two exemptions apply to this document: Exemptions 5 and 6.<br>(b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material.<br>(b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifing information of DoD and non-DoD employees.<br>DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.<br>Under this exemption, names, emails addresses and other personal information are withheld. |

5

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 37 | Email | DoD OGC | DoJ | 10-Jun-06 | GTMO suicides | Two exemptions apply to this document: Exemptions 5 and 6.<br><br>(b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material.<br><br>(b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifing information of DoD and non-DoD employees.<br>DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.<br>Under this exemption, names, emails addresses and other personal information are withheld. |
| 38-42 | Email | N/A | N/A | | Interagency Experts Group Agenda | Three exemptions apply to this document: Exemptions 2, 5 and 6.<br><br>(b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information.<br><br>(b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material.<br><br>(b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees.<br>DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below.<br>Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| | | | | | | |
| | | | | | | |

6

8/21/2008

8/21/2008

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 43-46 | Email | DoD OGC | DoD OGC | 16-Jun-06 | RTQ Talking Points | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| 47-50 | Email | DoD OGC | DoJ, DoD OGC | 16-Jun-06 | RTQ Talking Points | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |

# DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 51-55 | Email | DoJ | DoD OGC | 16-Jun-06 | RTQ Talking Points | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| 56-64 | Email | DoJ | DoD OGC | 13-Jun-06 | GTMO: draft court notices re suicides (FOUO) | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |

8/21/2008

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Date | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|---|
| 65-66 | Draft News Release | DoJ | Redacted | 13-Jun-06 | Clarification on Legal Status in Case of Detainee Deaths | One exemptions apply to this document: Exemptions 5. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as para of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. |
| 67-69 | Email | SOUTHCOM | DoD OGC | 12-Jun-06 | GTMO: draft court notices re suicides (FOUO) | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

9

## DICKSTEIN VAUGHN INDEX

| Bates Range | Type | From | To | Subject/Title | Exemption(s) |
|---|---|---|---|---|---|
| 70-73 | Email | SOUTHCOM | DoD OGC | GTMO: draft court notices re suicides (FOUO) | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |
| 74-83 | Email | SOUTHCOM | DoJ/DoD OGC | GTMO: draft court notices re suicides (FOUO) | Three exemptions apply to this document: Exemptions 2, 5 and 6. (b)(2) Portions of this document that are being withheld under this exemption are internal matters that shed no light on the operations of the government. Specifically, they consist of office numbers, phone numbers and other trivial information. (b)(5) This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors. Portions of this document also include discussions of legal analysis and opinions prepared by DoD attorneys, which are exempt from disclosure as attorney client and/or attorney work-product material. (b)(6) This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of GS-15 and below. Under this exemption, names, emails addresses and other personal information are withheld. This document is denied in full. |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Dickstein Shapiro LLP,          ) | |
|                         ) | |
|           Plaintiff,      ) | |
|                         ) | Case No. 1:08-CV-00226 |
|        v.                    ) | |
|                         ) | DECLARATION OF |
| UNITED STATES DEPARTMENT OF    ) | SANDRA HODGKINSON |
| DEFENSE et al.,               ) | |
|           Defendant.     ) | |

Pursuant to 28 U.S.C. §1746, I, Sandra Hodgkinson, declare as follows:

1.  I am the Deputy Assistant Secretary of Defense for Detainee Affairs (DASD-DA) in the Office of the Under Secretary of Defense for Policy, Department of Defense ("DoD"). As the DASD-DA I am responsible for providing policy advice to the Under Secretary of Defense on matters regarding detainees in DoD custody. I have held this position since July of 2007. As such, I supervise the employees and the work product of this office.

2.  In my capacity as DASD-DA, I am familiar with Office of Detainee Affairs' (ODA) procedures for responding to requests for access to records and information in ODA's custody and control pursuant to the Freedom of Information Act (FOIA) and Executive Order (EO) 12958, as amended. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations made in accordance therewith.

1

### Purpose of this Declaration

3. The purpose of this declaration is to describe the search for documents responsive to the

FOIA request filed by Ms. Lisa Kass of Dickstein Shapiro LLP ("plaintiff"). On June 14, 2007,

a request was sent to the Department of Defense for documents concerning the detention and

death of Guantanamo detainee Salah Ali Abdullah Ahmed A. Salami.

### Search for Responsive Documents

4. The request was forwarded to this office on May 20, 2008 from the Department of Defense

Office of the General Counsel.

5. In accordance with established office practice, it is my understanding that ODA conducted a

search on 20 & 21 May 2008 to locate responsive documents in ODA's records. All employees

were tasked to conduct manual and electronic searches for both classified and unclassified

records and electronic mail correspondence generated by this office. The detainee's name and

Internment Serial Number (ISN) were used as the search parameters in this particular request.

ISNs are identifying numbers unique to a detainee, analogous to a social security number. The

search yielded three documents and a series of electronic mail messages that were in ODA files,

one document was created by OARDEC (Office for the Administrative Review of the Detention

of Enemy Combatants). This document was referred to OARDEC for their review and they will

respond separately to this litigation. I am not aware of any other responsive documents.

### Explanation of Withholdings in DoD ODA Documents

6. All of the responsive documents that were located by ODA were appropriately redacted and

any relevant exemptions to those documents were noted on the attached *Vaughn* index. As noted

in the Vaughn index, some of the documents contained information being withheld by our office

under exemption (b)(5) as "inter-agency or intra-agency memorandums or emails which would

not be available by law to a party other than an agency in litigation with the agency." This exemption is taken in order to protect internal deliberations of the government to include inter-agency and intra-agency memorandum and emails. One document (ODA 3) is a draft memorandum concerning the repatriation of the remains of the deceased and the second document (ODA 4-26) is an email string that included interagency email discussions concerning the press guidance surrounding the deaths. Additional portions of this email string were referred to the Department of State for their review. These documents are predecisional and deliberative because they contain (1) preliminary opinions that do not reflect DoD's final views, and (2) observations, opinions, advice, proposals and recommendations as part of the consultative process. Disclosure of this information could chill full, frank and open international discussions on matters of policy between subordinates and superiors.

7. The *Vaughn* index also references withholdings under exemption (b)(6) by ODA. This information consists of the names, phone numbers and email addresses of various DoD personnel and is being withheld because the disclosure of such information "would constitute a clearly unwarranted invasion of [their] personal privacy." This exemption is taken in order to protect the privacy of DoD employees, and to protect personally identifying information of DoD and non-DoD employees. DoD policy is to withhold names of all military personnel at the rank of Colonel and below, and all civilians at the rate of YA-3 and below. Under this exemption, names, email addresses and other personal information are withheld.

I declare under penalty of perjury that the foregoing is true and correct.

Date: 8/19/08

Sandra Hodgkinson

3

**Vaughn Index**

| Pages Covered | Comments/Exemptions | Document Description |
|---|---|---|
| | | |
| pp 1-2 | **Release in Full** | Report – Update on Guantanamo Suicides |
| p 3 | **Deny in Full**, (b) (5) pre-decisional memo | Draft Document – Detainee Movement Operation |
| p 4-26 | **Deny in Full**, (b) (6) names of DoD employees, (b) (5) pre-decisional questions on press guidance; portions referred to DOS for their review. | Email- GTMO suicides |

## Vaughn Index

| Pages Covered | Comments/Exemptions | Document Description |
|---|---|---|
| | | |
| pp 1-2 | **Release in Full** | Report – Update on Guantanamo Suicides |
| p 3 | **Deny in Full**, (b) (5) pre-decisional memo | Draft Document – Detainee Movement Operation |
| p 4 | **Grant in Part**, (b) (6) names of DoD employees, (b) (5) pre-decisional questions on press guidance. | Email- GTMO suicides |
| pp 5-26 | **Grant in Part**, (b) (6) names of DoD employees; waiting for DOS review of DOS information | Email - GTMO suicides |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DICKSTEIN SHAPIRO LLP<br>1825 Eye Street, NW<br>Washington, DC 20006-5403,<br><br>          Plaintiff,<br><br>v.<br><br> DEPARTMENT OF DEFENSE<br>Office of Freedom of Information<br>1155 Defense Pentagon<br>Washington, DC 20301-1155<br><br>And<br><br>DEPARTMENT OF THE NAVY<br>Naval Criminal Investigative Service<br>Headquarters<br>716 Sicard Street, SE, Suite 2000<br>Washington Navy Yard, DC 20388-5380<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   C.A. No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Pursuant to 28 U.S.C. § 1746, I, Margaret A. Johnson, Judge Advocate General's Corps,

Army National Guard, hereby state to the best of my knowledge that the following is true,

accurate and correct:

1. I am a Legal Advisor to the Office for the Administrative Review of the Detention of Enemy

Combatants at U.S. Naval Base Guantanamo Bay, Cuba ("OARDEC"). OARDEC is an

organization within the Department of Defense ("DoD") that is responsible for conducting

several processes involving detainees at Guantanamo Bay, Cuba, including Combatant Status

1

Review Tribunals ("CSRTs") and Administrative Review Boards ("ARBs"). In my capacity as the Legal Advisor to OARDEC, I serve as an advisor to the Director, Combatant Status Review Tribunals.

2. I am familiar with the Complaint for Injunctive Relief filed by Dickstein Shapiro LLP counsel for now deceased Guantanamo detainee Salah Ali Abdullah Ahmed Al Salami pursuant to the Freedom of Information Act ("FOIA") for all documents, including but not limited to photographs, video tapes, memoranda, reports, and electronic mail or other digital media, relating in any way to the detention at Guantanamo Bay, Cuba of Salah Ali Abdullah Ahmed Al Salami, and the same relating to the death of said detainee at Guantanamo Bay in June 2006. Unless otherwise indicated, the statements in this declaration are based upon my personal knowledge and information obtained by me in the course of my official duties.

3. The purpose of this declaration is to provide information concerning the searches undertaken by OARDEC in response to the FOIA request submitted by Dickstein Shapiro LLP, the processing of documents responsive to Plaintiff's FOIA request, and the justifications for withholding certain documents and information under FOIA.

## DETAINEE PROCESSES AT GUANTANAMO

4. The CSRT process was established in 2004, by order of the Deputy Secretary of Defense, as a fact-based proceeding to determine whether individuals detained by DoD at Guantanamo were properly classified as enemy combatants, and to permit each detainee the opportunity to contest his designation as an enemy combatant. In contrast, the ARB process assesses annually whether each detainee who had previously been determined by a CSRT to be an enemy combatant continues to pose a threat to the United States or its allies, or whether there are other factors

2

bearing on the need for continued detention. Each CSRT and ARB panel is composed of three

neutral commissioned military officers. The CSRT implementing regulation is available at

http://www.defenselink.mil/news/Aug2006/d20060809CSRTProcedures.pdf, and the ARB

implementing regulation is available at http://www.defenselink.mil/news/Aug2006/

d20060809ARBProceduresMemo.pdf.

5. The CSRT panels were charged with making a final determination as to whether a particular

detainee was properly designated an enemy combatant. In reaching this decision, the CSRT

utilized primarily law enforcement and intelligence information and other data and assessments

in the possession of the government.

6. In contrast to the CSRT panels, the ARB panels make only non-final, non-binding

recommendations to a Designated Civilian Official ("DCO") regarding the disposition of the

detainee, i.e., whether he should be released, transferred, or remain in DoD detention. The

Deputy Secretary of Defense serves as the DCO in the ARB process.

7. To assist the ARB in making its recommendation to the DCO and to assist the DCO in

making his ultimate decision, each agency and DoD component involved in the process makes

its own assessments of, and recommendations concerning, particular detainees. These agencies

and DoD components often included the Department of State ("DOS"), the Federal Bureau of

Investigation ("FBI"), the Central Intelligence Agency ("CIA"), the U.S. Army Criminal

Investigation Task Force ("CITF"), DoD's Office of Detainee Affairs ("ODA"), and Joint Task

Force-Guantanamo ("JTF-GTMO"). These agencies and components may offer differing

assessments and recommendations concerning particular detainees.

3

8. In addition, as in the CSRT process, pre-existing law enforcement and intelligence information, summaries and assessments are considered by the ARB in making its recommendations to the DCO, and by the DCO in making his decisions. After the ARB forwards its recommendation to the DCO, the DCO makes a determination as to whether to release, transfer, or continue to detain the individual. If the DCO determines that continued detention is warranted, the detainee will remain in DoD custody, and a new review date will be scheduled to ensure an annual review of the detainee's status. If the DCO determines that a detainee should be transferred from Guantanamo, a diplomatic process is undertaken with the receiving country to obtain transfer assurances, and a further process of interagency consultation is undertaken. The transfer of the detainee does not take place until these processes are successfully completed.

9. As noted before, for both the ARB and the CSRT processes, information and documentation was received from a variety of DoD organizations and other agencies and reviewed by the CSRT and/or the ARB. These documents often contained classified or other sensitive information, including the various organizations' analyses of factual information, and their assessments and recommendations regarding the detainee. These documents were included as exhibits to the CSRT and ARB records. The information found in these exhibits was often quoted or otherwise incorporated into the decision of the CSRT or the recommendation of the ARB, creating a document that was derivatively classified based on the classification level of the information in the original documents.

4

## THE SEARCH FOR RESPONSIVE DOCUMENTS

10.  Mr. Al Salami was detained at Guantanamo Bay, Cuba until he committed suicide on June 10, 2006.  A CSRT was conducted for Mr. Al Salami in November 2004, which concluded that Mr. Al Salami was properly classified as an enemy combatant.  Since then, Mr. Al Salami also had one (1) ARB in June 2005.  Following the ARB, the DCO decided in September 2005 that Mr. Al Salami should remain in DoD detention.  Due to Mr. Al Salami's death, the ARB 2 cycle was not completed on him and no other ARBs were conducted.

11.  OARDEC is responsible for maintaining the official files of these proceedings.  OARDEC maintains separate files for each CSRT and ARB proceeding.  As part of its internal tracking system, OARDEC maintains an ARB/CSRT Schedule each year.  The schedule contains information pertaining to the ARB schedule for the current year as well as information pertaining to ARBs held during the preceding year for all of the detainees at Guantanamo Bay, Cuba.  The schedule lists the detainees according to ARB-eligibility and the individual groups to which they are assigned and further identifies each according to his short and full ISN, his referenced name, his nationality, and his language.  The information pertaining to the preceding year's ARB for each detainee includes the date the ARB was held and the ARB's recommendation, the date of the DCO decision, and the date the detainee was notified of the decision.  Pertinent information for the current year's ARBs is added to the document as each ARB is completed, including whether the unclassified summary has been approved, the date the ARB is held and the ARB's recommendation, the date of the DCO decision, and the date the detainee is notified of the decision.

5

12. On August 1, 2008, OARDEC was tasked by the Washington Headquarters Services (WHS),

a Department of Defense (DoD) Field Activity organizationally aligned under the Director of

Administration and Management (DA&M) for the Office of the Secretary of Defense (OSD) to

review one (1) document found by the Office of Detainee Affairs (ODA) in its search responsive

to plaintiff's FOIA request. In response, members of OARDEC's legal and FOIA staffs

reviewed the document for information exempt pursuant to the Freedom of Information Act (5

USC Section 552). OARDEC found that all of the information contained in the document on

pages 1 through 10 pertaining to individual detainees with the exception of their full names, their

short ISNs (Internment Serial Numbers), their nationalities, their native languages as well as

information found on page 9 which pertains to Mr. Al Salami should be excluded pursuant to

Exemptions (b) (2) and (b) 5. This review included a determination for each entry in the

document withheld in part or in its entirety that no further information could be released without

risk of disclosure of information protected and exempted from disclosure under one or more

FOIA provisions.

**Documents Containing Classified Information Withheld Under Exemption 2**

13. The document contains redactions under Exemption 2. Specifically, the Full ISN of the each

detainee listed on the document was redacted under Exemption 2. Exemption 2 allows redaction

of information that pertains solely to the internal rules and practices of the agency. Full

Internment Serial Numbers (ISNs) are marked as classified information according to JTF-GTMO

Security Classification Guidance dated December 1, 2006 and not released outside of DoD .

Short ISNs, the full names of detainees, their nationalities, and their respective languages are

marked as unclassified but For Official Use Only (FOUO) according to JTF–GTMO Security Classification Guidance.

**ARB Documents Containing Material Protected by the Deliberative Process Privilege**

14. Certain information was withheld from the ARB/CSRT Schedule under the deliberative process privilege pursuant to Exemption 5. These withholdings include assessments, recommendations, and opinions (including the recitations and summaries of such assessments, recommendations and opinions) regarding the disposition of Mr. Al Salami and all of the other detainees at Guantanamo Bay, Cuba provided by various DoD components and other agencies to the ARBs/CSRTs. For example, the Office of Detainee Affairs and OARDEC both provided assessments of Mr. Al Salami's and all of the other detainees' intelligence value and threat level, and recommendations regarding their disposition, to the ARBs for their consideration in formulating recommendations to the DCO. The Legal Advisors to OARDEC provided opinions with regard to the legal sufficiency of the ARB proceedings. Other agencies, such as the FBI, also provided assessments and recommendations regarding Mr. Al Salami's and all of the other detainees disposition to the ARBs. The ARBs, in turn, provided assessments of Mr. Al Salami's and all of the other detainees' intelligence value and threat level, and recommendations regarding his disposition, to the DCO for his consideration in deciding whether to release, transfer or continue to detain them.

15. These assessments and disposition recommendations were pre-decisional and were integral to DOD's decision-making process regarding whether to release, transfer or continue to detain Mr. Al Salami and all of the other detainees through the ARB process. To publicly release this information would discourage open and frank discussions between and among these various

7

organizations and components, the ARBs, and the DCO. The intra- and inter-agency assessments and recommendations were provided to the ARBs and the DCO for their consideration in making recommendations (in the case of the ARBs) or final decisions (in the case of the DCO) regarding the disposition of particular detainees. If these assessments and recommendations are made public, it would have a chilling effect on the organizations and components that are part of the ARB review process. The DoD components and other U.S. government agencies that participate in the ARB process must be able to engage in open and frank discussions with regard to detainee matters, both internally and with each other, as reflected by the contents of these documents. Release of the withheld information would seriously erode the necessary free exchange of information within and between the ARBs, the DCO, and the DoD components and other U.S. government agencies participating in the ARB review process.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August ___20___, 2008.

*Margaret A. Johnson*
Margaret A. Johnson, LTC, JAGC, ARNG

8

INDEX OF DoD DOCUMENT
DICKSTEIN SHAPIRO LLC v. DoD and DoN
DOCUMENT DENIED IN PART

| Bates Stamp Pages | Type of Document | To | From | Subject/ Title | Date | Exemption(s) | Remarks |
|---|---|---|---|---|---|---|---|
| 000001-000010 | Internal Tracking Matrix | N/A | N/A | ARB-3/ CSRT Schedule | (2007) | Two exemptions apply to this document. Exemption Two: The full ISN (Internment Serial Number) of detainees at Guantanamo Bay, Cuba (GTMO) is deemed classified information IAW Joint Task Force-Guantanamo (JTF-GTMO) Security Classification Guidance dated 1 Dec 06 01. Release of this information is exempt because it pertains to the internal rules and practices of OARDEC and JTF-GTMO and would circumvent those organizations' policies and impede them in the conduct of their mission. Exemption Five: Information pertaining to 1) the previous year's ARB (ARB 2) for each detainee at GTMO: i.e., the date the ARB was held, the ARB's recommendation, the DCO's decision and its date, and the date the detainee was notified of the decision, and information pertaining to 2) the current year's ARB (ARB 3 which had already been held on some of the detainees); i.e., whether the unclassified summary has been approved, the date the ARB was held, the ARB's recommendation, the DCO's decision and its date, and the date the detainee was notified are part of the deliberative process and contain subject evaluations, opinions, and recommendations | Detainees' Full ISNs are classified as SECRET//NOFORN. Information pertaining to preceding and current years' ARBs is part of the deliberative and decision-making process. |

**INDEX OF DoD DOCUMENT**
**DICKSTEIN SHAPIRO LLC v. DoD and DoN**
**DOCUMENT DENIED IN PART**

and are also part of OARDEC's decision-making process.

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DICKSTEIN SHAPIRO LLP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. |
| v. | ) | |
| | ) | DECLARATION OF |
| | ) | JACQUELINE J. SCOTT |
| | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| DEFENSE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, JACQUELINE J. SCOTT, hereby declare under penalty of perjury that the following

information is true and correct to the best of my knowledge.

1. I serve as the Command Freedom of Information Act (FOIA) and Privacy Act (PA) Officer

for the U.S. Central Command (USCENTCOM), Department of Defense (DoD). Based on my

current position, I am familiar with the procedures adhered to by the DoD Office of Freedom of

Information, in responding to requests for information pursuant to Title 5 U.S.C.

§ 552, the FOIA, and Title 5 U.S.C. § 552a, the Privacy Act.

2. On 21 May 2008, DoD Office of Freedom of Information (OFOI) forwarded eleven (11)

documents to USCENTCOM FOIA Requester Service Center, tasking USCENTCOM to review

the documents and provide a release recommendation in response to records requested by

Plaintiff Dickstein Shapiro Limited Liability Partnership (LLP), which requested all documents,

including but not limited to photographs, video tapes, memoranda, reports, and electronic mail or

other digital media, relating in any way to the detention at Guantanamo Bay, Cuba of Salah Ali Abdullah Ahmed Al Salami, and relating to any way to the death of Salah Ali Abdullah Ahmed Al Salami at Guantanamo Bay in June 2006. This command (USCENTCOM) was not tasked to conduct a search. USCENTCOM FOIA Requester Service Center discovered that five of the eleven documents were duplicate documents. Therefore, the USCENTCOM FOIA Requester Service Center tasked only six documents to Combined Joint Task Force 101 (CJTF-101) in Afghanistan to review for releasability.

3. Five of the six documents were properly classified pursuant to Executive Order 12958, as amended. Specifically, classified portions of document one (CENTCOM 1, 2, and 3), document two (CENTCOM 4, 5, and 6), document three (CENTCOM 7 and 8), document four (CENTCOM 9, 10, and 11), and document five (CENTCOM 12 and 13) fall within Sections 1.4(a) and 1.4(c) of Executive Order 12958, as amended, because its disclosure would reveal the intelligence collection process used to identify and collect information regarding potential targets of the intelligence collection process; information that was actually collected; and, provide a time line of when the investigations were conducted. The withheld information includes information of intelligence value which may pertain to counterterrorism or operational methods and procedures, and the dates the interrogation began and ended. Because documents one through five contain above described information, they are exempt from release under 5 U.S.C. § 552b(1), which allows for the withholding of information that (A) is specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and (B) is in fact properly classified pursuant to such Executive Order.

4. Exemption 2, found at 5 U.S.C. 552(b)(2), protects information related solely to internal agency practices and information that, if disclosed, would substantially hinder the effective performance of a significant function of the agency through circumvention of a statute, instruction, regulation, or policy. The withheld information marked (b)(2) contains unclassified but operationally sensitive information which, if released, would disclose internal rules, practices, and procedures which could be used by the enemy to circumvent lawful actions by personnel involved in interrogation operations; the application of specific interrogation technique(s); and, connect the detainee with information collected, and identify the country that captured the detainee, which could be considered detrimental to that country's government if the general public was aware of that country's involvement.

5. Exemption 6, found at 5 U.S.C. 552(b)(6), protects from disclosure personally identifying information of DoD personnel when the disclosure would constitute an unwarranted invasion of privacy. The interpreter's name is withheld under Exemption 6 that, if revealed, could put our service member, contractor, and civilian employees at risk. Disclosure of such information is an unwarranted invasion of privacy, in that the privacy rights of this individual outweigh any public interest in disclosure of this personal information, which would provide no meaningful information about government activities.

6. Portions of documents one through five that are not exempt from disclosure under Exemptions 1, 2 and 6 have been forwarded to DoD Office of Freedom of Information with USCENTCOM's release recommendation. Document six (CENTCOM 14 through 38) is fully releasable.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated this ___14th___ day of _August_ 2008, at MacDill AFB, FL.

JACQUELINE J. SCOTT
YC-02, Department of the Air Force Civilian
Chief, Freedom of Information and Privacy Act Section
Records Branch, Resources and Analysis Division
Command and Control, Communications and
Computer Systems (C4) Directorate
U.S. Central Command

Document Number: 1
Bates Numbers: CENTCOM 1, CENTCOM 2, CENTCOM 3
Document Type: Summary Interrogation Report
Number of Pages: 3
Classification: Secret
Date of Document: Unknown
Title: Summary Interrogation Report
Subject: Ali Abdullah Ahmed
Exemptions: 5 U.S.C. 552(b)(1) and (b)(2)
Rationale:
(b)(1) – Summary Interrogation Reports are currently and properly classified in accordance with
Executive Order 12958, Section 1.4(a), military plans, weapons systems or operations and
Section 1.4(c), intelligence activities (including special activities), intelligence sources or
methods, or cryptology. There is no discretion to release properly classified information. The
redacted information would reveal the intelligence collection process used to identify and collect
information regarding potential targets; information that was actually collected; and, provide a
lineage of time the investigation was conducted.
(b)(2) high – Redacted information marked (b)(2) contains unclassified but operationally
sensitive information which, if released, would disclose internal rules, practices, and procedures
which could be used by the enemy to circumvent lawful actions by personnel involved in
interrogation operations; the application of specific interrogation technique(s); and, connect the
detainee with information collected, and identify the country that captured the detainee, which
could be considered detrimental to that country's government if the general public was aware of
that country's involvement.

Document Number:2
Bates Numbers: CENTCOM 4, CENTCOM 5, CENTCOM 6
Document Type: Summary Interrogation Report
Number of Pages: 3
Classification: Secret
Date of Document
Title: Summary Interrogation Report
Subject: Ali Abdullah Ahmed
Exemptions: 5 U.S.C. 552(b)(1), (b)(2), and (b)(6)
Rationale:
(b)(1) – Summary Interrogation Reports are currently and properly classified in accordance with
Executive Order 12958, Section 1.4(a), military plans, weapons systems or operations and
Section 1.4(c), intelligence activities (including special activities), intelligence sources or
methods, or cryptology. There is no discretion to release properly classified information. The
redacted information would reveal the intelligence collection process used to identify and collect
information regarding potential targets; information that was actually collected; and, provide a
lineage of time the investigation was conducted.
(b)(2) high – Redacted information marked (b)(2) contains unclassified but operationally
sensitive information which, if released, would disclose internal rules, practices, and procedures
which could be used by the enemy to circumvent lawful actions by personnel involved in
interrogation operations; the application of specific interrogation technique(s); and, connect the
detainee with information collected, and identify the country that captured the detainee, which
could be considered detrimental to that country's government if the general public was aware of
that country's involvement.

(b)(6) – The interpreter's name was redacted under Exemption 6. Disclosure of such information is an unwarranted invasion of privacy as it would provide no meaningful information about government activities. As a result, the privacy rights of this individual outweigh any public interest in disclosure of this personal information.

Document Number: 3
Bates Numbers: CENTCOM 7, CENTCOM 8
Document Type: Summary Interrogation Report
Number of Pages: 2
Classification: Secret
Date of Document
Title: Summary Interrogation Report
Subject: Ali Abdullah Ahmed
Exemptions: 5 U.S.C. 552(b)(1), (b)(2), and (b)(6)
Rationale:
(b)(1) – Summary Interrogation Reports are currently and properly classified in accordance with Executive Order 12958, Section 1.4(a), military plans, weapons systems or operations and Section 1.4(c), intelligence activities (including special activities), intelligence sources or methods, or cryptology. There is no discretion to release properly classified information. The redacted information would reveal the intelligence collection process used to identify and collect information regarding potential targets; information that was actually collected; and, provide a lineage of time the investigation was conducted.
(b)(2) high – Redacted information marked (b)(2) contains unclassified but operationally sensitive information which, if released, would disclose internal rules, practices, and procedures which could be used by the enemy to circumvent lawful actions by personnel involved in interrogation operations; the application of specific interrogation technique(s); and, connect the detainee with information collected, and identify the country that captured the detainee, which could be considered detrimental to that country's government if the general public was aware of that country's involvement.
(b)(6) – The interpreter's name was redacted under Exemption 6. Disclosure of such information is an unwarranted invasion of privacy as it would provide no meaningful information about government activities. As a result, the privacy rights of this individual outweigh any public interest in disclosure of this personal information.

Document Number: 4
Bates Numbers: CENTCOM 9, CENTCOM 10, CENTCOM 11
Document Type: Summary Interrogation Report
Number of Pages: 3
Classification: Secret
Date of Document
Title: Summary Interrogation Report
Subject: Ali Abdullah Ahmed
Exemptions: 5 U.S.C. 552(b)(1), (b)(2), and (b)(6)
Rationale:
(b)(1) – Summary Interrogation Reports are currently and properly classified in accordance with Executive Order 12958, Section 1.4(a), military plans, weapons systems or operations and Section 1.4(c), intelligence activities (including special activities), intelligence sources or methods, or cryptology. There is no discretion to release properly classified information. The redacted information would reveal the intelligence collection process used to identify and collect

information regarding potential targets; information that was actually collected; and, provide a lineage of time the investigation was conducted.

(b)(2) high – Redacted information marked (b)(2) contains unclassified but operationally sensitive information which, if released, would disclose internal rules, practices, and procedures which could be used by the enemy to circumvent lawful actions by personnel involved in interrogation operations; the application of specific interrogation technique(s); and, connect the detainee with information collected, and identify the country that captured the detainee, which could be considered detrimental to that country's government if the general public was aware of that country's involvement.

(b)(6) – The interpreter's name was redacted under Exemption 6. Disclosure of such information is an unwarranted invasion of privacy as it would provide no meaningful information about government activities. As a result, the privacy rights of this individual outweigh any public interest in disclosure of this personal information.

Rationale:

Document Number: 5
Bates Numbers: CENTCOM 12, CENTCOM 13
Document Type: Summary Interrogation Report
Number of Pages: 2
Classification: Secret
Date of Document
Title: Summary Interrogation Report
Subject: Abdullah Ahmed (Nasir)
Exemptions: 5 U.S.C. 552(b)(1), (b)(2), and (b)(6)
Rationale:

(b)(1) – Summary Interrogation Reports are currently and properly classified in accordance with Executive Order 12958, Section 1.4(a), military plans, weapons systems or operations and Section 1.4(c), intelligence activities (including special activities), intelligence sources or methods, or cryptology. There is no discretion to release properly classified information. The redacted information would reveal the intelligence collection process used to identify and collect information regarding potential targets; information that was actually collected; and, provide a lineage of time the investigation was conducted.

(b)(2) high – Redacted information marked (b)(2) contains unclassified but operationally sensitive information which, if released, would disclose internal rules, practices, and procedures which could be used by the enemy to circumvent lawful actions by personnel involved in interrogation operations; the application of specific interrogation technique(s); and, connect the detainee with information collected, and identify the country that captured the detainee, which could be considered detrimental to that country's government if the general public was aware of that country's involvement.

(b)(6) – The interpreter's name was redacted under Exemption 6. Disclosure of such information is an unwarranted invasion of privacy as it would provide no meaningful information about government activities. As a result, the privacy rights of this individual outweigh any public interest in disclosure of this personal information.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO LLP,                )
                                      )
            Plaintiff,                )
                                      )
      v.                              ) Civil Action
                                      ) No. 1:08-cv-00226-PLF
DEPARTMENT OF DEFENSE, ET AL.,        )
                                      )
            Defendant.                ) **DECLARATION OF**
                                      ) **JOSEPH P. CEGLIO,**
                                      ) **LT, JAGC, USN**
                                      )
_____ )

Pursuant to 28 U.S.C. § 1746, I, Joseph P. Ceglio, declare as follows:

1.    I am Joseph P. Ceglio, Lieutenant, Judge Advocate General's Corps, U.S. Navy, serving as the Assistant Staff Judge Advocate to the Director, Naval Criminal Investigative Service (NCIS), Department of the Navy.

2.    NCIS is a federal law enforcement agency that protects and defends the Department of the Navy against terrorism and foreign intelligence threats, investigates major criminal offenses, enforces the criminal laws of the United States and the UCMJ, assists commands in maintaining good order and discipline, and provides law enforcement and security services to the Navy and Marine Corps on a worldwide basis.

3.    The Secretary of the Navy designated the Director, NCIS as the initial denial authority and custodian

responsible for all Freedom of Information Act (FOIA) and
Privacy Act (PA) requests for documents held by NCIS.  See
58 F.R. 10702, 63 F.R. 35578; see also 32 C.F.R. §
701.118(m).  In turn, the Director, NCIS, delegated this
responsibility to me.  See NCIS Administration Manual, Ch.
20-21.

4.    I have reviewed the Complaint in this civil action,
and I have personal knowledge of the documents at issue.
The statements contained in this declaration are based upon
my personal knowledge and upon information provided to me
in my official capacity.

## Purpose of this Declaration

5.    The purpose of this declaration is to explain the
bases for the Naval Criminal Investigative Service's (NCIS)
withholding of information from records responsive to the
FOIA request ("Request") filed by Ms. Lisa Marie Kaas the
attorney for Dickstein Shapiro LLP ("Plaintiff") working on
a pro bono basis for Guantánamo detainee and Yemeni
national Salah Ali Abdullah Ahmed Al Salami.  NCIS
information within the responsive records was withheld
pursuant to FOIA Exemptions 2 (5 U.S.C. § 552(b)(2)), 7(C)
(5 U.S.C. § 552(b)(7)(C)), and 7(E) (5 U.S.C. §
552(b)(7)(E)).  Information that reasonably can be
segregated was forwarded to Mr. Stephen Fisher of the
Department of Defense, Office of Freedom of Information who
will make the ultimate release to Plaintiff's counsel.

## Processing of Responsive Records

6.   On June 14, 2007, Plaintiff's counsel submitted a FOIA request ("Request") to the Department of Defense (DOD) requesting records relating to Plaintiff's client, Salah Ali Abdullah Ahmed Al Salami.

7.   Shortly thereafter, the Department of Defense, Office of Freedom of Information, forwarded Plaintiff's Request to the NCIS. The NCIS received the Request on July 19, 2007.

8.   On August 16, 2007, Chris D. Connor, Lieutenant Commander, Judge Advocate General's Corps, U.S. Navy, denied the Request based on Exemption 7(A) (5 U.S.C. § 552(b)(7)(A)) because: (1) the information sought pertained to a pending law enforcement investigation; and (2) the release of the investigation could reasonably be expected to cause some foreseeable harm.

9.   On October 11, 2007 Plaintiff appealed the denial of the Request to the Office of the Judge Advocate General (Code 14).

10.   On January 18, 2008, James A. Protin, Commander, Judge Advocate General's Corps, U.S. Navy, on behalf of the Office of the Judge Advocate General (Code 14), affirmed the NCIS' denial of Plaintiff's Request.

11.   On February 27, 2008, Plaintiff filed a complaint in the United States District Court, District of Columbia (Case Number: 1:08-cv-00226-PLF).

12.   On May 12, 2008, the NCIS officially closed its investigation into the death of Plaintiff's client, Salah Ali Abdullah Ahmed Al Salami.

13.   On or about May 15, 2008, the NCIS FOIA Office conducted a line-by-line review of all records to determine whether there were responsive records within these documents, and if so to determine whether, and if, any applicable FOIA exemptions may apply, and to determine whether there was segregable information within these records.

14.   Based on this review, the NCIS found it appropriate to withhold portions of the documents bearing Bates numbers (a) through (c), and Bates numbers 1 through 1,426 pursuant to FOIA Exemptions 2, 7(C), and 7(E).

15.   On May 27, 2008, the NCIS forwarded the documents bearing Bates numbers (a) through (c), and Bates numbers 1 through 1426 to Mr. Stephen Fisher, Department of Defense Office of Freedom of Information, in part with portions of those documents withheld by the NCIS pursuant to FOIA Exemptions 2, 7(C), and 7(E) for ultimate release to Plaintiff at a future date.

## The Withholding of Responsive Information under Exemptions 2, 7 (C), and 7(E)

16.   FOIA Exemption 2 exempts from disclosure the internal guidelines, rules, practices and procedures of an agency if

the disclosure would risk circumvention of the law.  See 5

U.S.C. § 552 (b)(2).  Bates numbers 184, 188, 189, 475,

477, 922, 938, 941, 943, 944, 950, 958, 959, 965, 975, 984,

987, 989-991, 996-998, 1000, 1003, 1006, 1007, 1011, 1014,

1016, 1019, 1021, 1023, 1025, 1028, 1031, 1034, 1035, 1039,

1042, 1076, 1084, and 1099 were forwarded to Mr. Stephen

Fisher, Department of Defense Office of Freedom of

Information, to be released in part with portions of the

documents withheld pursuant to FOIA Exemption 2.  The

terminology used, and described in these sections, is

purely for internal agency use.  At the same time, because

the terminology could refer to information about

intelligence sources or activities, their disclosure could

enable persons hostile to the United States to piece

together the government's methods for handling detainees

and related detention facility intelligence data, thereby

risking circumvention of U.S. detainee operations and

counterterrorism efforts in the Global War on Terrorism.

17.  FOIA Exemption 7(C) covers materials compiled for law

enforcement purposes whose disclosure "could reasonably be

expected to constitute an unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(7)(C).  Bates numbers a-c, 1-12,

16, 25-31, 33, 34, 36-37, 39-40, 42-43, 45-46, 48-49, 51-

52, 54-55, 57-58, 61, 68, 71, 159-161, 163, 165-168, 170-

173, 175-176, 178-189, 220-227, 232-240, 432, 462, 469-472,

477, 728-735, 770, 793-794, 830-836, 867, 914-926, 933,

935-952, 956-960, 963-967, 972-977, 981-1008, 1011-1028,
1031-1035, 1038-1048, 1054-1064, 1068-1104, 1108-1109,
1113, 1119, 1130-1131, 1134, 1140-1141, 1153, 1201-1202,
1239, 1244-1246, 1261-1263, 1278-1280, 1295-1296, 1302-
1304, 1310-1313, 1354, 1361-1362, 1372, 1382-1385, 1392,
1422-1425 were forwarded to Mr. Stephen Fisher, Department
of Defense Office of Freedom of Information, to be released
in part with portions of the documents withheld pursuant to
FOIA Exemption 7(C). The individual(s) whose information
was redacted, including third parties, have a right to the
protection of personal information from being released to
the general public.  Individual names, social security
numbers, addresses, phone numbers, initials, and other
personal identifying data are private.  The strong privacy
interest of these individuals is not outweighed by the
public interest in disclosure because the release of this
private information does not further any substantial public
interest.  Furthermore, the disclosure would not advance
any public interest in being informed about DOD's
performance of statutory duties.
18.  FOIA Exemption 7(E) exempts from mandatory disclosure
"records or information compiled for law enforcement
purposes" the disclosure of which "would disclose
techniques and procedures for law enforcement
investigations or prosecutions, or would disclose
guidelines for law enforcement investigations or

prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

19. The NCIS has withheld information that falls within Exemption 7(E). Bates number 188 was forwarded to Mr. Stephen Fisher, Department of Defense Office of Freedom of Information, to be released in part with portions of the document withheld pursuant to FOIA Exemption 7(E) because the information would give interested parties improper insight into the techniques and guidelines used during detainee operations, allowing them to manipulate or circumvent these operations to the detriment of the United State's efforts in the Global War on Terrorism.

20. Included in this category of records and information that could disclose investigative techniques are DOD guidelines pertaining to detainee handling and detention facility security at U.S. Naval Base Guantánamo Bay.

21. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: _08 - 20 - 08_

JOSEPH P. CEGLIO
Lieutenant
Judge Advocate General's Corps
U.S. Navy

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| a -c | 12-May-08 | Naval Criminal Investigative Service (NCIS) Report of Investigation (Closed) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1 - 4 | 24-Apr-08 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 5 - 6 | 24-Apr-08 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 7 - 9 | 29-Feb-08 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 10 - 12 | 20-Dec-07 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 13 - 16 | 5-Oct-07 | NCIS Investigative Action | 16, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 17 - 24 | Undated | Enclosure (A) of 05Oct07 NCIS Investigative Action: Department of Justice (DOJ) Filter Team Procedures, referred to DOJ | None | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 25 -27 | 21-Nov-07 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 28 - 30 | 12-Oct-07 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 31 - 33 | 13-Sep-07 | NCIS Report of Investigation (Interim) | 31, 33 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 34 - 36 | 8-Aug-07 | NCIS Report of Investigation (Action) | 34, 36 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 37 - 39 | 5-Aug-07 | NCIS Report of Investigation (Interim) | 37, 39 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 40 - 42 | 5-Jul-07 | NCIS Report of Investigation (Interim) | 40, 42 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 43 - 45 | 5-Jun-07 | NCIS Report of Investigation (Interim) | 43, 45 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 46 - 48 | 9-May-07 | NCIS Report of Investigation (Interim) | 46, 48 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 49 - 51 | 20-Apr-07 | NCIS Report of Investigation (Interim) | 49, 51 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 52 - 54 | 9-Mar-07 | NCIS Report of Investigation (Interim) | 52, 54 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 55 - 57 | 9-Feb-07 | NCIS Report of Investigation (Interim) | 55, 57 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 58 - 60 | 11-Jan-07 | NCIS Report of Investigation (Interim) | 58, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 61 - 64 | 11-Dec-06 | NCIS Report of Investigation (Interim) | 61, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 65 - 71 | 27-Nov-06 | NCIS Investigative Action | 68, 71 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 72 - 158 | Enclosure (A) - undated, Enclosure (B) - 07Jul06, Enclosure (C) - 11Aug06, Enclosure (D) - (E) - undated, Encl. (F) - 07Jul06, Encl. (G) - 08Nov04, Encl. (H) - (J) - undated | Enclosures (A) - (J) of 27Nov06 NCIS Investigative Action: Documents referred to DOJ | None | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 159 | 8-Dec-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 160 - 161 | 6-Nov-06 | Enclosure (A) of 08Dec06 NCIS Investigative Action:  Forensic Examination Request from NCIS to USACIL | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 162 - 163 | 1-Dec-06 | Enclosure (B) of 08Dec06 NCIS Investigative Action: Memorandum from U.S. Army Criminal Investigation Laboratory (USACIL) to NCIS | 163, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 164 - 165 | 4-Dec-06 | Enclosure (C) of 08Dec06 NCIS Investigative Action: Memorandum from USACIL to NCIS | 165, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 166 - 167 | 17-Nov-06 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 168 - 170 | 24-Oct-06 | NCIS Report of Investigation (Interim) | 168, 170 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 171 | 19-Sep-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 172 - 174 | Undated | Enclosure (A) of 19Sep06 NCIS Investigative Action:  Forensic Examination Request | 172, 173 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 175 - 178 | 29-Jun-06 | Enclosure (B) of 19Sep06 NCIS Investigative Action: Memorandum from USACIL to NCIS (2 enclosures) | 175, 176, 178 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 179 - 180 | 25-Sep-06 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 181 - 183 | 25-Aug-06 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 184 | 20-Jun-06 | Statement | (b)(2),  (b)(7)(C) | (b)(2)(high) - This exemption is taken for internal Department of Defense information. (b)(7)(C) - This exemption is taken in order to protect invetigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 185 | 20-Jul-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 186 - 187 | 21-Jul-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 188 - 189 | 21-Jul-06 | NCIS Investigative Action | 188, (b)(2), (b)(7)(E), (b)(7)(C); 189, (b)(2), (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(E) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which would disclose investigative techniques.  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 190 - 219 | 31Jul06 - 02Aug06 | Exhibits (148) - (150) of 25Aug06 NCIS Report of Investigation (Interim): Final Autopsy Reports for Victims, referred to the Armed Forces Medical Examiner's (AFME) office | | |
| 220 | 9-Aug-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 221 | 28-Jun-06 | Enclosure (A) of 09Aug06 NCIS Investigative Action: Memorandum from USACIL to NCIS | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 222 | Undated | Enclosure (B) of 09Aug06 NCIS Investigative Action: Evidence Custody Document (ECD) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 223 - 225 | 9-Aug-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 226 - 228 | Undated | Enclosure (A) of 09Aug06 NCIS Investigative Action:  Forensic Examination Request from NCIS to USACIL | 226, 227 (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 229 - 232 | 21-Jul-06 | Enclosure (B) of 09Aug06 NCIS Investigative Action: Memorandum from USACIL to NCIS | 232, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 233 | 11-Jun-06 | NCIS Report of Investigation (Open) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 234 | 17-Jun-06 | NCIS Report of Investigation (Change) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 235 - 239 | 25-Jul-06 | NCIS Report of Investigation (Interim) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 240 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 241 - 431 | Undated | Enclosures (A) - (E) of 17Jun06 NCIS Investigative Action: Photograph Logs and Photographs, referred to SOUTHCOM | | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 432 | 13-Jul-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 433 - 461 | Undated | Enclose (A) of 13Jul06 NCIS Investigative Action:  Criminal Investigation Task Force (CITF) Report of Investigative Activity, referred to CITF | | |
| 462 | 14-Jul-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 463 - 468 | 10-Jun-06 | Enclosure (A) of 14Jul06 NCIS Investigative Action:  referred to SOUTHCOM | | |
| 469 | 19-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 470 - 471 | 23-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 472 | Undated | Enclosure (A) of 23Jun06 NCIS Investigative Action:  Cellblock Linguist Daily Activity Report Form | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 473 - 477 | 22-Jun-06 | NCIS Investigative Action | 475, (b)(2); 477 (b)(2), (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 478 - 727 | Enclosure (A) - Undated, Enclosure (B) - 23Nov06 - 12Jun06 | Enclosures (A) - (B) of 22Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 728 | Undated | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 729 - 730 | 14-Jul-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 731 | 5-Jul-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 732 | 11-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 733 | 11-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 734 - 735 | 30-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 736 - 769 | Undated | Enclosures (A) - (II) of 30Jun06 NCIS Investigative Action: referred to AFME | | |
| 770 | 30-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 771 - 792 | Undated | Enclosures (A) - (V) of 30Jun06 NCIS Investigative Action: referred to AFME | | |
| 793 - 794 | 30-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 795 - 829 | Undated | Enclosures (A) - (II) of 30Jun06 NCIS Investigative Action: referred to AFME | | |
| 830 | Undated | NCIS Memorandum to the Joint Task Force | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 831 | 13-Jun-06 | NCIS Memorandum to the Joint Task Force | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 832 | 17-Jun-06 | NCIS Memorandum to the Joint Task Force | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 833 | 19-Jun-06 | NCIS Memorandum to USACIL | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 834 | 19-Jun-06 | NCIS Memorandum to the Joint Task Force | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 835 | 19-Jun-06 | NCIS Memorandum to the Joint Task Force | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 836 | 19-Jun-06 | NCIS Memorandum to the Joint Task Force | (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 837 - 866 | Exhibit (136) - 13JUn06, Exhibit (137) - 15Jun06, Exhibit (138) - 10Jun06, Exhibit (139) - 21Sep05, Exhibit (140) - 19Jan06 | Exhibits (136) - (140) of 25Jul06 NCIS Report of Investigation (Interim):  referred to SOUTHCOM | | |
| 867 | 3-Jul-06 | NCIS Memorandum to U.S. Southern Command | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 868 - 913 | Undated | Exhibits (142) - (143) of 25Jul06 NCIS Report of Investigation (Interim):  referred to SOUTHCOM | | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 914 - 925 | 20-Jun-06 | NCIS Report of Investigation (Interim) | 922, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 926 | Undated | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 927 - 932 | 10Jun06 - 12Jun06 | Enclosure (A) of Undated NCIS Investigative Action:  referred to SOUTHCOM | | |
| 933 | 19-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 934 | 9-Jun-06 | Enclosure (A) of 19Jun06 NCIS Investigative Action:  referred to SOUTHCOM | | |
| 935 | 15-Jun-06 | Military Suspect's Acknowledgement and Waiver of Rights | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 936 - 939 | 14-Jun-06 | Statement | 938, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 940 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 941 | 10-Jun-06 | NCIS Investigative Action | (b)(2) and (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 942 - 945 | 14-Jun-06 | Statement | 942, 945, (b)(7)(C); 943, 944, (b)(2), (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 946 | 10-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 947 | 15-Jun-06 | Military Suspect's Acknowledgement and Waiver of Rights | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 948 - 951 | 15-Jun-06 | Statement | 950, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 952 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 953 - 955 | 10-Jun-06 | Exhibit (10) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 956 | 15-Jun-06 | Military Suspect's Acknowledgement and Waiver of Rights | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 957 - 960 | 15-Jun-06 | Statement | 958, 959 (b)(2), (b)(7)(C); all other (b)(7)(C) | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 961 - 962 | 10-Jun-06 | Exhibit (12) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 963 | 14-Jun-06 | Military Suspect's Acknowledgement and Waiver of Rights | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 964 - 967 | 15-Jun-06 | Statement | 965 (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 968 - 971 | 10-Jun-06 | Exhibit (14) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 972 | 14-Jun-06 | Military Suspect's Acknowledgement and Waiver of Rights | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 973 - 976 | 14-Jun-06 | Statement | 975 (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 977 | 16-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 978 - 980 | 10-Jun-06 | Exhibit (17) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 981 | 14-Jun-06 | Military Suspect's Acknowledgement and Waiver of Rights | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 982 - 985 | 14-Jun-06 | Statement | 984 (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 986 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 987 - 988 | 10-Jun-06 | NCIS Investigative Action | 987 (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 989 - 992 | 14-Jun-06 | Statement | 989, 990, 991 (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 993 - 995 | 15-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 996 - 997 | 17-Jun-06 | Statement | (b)(2),  (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 998 | Undated | NCIS Investigative Action | (b)(2),  (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 999 | 15-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1000 - 1001 | 10-Jun-06 | NCIS Investigative Action | 1000, (b)(2),  (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1002 | 10-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1003 - 1005 | 14-Jun-06 | Statement | 1003, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1006 | 10-Jun-06 | NCIS Investigative Action | (b)(2),  (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1007 - 1008 | 14-Jun-06 | Statement | 1007, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1009 - 1010 | 10-Jun-06 | Exhibit (30) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 1011 - 1013 | 15-Jun-06 | Statement | 1011, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1014 | Undated | NCIS Investigative Action | (b)(2), (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s). (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1015 - 1018 | 15-Jun-06 | Statement | 1016, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1019 - 1020 | 15-Jun-06 | Statement | 1019, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s). (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1021 - 1022 | 10-Jun-06 | NCIS Investigative Action | 1021, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s). (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1023 - 1027 | 14-Jun-06 | Statement | 1023, 1025 (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1028 | 17-Jun-06 | NCIS Investigative Action | (b)(2),  (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1029 - 1030 | 10-Jun-06 | Exhibit (38) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 1031 - 1033 | 14-Jun-06 | Statement | 1031, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1034 - 1035 | 14-Jun-06 | Statement | (b)(2),  (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1036 - 1037 | 10-Jun-06 | Exhibit (41) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 1038 - 1040 | 14-Jun-06 | Statement | 1039, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1041 | Undated | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1042 - 1043 | 15-Jun-06 | Statement | 1042, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1044 - 1045 | 19-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1046 - 1047 | Undated | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1048 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1049 - 1053 | 27-May-06 | Enclosures (A) - (C) of 17Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 1054 - 1064 | 17-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1065 - 1067 | 11-Jun-06 | Exhibit (49) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 1068 - 1069 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1070 - 1072 | 15-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1073 - 1074 | 15-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1075 - 1076 | 16-Jun-06 | Statement | 1076, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1077 - 1080 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1081 - 1082 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1083 - 1087 | 16-Jun-06 | Statement | 1084, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1088 - 1089 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1090 - 1092 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1093 - 1096 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1097 - 1098 | 16-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1099 - 1100 | 19-Jun-06 | NCIS Investigative Action | 1099, (b)(2), (b)(7)(C); all other (b)(7)(C) | (b)(2) - exemption High 2 - This exemption is related solely to the internal practices of an agency and could risk circumvention of agency regulations or interfer with agency operation(s).  (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1101 - 1102 | 19-Jun-06 | Statement | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1103 - 1104 | 16-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1105 - 1107 | 10-Jun-06 | Enclosure (A) of 16Jun06 NCIS Investigative Action: Ambulence Report, referred to the Bureau of Medicine and Surgery | | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1108 - 1109 | 15-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1110 - 1112 | 10-Jun-06 | Enclosure (A) of 15Jun06 NCIS Investigative Action: Ambulence Report, referred to the Bureau of Medicine and Surgery | | |
| 1113 | 15-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1114 - 1118 | Enclosure (A) - 10Jun06, Enclosure (B) - 06Jun06 | Enclosures (A) - (B) of 15Jun06 NCIS Investigative Action: Medical Records, referred to the Bureau of Medicine and Surgery | | |
| 1119 | Undated | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1120 - 1129 | 10-Jun-06 | Exhibits (67) - (71) of 20Jun06 NCIS Report of Investigation (Interim): CITF Reports of Investigative Activity, referred to CITF | | |
| 1130 | 16-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1131 | Undated | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1132 - 1133 | 10-Jun-06 | Exhibit (74) of 20Jun06 NCIS Report of Investigation (Interim): referred to the Federal Bureau of Investigation (FBI) | | |
| 1134 | 10-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1135 - 1136 | 10-Jun-06 | Exhibit (76) of 20Jun06 NCIS Report of Investigation (Interim): referred to FBI | | |
| 1137 - 1139 | 10-Jun-06 | Exhibits (77) - (78) of 20Jun06 NCIS Report of Investigation (Interim):  CITF Reports of Investigative Activity, referred to CITF | | |
| 1140 - 1141 | 10-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1142 - 1152 | 10-Jun-06 | Exhibits (80) - (86) of 20Jun06 NCIS Report of Investigation (Interim):  CITF Reports of Investigative Activity, referred to CITF | | |
| 1153 | 10-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1154 - 1168 | 14-Jun-06 | Exhibit (88) of 20Jun06 NCIS Report of Investigation (Interim): referred to FBI | | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1169 - 1170 | 10-Jun-06 | Exhibit (89) of 20Jun06 NCIS Report of Investigation (Interim): CITF Report of Investigative Activity, referred to CITF | | |
| 1171 - 1200 | 14-Jun-06 | Exhibits (90) - (91) of 20Jun06 NCIS Report of Investigation (Interim):  referred to FBI | | |
| 1201 | 10-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1202 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1203 - 1207 | Undated | Enclosure (A) of 17Jun06 NCIS Investigative Action:  CITF Report of Investigative Activity, referred to CITF | | |
| 1208 - 1238 | Undated | Enclosure (A) of 17Jun06 NCIS Investigative Action:  CITF Report of Investigative Activity - photographs, referred to SOUTHCOM | | |
| 1239 - 1240 | 16-Jun-06 | NCIS Investigative Action | 1239, (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1241 - 1243 | Undated | Enclosures (A) - (C) of 16Jun06 NCIS Investigative Action: referred to CITF | | |
| 1244 - 1246 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1247 - 1260 | Enclosure (A) - 10Jun06, Enclosure (B) - (D) - 11Jun06 | Enclosures (A) - (D) of 17Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 1261 - 1263 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1264 - 1277 | Enclosure (A) - 10Jun06, Enclosure (B) - (D) - 12Jun06 | Enclosures (A) - (D) of 17Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 1278 - 1280 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1281 - 1294 | Enclosure (A) - 10Jun06, Enclosure (B) - (D) - 12Jun06 | Enclosures (A) - (D) of 17Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 1295 - 1296 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1297 | Undated | Enclosure (A) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1298 | Undated | Enclosure (B) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1299 | Undated | Enclosure (C) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1300 | Undated | Enclosure (D) of 17Jun06 NCIS Investigative Action: Photograph | | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1301 | Undated | Enclosure (E) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1302 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1303 - 1304 | | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1305 | Undated | Enclosure (A) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1306 | Undated | Enclosure (B) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1307 | Undated | Enclosure (C) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1308 | Undated | Enclosure (D) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1309 | Undated | Enclosure (E) of 17Jun06 NCIS Investigative Action: Photograph | | |
| 1310 - 1313 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1314 - 1353 | Undated | Enclosure (A) of 17Jun06 NCIS Investigative Action:  referred to SOUTHCOM | | |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1354 | 13-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1355 - 1360 | 10 -12Jun06 | Enclosure (A) of 13Jun06 NCIS Investigative Action:  referred to SOUTHCOM | | |
| 1361 | 13-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1362 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1363 - 1371 | Undated | Enclosures (A) - (B) of 17Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 1372 | 19-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1373 - 1381 | Undated | Enclosures (A) - (B) of 19Jun06 NCIS Investigative Action: referred to SOUTHCOM | | |
| 1382 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1383 | 15-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1384 | 19-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1385 | 19-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1386 - 1391 | Undated | Exhibits (110) - (112) of 20Jun06 NCIS Report of Investigation (Interim): Preliminary Autopsy Reports, referred to AFME | | |
| 1392 | 17-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1392a | Undated | | | |
| 1393 - 1421 | 15-Jun-06 | Enclosures (B) - (D) of 17Jun06 NCIS Investigative Action: Photographs, referred to SOUTHCOM | | |
| 1422 | 19-Jun-06 | NCIS Investigative Action | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

| Bate Stamps | Document Date | Document Description | Exemptions Claimed | Justification |
|---|---|---|---|---|
| 1423 | 17-Jun-06 | NCIS Report of Investigation (Change) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1424 | 15-Jun-06 | NCIS Report of Investigation (Action) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1425 | 11-Jun-06 | NCIS Report of Investigation (Open) | All (b)(7)(C) | (b)(7)(C) - This exemption is taken in order to protect investigatory information compiled for law enforcement purposes, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |
| 1426 | Undated | Detainee data sheet, referred to SOUTHCOM | | |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO LLP,    )
                         )
            Plaintiff,    )
                         )
                         )    Civil Action No. 1:08-cv-00226-PLF
                         )
                         )    DECLARATION OF REAR ADMIRAL
                         )        DAVID M. THOMAS, JR.
                         )
UNITED STATES DEPARTMENT OF    )
DEFENSE,                  )
                         )
            Defendant.    )
                         )

Pursuant to 28 U.S.C. §1746, I, Rear Admiral David M. Thomas, Jr., declare as follows:

    1. I am a Rear Admiral in the United States Navy, with 31 years of active duty service. I currently serve as the Commander of Joint Task Force – Guantanamo (JTF-GTMO), at Naval Station Guantanamo Bay, Cuba. I have held this position since 27 May 2008. As such, I am directly responsible for the successful execution of the JTF-GTMO mission to conduct detention and interrogation operations and exploit intelligence in support of the Global War on Terror (GWOT), coordinate and implement detainee screening operations, and support law enforcement and war crimes investigations. Prior to assuming command of JTF-GTMO, I served as the Director of Joint Operations Directorate on the Staff of Commander, U.S. Fleet Forces Command.

    2. My responsibilities as Commander of JTF-GTMO include the review of JTF-GTMO information for classification purposes pursuant to Executive Order (EO) 12958 ("Classified

National Security Information"), as amended, and the preparation of declarations in support of

Exemption 1 withholdings under the Freedom of Information Act (FOIA). As the Commander,

JTF-GTMO, I have been designated by the Under Secretary of the Defense for Intelligence as an

Original Secret Classification Authority and a declassification authority pursuant to EO 12958,

as amended, Sections 1.3 and 3.1. My predecessor, Rear Admiral Mark H. Buzby, likewise

exercised Original Secret Classification Authority when he served as the Commander of JTF-

GTMO.[1]

3. I am familiar with the June 2007 FOIA request of plaintiff's counsel seeking all

documents relating to Salah Ali Abdullah Ahmed Al Salami (hereinafter Internment Serial

Number (ISN) 693), an enemy combatant previously detained at the Naval Station Guantanamo

Bay, and the ensuing litigation. I submit this declaration in support of the motion submitted by

the Department of Defense (DOD) for partial summary judgment with respect to responsive

information withheld from release. The statements contained in this declaration are based upon

my personal knowledge and information provided to me in my official capacity.

## Purpose of this Declaration

4. The purpose of this declaration is to explain the bases for withholding information

from records responsive to Plaintiff's FOIA request, pursuant to FOIA exemptions 1, 2, 3, 5 and

6, and 7 (5 U.S.C. § 552(b)(1), (2), (3), (5), (6), and (7)) and to describe certain categories of

classified information in responding to plaintiff's FOIA request for records relating to ISN 693.

Information originally classified through the action of prior Commanders of JTF-GTMO was

occasionally shared with other DOD components or outside government agencies and

incorporated into documents prepared by those components and agencies. This declaration

supports those DOD components' or outside agencies' assertion of Exemption 1 under FOIA

---

[1]   Rear Admiral Buzby served as the Commander of JTF-GTMO from 22 May 2007 until 27 May 2008.

regarding classified information originated with JTF-GTMO. Accordingly, the categories of classified information discussed herein are not intended to be exhaustive.

## Search and Processing of Plaintiff's FOIA Request

5. In June 2007, Dickstein Shapiro LLP filed a FOIA request with DOD seeking records relating to ISN 693, who was formerly detained at the Guantanamo Bay Naval Base in Cuba.

6. On 9 April 2008, DOD's FOIA office referred the request from the Plaintiff to JTF-GTMO, directing that JTF-GTMO conduct a search to locate documents in JTF-GTMO's system of records concerning ISN 693.

7. The Joint Medical Group (JMG) conducted searches through its hard copy files and found approximately 1512 pages of medical records. The hard files were searched because they were the locations where records related to the request were reasonably expected to be found. The key words used in this search were Al Salami's name as well as ISN number 693. These documents are accounted for in the Vaughn Index.

8. The Joint Intelligence Group (JIG) conducted searches through its electronic files and found approximately 77 documents consisting of 259 pages. The electronic files were searched because they were the locations where records related to the request were reasonably expected to be found. One of the records did not originate with JIG and was forwarded to the appropriate agency for review. The key words used in this search were Al Salami's name, known aliases, as well as ISN number 693.

9. The Joint Detention Group (JDG) conducted searches through its hard copy files and found approximately seven records consisting of 333 pages. The hard files were searched because they were the locations where records related to the request were reasonably expected to

be found. One of the records did not originate with JDG and was forwarded to the appropriate agency for review. These documents are accounted for in the Vaughn Index.

10. The JTF-GTMO J3 conducted searches through its electronic and hard files and found approximately 11 records. The electronic and hard files were searched because they were the locations where records related to the request were reasonably expected to be found. Three of the records did not originate with JTF-GTMO J3 and were forwarded to the originating agency for review. The key words used for this search were Al Salami's name as well as ISN number 693. These documents are accounted for in the Vaughn Index.

## Documents Referred to JTF-GTMO

11. In conducting searches in response to Plaintiff's FOIA request, other agencies identified classified information and other records containing information derived from JTF-GTMO documents or originating in JTF-GTMO units. These records were referred to JTF-GTMO for release determination because JTF-GTMO was the originating entity or they pertained to JTF-GTMO matters. JTF-GTMO received documents from the Armed Forces Institute of Pathology (AFIP), the Naval Criminal Investigative Service (NCIS), and the Federal Bureau of Investigation (FBI). The AFIP documents are autopsy reports on each of the three detainees.[2] AFIP determined that the documents could be released. JTF-GTMO concurred that the documents could be released, except for the redaction of names and personal information. The FBI documents are addressed below with the intelligence documents.

12. After the detainee suicides of 10 June 2006, the NCIS conducted an investigation into the circumstances surrounding the suicides at JTF-GTMO. In response to Plaintiff's FOIA request, the NCIS referred documents to JTF-GTMO because they involved incidents that happened at JTF-GTMO and/or involved JTF-GTMO personnel. For example, many of the

---

[2] Three detainees died that night – ISN 693, ISN 588, and ISN 93.

witness statements were those of GTMO personnel, including guards and medical staff. JTF-GTMO personnel reviewed these documents and determined that most documents could be released, with redactions. However, there were some documents, such as the photographs, which were determined to be exempt from disclosure in their entirety.

13. The following paragraphs describe JTF-GTMO's rationale for withholding entire documents, or portions of documents, pursuant to FOIA exemptions 1, 2, 3, 5, 6, and 7.

### FOIA EXEMPTIONS CLAIMED

### Portions of Documents Withheld Under 5 U.S.C. 552(b)(1)

14. The current basis for classification of national security information is found in EO 12958, as amended by EO 13292. Section 1.0 of EO 12958, as amended, authorizes an Original Classification Authority (OCA) to classify information owned, produced or controlled by the United States government if it is an intelligence activity (including special activities), intelligence sources or methods, or cryptology pursuant to Section 1.4(c) of EO 12958.

15. Section 1.2 of EO 12958, as amended, provides that information covered by one or more of the classification categories may be classified at one of three classification levels (CONFIDENTIAL, SECRET, and TOP SECRET) depending on the degree of harm that would result from the unauthorized disclosure of such information. Information is classified at the CONFIDENTIAL level if unauthorized disclosure could reasonably be expected to cause damage to national security. Information is classified at the SECRET level if its release could reasonably be expected to cause serious damage to national security. Classification at the TOP SECRET level is maintained if its release could reasonably be expected to cause exceptionally grave damage to national security.

### 1.4(a) – Military Plans, Weapons Systems, or Operations

16.  Portions of documents were withheld from release pursuant to Section 1.4(a) of EO 12958, as amended, because they contain information concerning military operations.  The U.S. Southern Command (SOUTHCOM) files also contain drawings and diagrams of the cells and camp, showing camp layout, arrangements, and dimensions.  Under the Security Classification Guide, this type of information is classified.   I have determined that this information remains properly classified, and therefore, is exempt from disclosure under Exemption (b)(1) and EO 12958, section 1.4(a) because release of this information would impair operations, including the secure and orderly operation of the camps.

### 1.4(c) – Intelligence Sources and Methods

17.  Portions of documents were withheld from release pursuant to Section 1.4(c) of EO 12958, as amended, because they contain information concerning intelligence sources and methods, and information that, if released, can cause damage to national security.  This information is classified at the SECRET level.

### Justification for Withholding Photos of Detainees Under 1.4(c)

18.  Several identification photographs of ISN 693, taken during his detention at JTF-GTMO and after ISN 693 died, were withheld from the documents provided to Plaintiff.  These photographs were taken by personnel at JTF-GTMO for administrative purposes while ISN 693 was detained at Guantanamo and do not depict anyone other than ISN 693.  Withheld documents containing ISN 693's photographs are found in Detainee ISN 693's detention files, the files held by the JIG, JTF-GTMO J-3 Group, and in Briefing Slides.  Exemption (b)(1) is asserted for photographs that show the faces of the deceased detainees.

19.  Photographs of past and present Guantanamo detainees are classified at the SECRET level at the direction of the Deputy Secretary of Defense because sources will not provide

information if they believe that doing so will jeopardize their safety and/or the safety of their families. It is clear that people who cooperate with capturing authorities are subject to reprisals from those who believe the source provided information about them. Concern about these reprisals and retaliation are particularly acute in the case of individuals linked to terrorist activity. Alleviating the perceived or genuine reprisal concerns of cooperating individuals is an essential part of developing human intelligence sources and gathering usable information. Cooperating detainees at JTF-GTMO have specifically voiced concerns for their families' safety, as well as their own. Even though Detainee ISN 693 is deceased, the release of his photograph could lead to reprisals against his family by linking the family to the detainee. It could also impair the ability or inclination of potential intelligence sources linked to the detainee from providing information that could be useful in the Government's prosecution of the GWOT. Release of these photographs would negatively impact our ability to provide assurances of confidentiality to future human intelligence sources.

20. In order to protect human intelligence sources and to preserve the human intelligence method of collecting information, photographs clearly identifying the face of a detainee are classified at the SECRET level. This information is specifically authorized to be kept secret in the interest of national defense under Executive Order 12958, as amended. In accordance with Section 1.2(a) of that Executive Order, (1) this information has been classified by the Deputy Secretary of Defense, who exercised original classification authority, (2) the information is owned, produced by and for, and is under the control of the United States government, (3) the information concerns "intelligence activities (including special activities), intelligence sources or methods, or cryptology," under Section 1.4 of the Executive Order, and (4) I, as the current Commander, JTF-GTMO, maintain that classification and determined for the reasons stated

herein that the unauthorized disclosure of the information reasonably could be expected to result in serious damage to the national security, including our defense against transnational terrorism. The information therefore meets the requirements found in Executive Order 12958, Section 1.3(a)(2) for SECRET information.

### Justification for Withholding Intelligence Data about Detainee 693 and His Activities and Other Persons or Organizations Under 1.4(c)

21.  Certain of the withheld documents include intelligence data compiled about ISN 693 or summaries of such data.  For example, some of this information is contained in Information Reports, Summary Interrogation Reports, and Memoranda for the Record, which are listed in the Vaughn index for JIG documents.  Intelligence data included in this category of withholdings typically describes the detainee's biographical information; the circumstances of his capture and what he had in his possession when he was captured; the circumstances and date of his transfer to Guantanamo; his travel; his affiliations with individuals and organizations of intelligence interest; and his activities in support of those organizations.  The intelligence data in this category also includes information about other persons and organizations.

22.  I have determined that the intelligence data about ISN 693 and other individuals and organizations described in the following paragraphs reveals details about intelligence we have gleaned regarding individuals and organizations of intelligence interest and also that this information reveals the sources of our intelligence, as well as methods and approaches for collecting intelligence.  At the time of Plaintiff's FOIA request, this intelligence data was classified at the SECRET level through the action of the Commander, JTF-GTMO.  I have determined that this information remains properly classified, and that its release reasonably could be expected to cause serious damage to the national security because it would reveal information concerning intelligence sources, the specific information obtained from such sources, or both.

Accordingly, this information was and is properly classified at the SECRET level, pursuant to Section 1.4(c) of EO 12958, as amended.

23. If this intelligence data were released publicly, it would reveal the content of our intelligence concerning ISN 693 and other persons and organizations.

a. If the United States publicly released information about our intelligence concerning ISN 693, including his affiliations with certain individuals and organizations, how those affiliations came about, and the actions he took while associated with those individuals and organizations, this would reveal information about the United States' intelligence sources and activities. The potential damage caused by such revelations would be exacerbated, given that the intelligence could be pieced together with other information that has entered the public domain to reveal a considerable amount of detail about our intelligence concerning certain individuals and organizations.

b. Revealing the extent of intelligence gathered concerning ISN 693 would show what the United States knows about certain individuals and organizations; what the government does not know; and the leads it followed or did not follow based on the intelligence it obtained. Those critical facts would also be revealed through disclosure of withheld intelligence data concerning other individuals and organizations.

c. Additionally, release of information about the circumstances of ISN 693's capture and the date of his transfer to Guantanamo, particularly if pieced together with similar information about other detainees, would reveal details about how detainees come into U.S. custody, which detainees were transferred to Guantanamo on which dates and through what means, and the routing of planes and movement of detainees on the ground in the theater of operations.

d.  Release of the information described above would aid persons hostile to the United States in hiding their activities and finding other means to thwart our intelligence-gathering efforts, evade capture by U.S. authorities, and otherwise thwarting U.S. counterterrorism efforts.

24.  Public release of such intelligence data, given that it would result in revealing sources of our intelligence who knew or were associated with  ISN 693 and other persons and organizations, would have a chilling effect on human intelligence collection and will substantially impede DOD's ability to gather actionable intelligence from other sources, including current Guantanamo detainees.  Releasing this type of information would reveal publicly who has cooperated with interrogators at Guantanamo and elsewhere and the information they provided.  Such public identification of intelligence sources would place those sources, or individuals who are perceived by others as sources, at risk of retribution and deter other sources from cooperating with ongoing intelligence collection efforts.  Human intelligence is the most essential piece of the strategic intelligence being gathered in the GWOT.

25.  The JIG found documents that were originated with the FBI.  The JIG reviewed the documents with FBI information and concluded that the documents contained classified information that revealed intelligence activities, including sources, methods, and approaches.  I concur that the GTMO-related information in the FBI documents is properly classified and that the documents are exempt from disclosure under Exemption (b)(1).  In addition, there are a few other documents which are being withheld in their entirety for which JTF-GTMO is asserting Exemption (b)(1) because the documents contain classified information involving intelligence activities, including sources and methods.

**Justification for Withholding Intelligence Assessments and Conclusions Under 1.4(c)**

26. Intelligence assessments and conclusions reached by analysts and other personnel at JTF-GTMO are withheld under FOIA Exemptions 1 and 2. At the time of plaintiff's FOIA request, this analytic material was classified at the SECRET level through the action of the Commander, JTF-GTMO. The intelligence assessments and conclusions withheld under Exemption 1 are vital to DOD's assessment of ISN 693's activities, and, even though ISN 693 is deceased, this information remains vital to the Government's ongoing efforts to obtain intelligence on other individuals and organizations. The intelligence data, assessments, and conclusions that appear in the documents pertain to individuals and organizations of intelligence interest, and the relationships among individuals and organizations of intelligence interest. Disclosure of these assessments and conclusions, especially in conjunction with disclosure of the specific intelligence data that is necessarily intertwined with them, would reveal how analysts evaluate intelligence information and the conclusions they reach. Such revelations would aid persons hostile to the United States in hiding their activities and thwarting the government's intelligence gathering, and severely harm the United States' ongoing efforts to gather intelligence critical to fighting the GWOT. I have therefore determined, pursuant to Section 1.4(c) of EO 12958, as amended, that this information remains properly classified at the SECRET level and that its release reasonably could reasonably be expected to cause serious damage to national security. This category of information is found in the assessment documents listed in the Vaughn index.

### Justification for Withholding Intelligence Methods Under 1.4(c)

27. DOD has withheld, under FOIA Exemptions 1 and 2, information reflecting intelligence methods used by JTF-GTMO personnel in gathering, analyzing, and coordinating intelligence data. Included in this category of withholdings are: interrogation techniques and

plans; tools and methods for analyzing intelligence data; tools and requirements for coordinating intelligence gathering and analysis among DOD components and other agencies of the government; and plans for further intelligence gathering based on specific data obtained from intelligence sources.

28.  At the time of plaintiff's FOIA request, the withheld information reflecting intelligence methods described in the preceding paragraph was classified at the SECRET level through the action of the Commander, JTF-GTMO.  I have determined that release of the information pertaining to intelligence methods remains properly classified and that its release reasonably could be expected to cause serious damage to national security.

a.  Intelligence methods are the means by which JIG at JTF-GTMO and other intelligence agencies collect intelligence data to support military operations and to assess and counter terrorist and military threats.  These methods and practices must be protected because their public release would be of material assistance to those who would seek to penetrate, detect, prevent, avoid, or otherwise damage, the intelligence operations of the United States.  The actual loss to the United States if such methods are revealed is not only the cost of developing the initial methods, but also the loss of intelligence while new methods are developed to replace those lost.

b.  In particular, public disclosure of specific methods used with sources of human intelligence, whose identities are themselves classified as described above, would allow individuals of intelligence interest to anticipate and immunize themselves from those methods. Of particular concern is an individual's ability to anticipate particular interrogation techniques. The withheld information includes interrogation techniques used in connection with sources of human intelligence.

29. JTF-GTMO's methods of coordinating intelligence gathering and analysis among agencies and components is also central to their effort to counter acts of terrorism and support military operations. Effective military and counterterrorism strategy depends on the coordination of intelligence gathering among agencies and components responsible for gathering and analyzing intelligence data. Revealing the nature of that coordination and how agencies and components work together could reveal their areas of relative competence, or the distinct intelligence tools they employ, thereby permitting persons of interest to the United States to tailor their behavior and adopt means to thwart the agencies' efforts.

30. Section 1.4(c) of EO 12958 recognizes that the disclosure of intelligence methods can cause harm to national security. I have determined that release of the withheld information pertaining to intelligence methods described in the preceding paragraphs remains properly classified at the SECRET level and that its release could reasonably be expected to cause serious damage to national security.

### Justification for Withholding Dates of Intelligence Documents and Dates of Interrogations Under 1.4(c)

31. Information relating to the dates of interrogations, the dates of planned future interrogations, and the dates of documents discussing or analyzing interrogations of ISN 693 are withheld under Exemption 1 because the disclosure would reveal a critical aspect of DOD's intelligence activities, procedures and methods. It would reveal, for example, the frequency and duration of interrogations relating to this detainee and possibly other detainees, how long detainees wait between interrogations, and the pattern of DOD's interrogation. It could also allow knowledgeable persons to discern the timing of when certain intelligence information is obtained. Accordingly, I have determined that this information remains properly classified and that its release reasonably could be expected to impede the effectiveness of our future

interrogation activities, circumvent U.S. counterterrorism efforts, and cause damage to our national security.

### Portions of Documents Withheld Under 5 U.S.C. 552(b)(2)

32.  Portions of the documents are withheld pursuant to 5 U.S.C. 552(b)(2) because they pertain to internal matters of a relatively trivial nature ((b)(2) low) or to more substantial internal matters, the disclosure of which would risk circumvention of the law ((b)(2) high).  Such information includes government office names, symbols and codes, telephone identifiers, and internal procedures.

### Internal Agency Rules and Practices Under Exemption 2

33.  FOIA Exemption (b)(2) low protects routine internal administrative matters and functions of JTF-GTMO, which has no effect on the public at large.  Disclosure of this information could impede the effectiveness of JTF-GTMO's internal procedures.  FOIA Exemption (b)(2) high also protects rules and practices of JTF-GTMO where disclosure may risk circumvention of the law (and operations).  The following paragraphs explain the (b)(2) exemptions asserted by JTF-GTMO for documents involved in this FOIA request.

### Justification for Withholding Contact Information Under Exemption 2

34.  The business telephone numbers, facsimile numbers, and addresses that are used by individuals in the performance of their duties have been redacted from the documents because disclosure of the information could subject the individuals to harassing phone calls and mail, which could disrupt business.  In addition, routine administrative information, such as telephone numbers and addresses, serve no public benefit and there is no indication that there is a genuine public interest in the disclosure of these numbers.  Accordingly, since the internal business telephone numbers and addresses are solely related to JTF-GTMO's internal practices, the

disclosure would not serve any public benefit, and the disclosure would impede JTF-GTMO's effectiveness, the information should be withheld under (b)(2) low.

### Justification for Withholding Intelligence Assessments and Conclusions Under Exemption 2

35. I have further determined that JTF-GTMO's intelligence assessments and conclusions should be withheld under FOIA Exemption (b)(2) high because disclosure would reveal the internal guidelines followed by JTF-GTMO in evaluating the intelligence value and threat level of individuals and organizations of intelligence interest, and thus risk circumventing U.S. counterterrorism efforts.

36. An analyst's selection of or emphasis on particular intelligence data in his assessment would reveal what intelligence was important to the United States in assessing ISN 693 and by extension other individuals, as well as how the government analyzes intelligence in general. Individuals of intelligence interest could thereby discern the guidelines used by JTF-GTMO to make intelligence value and threat level assessments concerning JTF-GTMO detainees and others. Revelation of those internal guidelines would in turn reveal a critical aspect of DOD's intelligence activities and methods, which would aid persons hostile to the United States in hiding their activities and tailoring their behavior to thwart the government's intelligence gathering, and thus risk circumventing U.S. counterterrorism efforts.

37. Included in this category of withholdings are assessments of intelligence data obtained from particular intelligence sources and the data analysts relied on in making those assessments.[3]

### Justification for Withholding Intelligence Methods Under Exemption 2

---

[3] The rationale for withholding this intelligence information under Exemptions 1 and 2 also applies when the information is incorporated into documents that originate with other agencies or components, such as the FBI or NCIS and when JTF-GTMO evaluates information collected by other agencies or components and draws conclusions about that information.

38. The information reflecting intelligence methods is also withheld under FOIA Exemption (b)(2) high because disclosure would reveal internal guidelines and practices for gathering and analyzing intelligence, which would in turn risk circumvention of U.S. counterterrorism efforts by permitting persons hostile to the United States to tailor their behavior to resist or thwart the government's intelligence methods.

## Justification for Withholding Dates of Intelligence Documents and Dates of Interrogations Under Exemption 2

39. The same information is also properly withheld under FOIA Exemption 2 high, which exempts from disclosure the internal guidelines, rules, practices and procedures of an agency if the disclosure would risk circumvention of the law. For the same reasons discussed above, the disclosure of the dates relating to interrogations would permit persons hostile to the United States to circumvent DOD's counterterrorism efforts. In addition, releasing the dates of the interrogations could allow a person to connect the interrogation date with major events and/or disturbances in the detention camp, permitting knowledgeable persons to potentially devise measures to degrade the protection of the camp personnel and the detainees.

40. JTF-GTMO has also withheld under Exemption 2 high information relating to dates contained in the intelligence records, including the dates the records were created. The disclosure of these dates would reveal internal procedures relating to the handling of sensitive information contained in the intelligence reports and messages, particularly the timeliness of such transmissions. It would reveal, for example, internal guidelines relating to the sequence in which intelligence and/or other sensitive information is shared among agencies, and within DOD. It would also reveal the length of time it takes DOD to process intelligence information and the timelines relating to U.S. counterterrorism operations. Therefore, the disclosure of these

dates would enable knowledgeable persons to better analyze DOD's intelligence and

counterterrorism activities, thus risking circumvention of U.S. counterterrorism efforts.

### Justification for Withholding Intelligence Codes and Instructions Concerning the Handling of Sensitive Information Under Exemption 2

41.  Internal codes that indicate intelligence sources, methods, or information were

withheld, under FOIA Exemption 2 high.  Included in this category of withholdings are:

classification codes, which generally appear near the bottom of a page; codes indicating

intelligence sources or information; and codes describing a type of communication.  These

internal codes are withheld under Exemption 2 high.  The codes contain or refer to information

about intelligence sources or activities.  Their disclosure could enable persons hostile to the

United States to piece together the government's methods for analyzing and handling

intelligence data, as well as potential intelligence data itself, thereby risking circumvention of

U.S. counterterrorism efforts.

### Justification for Withholding of Detainee Location Under Exemption 2

42.  The general location of where detainees reside is contained in several of the

documents released to Plaintiff.  The block and cell locations for the three detainees who

committed suicide on June 10, 2006 is being disclosed under this FOIA action.  However, the

locations of other detainees are being withheld pursuant to FOIA Exemption 2 high, which

exempts the internal guidelines, rules, practices and procedures of an agency if the disclosure

would risk circumvention of the law.  The general location of detainees is purely for internal use.

The disclosure of this information would reveal internal procedures and guidelines relating to the

location of detainees.  Detainees are often collocated for specific reasons (e.g., behavioral

issues).  There is a likelihood that internal JTF-GTMO policies are at risk of circumvention if the

locations of detainees are revealed. As such, I have determined that this information should be withheld under Exemption (b)(2) as its release would risk circumvention of the law.

### AR 15-6 Investigative Report and SOUTHCOM Files

43. Following the suicide deaths, a military officer was appointed under Army Regulation (AR) 15-6 to investigate whether the Camp Delta Standard Operating Procedures (SOP) were followed by relevant Joint Detention Group personnel during the overnight hours of 9-10 June 2006, and if the SOP was not followed, whether this failure contributed to the ability of detainees to commit suicide on that night. This document is entitled "SJA Investigation Report" on the Vaughn Index and is comprised of the 6 September 2006 Endorsement of AR 15-6 Investigation, the 31 August 2006 Report of 15-6 Investigation, and the attachments to this Report. The attachments include, among other things, witness statements, Records of Enlisted Counseling, and guard rosters. Many of the witness statements and interviews contained in the AR 15-6 investigation are identical to reports found in the NCIS documents. To the extent witness statements have been provided and redacted with the NCIS documents, they are not provided as attachments to the AR 15-6 Investigation Report. Other documents reviewed for this FOIA request are referred to as SOUTHCOM documents. These documents include, among other things, witness statements, the Camp Delta SOP, guard messages, camp and cell photographs, photographs of the deceased detainees at the medical clinic, and camp layouts.

### Justification for Withholding GTMO Standard Operating Procedures Under Exemption 2

44. The 15 December 2005 Camp Delta SOP, referenced in the Vaughn index, was in effect at the time the suicides of the three detainees occurred in June 2006.[4] The AR-15-6 Report and its attachments, and the NCIS and SOUTHCOM documents contain excerpts from,

---

[4] An updated version of the SOP was issued and is currently in effect.

and references to, the SOP. The SOP and various excerpts and references from the SOP contain redactions under FOIA Exemption (b)(2) high. The SOP is an internal document created to guide JDG personnel in running the camp. Although the 2005 SOP has been updated, much of the information from the 2005 SOP remains current today or has been modified only slightly. The 2005 SOP and the current Camp Delta SOP contain detailed information about running the camp, controlling access to, and conduct within, the camps, and managing, controlling, and caring for the detainees. The SOP provides information about how guards and other JTF-GTMO personnel are to control detainees and protect the detainees as well as themselves. It contains information about chain of command, security issues, and specific duties of guards and other Government personnel involved in detainee issues and camp operations. For example, the SOP specifies procedures for moving detainees for medical, legal, and other appointments. It specifies procedures to prevent detainees from hurting themselves, other detainees, or other personnel. It provides guidance with respect to meals, medical treatment, showers, recreation, compliance levels, recommended disciplinary actions, and emergency situations.

45. Disclosure of the information in this SOP would impede the ability of the JDG to conduct operations and fulfill its mission. A detainee armed with the knowledge of these procedures would be able to undermine the ability of the JDG to effectively carry out the requirements of the SOP and maintain order in the camps. Knowing the rationale behind guard shifts, guard composition and procedures, emergency warning systems, and procedures for ensuring that unsafe items are not brought into the camps, could help a detainee or someone from outside the camp undermine camp order and security. Many of the procedures withheld from the SOPs are designed to protect the safety of the detainees and JTF-GTMO personnel. Providing an avenue for a detainee to manipulate the procedures to his advantage jeopardizes the safety of that

detainee, other detainees, and USG personnel.  Furthermore, release of the internal procedures would serve no public benefit and would not serve a legitimate public interest.

46.  Besides the Camp Delta SOP, the Government is withholding guard messages under Exemption (b)(2) high.   Guard messages are used to fill in the gaps when the SOP does not address a particular situation that might arise.  Guard messages provide guidance to the guards as to how to deal effectively with specific issues or circumstance that might arise, such as items in cells, inspections, meals, recreation, information about particular detainees and areas of the camp, handling appointments and mail, detainee shower and shave procedures.  These are internal camp procedures that serve no public interest.  Yet, if this information were released to the detainees, they might be able to circumvent the rules or disrupt the order of the camp.  Redactions have been taken in some instances involving guard shifts, guard composition, guard procedures, safety and security procedures, among others.

### Justification for Withholding Cell and Block Numbers Under Exemption 2

47.  The Government is also asserting Exemption (b)(2) high for cell numbers and block numbers of other detainees.  If information about the locations of other detainees was disclosed, it could compromise security of the camp and risk harm to the detainees as well as the guard force.  Likewise, release of information such as code words, shift times number of guards on a shift, guard rotations, name and ISN of other detainees, would cause interference with camp procedures or operations.

### Justification for Withholding JTF-GTMO Classification Guide Under Exemption 2

48.  The 21 September 2005 JTF-GTMO Classification Guide is also withheld under Exemption (b)(2) high.  This Guide provides instructions and guidance on classification levels for frequently recurring items related to detainee operations of JTF-GTMO in support of the

Global War on Terror. It is a series of predetermined original classification decisions made by individuals authorized by the Department of Defense to exercise Original Classification Authority. This is a document designed for internal Government use that serves no public purpose. Although the 2005 Guide was superseded by the 2006 Classification Guide, there are many elements of the 2005 Guide that remain unchanged or which were modified only slightly. Release of this document would reveal the Government's rationale for identifying certain circumstances, procedures, or events as particularly sensitive, including the levels of classification.

### Justification for Withholding Investigative Photographs Under Exemption 2

49. The briefing slides entitled "Attempted Suicides" are also withheld in part under Exemption (b)(2) high for operational reasons. Another set of briefing slides, entitled "Three Detainee Suicides," is withheld, in part, under Exemptions (b)(1)[5] and (b)(2) high because they contain close-up photographs of the detainees and information about the camp layout.

50. Included in the SOUTHCOM and NCIS documents are photographs of Alpha Block as well as the cells in which the detainees committed suicide. These photographs portray, among other things, the interior and exterior of camp blocks and cells, the exterior of the camp, and the knotted ropes and rags the detainees used during the suicides. These photos are being withheld under (b)(2) high because their release would reveal information about the arrangements of the camp's cells, blocks, fencing, and other structures. This information, if released, could possibly be used to circumvent the security of the camp or to give detainees ideas on methods to commit suicide.

### Justification for Withholding Medical Records Under Exemption 2

---

[5] See discussion regarding photos of detainees as exempt under EO 12958, as amended, Section 1.4(c)

51.  The Government is providing ISN 693's medical records to Plaintiffs almost in their entirety.  There are isolated incidents where the Government is asserting a (b)(2) high exemption pertaining to information about how patients are secured during certain medical procedures.  Some medical records may have cell numbers redacted.  During an earlier review of these medical records, cell numbers of the dead detainees were redacted under (b)(2) high.  JTF-GTMO later determined that the last cell numbers of the dead detainees would be released.  The last cell numbers of the detainees have been released in other documents.

### Portions of Documents Withheld Under 5 U.S.C. 552(b)(3)

52.  FOIA Exemption 3 protects information specifically exempted from disclosure by another federal statute.  In this case, the controlling federal statute that requires information to be withheld from these records is 10 U.S.C. § 130b.  Under 10 U.S.C. § 130b, personally identifying information of personnel assigned to units overseas is exempt from release.

### Justification for Withholding Identifying Information About DOD Personnel Under Exemption 3

53.  All personnel operating at JTF-GTMO are personnel assigned to a unit overseas.  All personally identifying information of personnel assigned to JTF-GTMO has been redacted from all responsive documents pursuant to 10 U.S.C. § 130b.

54. 10 U.S.C. § 130b authorizes the withholding of "personally identifying information regarding … any member of the armed forces assigned to an overseas unit, … or a routinely deployable unit."  In each instance where the information was withheld, I approved my staff's recommendations that the individuals' right to privacy outweighed the public interest in the information and that revealing the names and identifying information of individuals named in the documents could reasonably be expected to cause humiliation, harassment, and a threat to U.S. Government personnel and their families.

55. I have determined that the names and other identifying information of DOD personnel identified in the responsive documents meet the criteria to be withheld pursuant to 10 U.S.C. § 130b and Exemption (b)(3) because those personnel were, at the times relevant to the documents, stationed at Guantanamo and acting in their official capacities as members of an overseas unit.

### Portions of Documents Withheld Under 5 U.S.C. 552(b)(5)

56. FOIA Exemption 5 permits the withholding of records that are inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency 5 U.S.C. § 552(b)(5). Exemption 5 has been construed to exempt those documents or information normally privileged in the civil discovery context and includes the pre-decisional deliberative process.

### Justification for Withholding JTF-GTMO's Assessments of Detainee ISN 693 under Exemption 5

57. The Deliberative Process Privilege protects the internal deliberations of the government by exempting from release recommendations, analysis, opinions, speculation and other non-factual information prepared in anticipation of decision-making. Privileged information withheld from the responsive records includes internal or interagency deliberations regarding policy or future actions concerning treatment of detainees, including matters such as interrogation. Disclosure of any of this deliberative information is likely to chill full, frank and open internal discussions.

58. Some of the withheld information constitutes assessments of the intelligence values of ISN 693 and recommendations made by JTF-GTMO personnel to the JTF-GTMO Commander on whether certain detainees should be retained in DOD custody, transferred to the custody of another country, or released. These assessments and recommendations are pre-

decisional in nature.  In addition, these assessments and recommendations are reviewed by personnel in the JTF-GTMO Staff Judge Advocate's (SJA) office for legal sufficiency.  The SJA's office then makes its own recommendations to the JTF-GTMO commander on the advice provided in these assessments and recommendations.  These assessments and recommendations along with the associated legal reviews are protected by the deliberative process privilege.

### Portions of Documents Withheld Under 5 U.S.C. 552(b)(6)

59.  FOIA Exemption 6 permits DOD to withhold all information about individuals in "personnel and medical files and similar files" when disclosure "would constitute a clearly unwarranted invasion of personal privacy."

### Justification for Withholding Information About DOD Personnel Under Exemption 6

60.  I have determined that the names and other identifying information of DOD personnel identified in the responsive documents should be withheld under Exemption (b)(6) because those personnel were, at the times relevant to the documents, stationed at Guantanamo and acting in their official capacities as members of an overseas unit.  The release of such information would constitute a clearly unwarranted invasion of the personal privacy of these individuals.  These individuals have a protectable privacy interest that would be threatened if this information was publicly disclosed and there is no public interest in having this information disclosed.  The public release of the names and other identifying information would not shed any light on how DOD personnel performed their duties.

61.  The entire Records of Enlisted Counseling have been withheld.  These documents contain names of enlisted personnel and personal information about them such as social security numbers.  These records also contain statements by the enlisted person and the plan developed by the enlisted person and the counselor to overcome the enlisted person's perceived problems.

As such, I have determined that this information should be withheld under Exemption (b)(6) as its release would constitute a clearly unwarranted invasion of the personal privacy of these individuals.

### Justification for Withholding Photographs of Detainees Under Exemption 6

62.  Some of the photographs portray the detainees at the medical clinic.  Photographs that portray the detainee's body are being withheld under Exemption (6) for privacy of the detainees' family.

### Justification for Withholding Personal Information that Identifies Other Detainees Under Exemption 6

63.  Information has been withheld because it contains the name, ISN, or other information which would identify another current, or former detainee at JTF-GTMO.  This type of information is found in the interviews of detainees, and in witness statements of guards and other JTF-GTMO personnel. The names and identifying information of other detainees generally appears in documents where that detainee is either the source of intelligence information, is a person identified in an intelligence interview as having affiliations or associations with organizations or persons of interest to the intelligence community, or was involved in a disciplinary matter.  They are also found in documents in which other detainees were interviewed about the incidents surrounding the hanging deaths.

64.  Detainees who have provided information to the U.S. Government have an inherent expectation that their identities will not be revealed to the general public.  Detainees who provide information to U.S. Government personnel routinely request that they not be associated with the information they are providing or identified as the source of this information based on a fear of retaliation, embarrassment, and harm to themselves and members of their family.

65. Information that identifies a detainee with specific information regarding those organizations or individuals associated with those organizations places that detainee, their family members, and associates at risk of harm or retaliation. As such, I have determined that this information should be withheld under Exemption (b)(6) as its release would constitute a clearly unwarranted invasion of the personal privacy of these individuals.

### Justification for Withholding Personal Information that Identifies Other Individuals Under Exemption 6

66. Information of individuals other than detainees and government employees has been withheld because it contains the name or other identifying information of a third party named during the course of an intelligence interview or obtained in the course of intelligence collection activities. In addition, the names of non-government personnel found in witness statements, and the names of the family members and friends of the dead detainees who were addressed in suicide notes and in other writings of the detainees are properly withheld under Exemption (b)(6) to protect their identities and safety. I have determined that this information should be withheld under Exemption (b)(6) as its release would constitute a clearly unwarranted invasion of the personal privacy of these individuals. These individuals have a protectable privacy interest that would be threatened if this information was publicly disclosed and there is no public interest in having this information disclosed.

### Portions of Documents Withheld Under 5 U.S.C. 552(b)(7)(C)

67. FOIA Exemption 7(C) is broader than the privacy standard of FOIA Exemption 6, but only protects privacy information contained in records compiled for a law enforcement purpose. Exemption 7(C) requires withholding of records or information compiled for law enforcement purposes, where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

68. Photographs that portray the detainee's body are also being withheld under Exemption 7(C) because the release of the photos could reasonably be expected to constitute an unwarranted invasion of personal privacy of others (the detainee's family) in the context of a law enforcement investigation.

69. In addition, names, signatures and other personal information were withheld pursuant to Exemption 7(C) for those personnel involved in law enforcement such as NCIS agents. Certain information is withheld throughout the subject records that include personal information about DOD personnel. The type of information withheld includes names, military ranks, signatures and initials, residences social security numbers, and other personal information of these personnel, including information that identifies the JTF-GTMO personnel who were involved in intelligence gathering activities involving the dead detainees while they were alive and after their deaths. Also included are those DOD personnel who prepared incident reports or provided witness statements to NCIS, including guards, detention camp personnel, and medical personnel who were on duty the night of the hangings. Names of Government personnel have also been withheld on roster sheets, such as the names of personnel who entered the cells of the detainees.

## Portions of Documents Withheld Under 5 U.S.C. 552(b)(7)(E)

70. FOIA Exemption 7(E) provides protection to all law enforcement information which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement's investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

71. The camp photographs are also withheld under Exemption 7(E). The photographs were taken by Government personnel for use by the Navy in investigating the deaths of the three

detainees.  Release of the photographs would reveal the methodology and techniques used in collecting evidence for its investigation.

72.  I declare under penalty of perjury that the foregoing is true and correct.

Date: 21 August 2008

David M. Thomas, Jr.
Rear Admiral, United States Navy
Commander, Joint Task Force – Guantanamo

| Folder Name SC 08-075 | Document Name | Document Description | NO. OF PAGES | CLASSIFICATION | Originator of Record | JTF Recommendations | Comments/Exemptions |
|---|---|---|---|---|---|---|---|
| JMG Documents | | | | | | | |
| 1 - 21. | ISN 693 Vol.1.1 | Detainee Medical Record | 21 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 22 - 71 | ISN 693 Vol.1.2-a | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 72 - 124 | ISN 693 Vol.1.2-b | Detainee Medical Record | 53 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 125 - 147 | ISN 693 Vol.1.2-c | Detainee Medical Record | 23 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 148 - 189 | ISN 693 Vol.1.2-d | Detainee Medical Record | 42 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 190 - 229 | ISN 693 Vol.1.2-e | Detainee Medical Record | 40 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 230 - 277 | ISN 693 Vol.1.2-f | Detainee Medical Record | 48 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 278 - 284 | ISN 693 Vol.1.2-g | Detainee Medical Record | 7 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 285 - 325 | ISN 693 Vol.2.1-a | Detainee Medical Record | 41 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |

| Folder Name SC 08-075 | Document Name | Document Description | NO. OF PAGES | CLASSIFICATION | Originator of Record | JTF Recommendations | Comments/Exemptions |
|---|---|---|---|---|---|---|---|
| 326 - 373 | ISN 693 Vol.2.1-b | Detainee Medical Record | 48 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 374 - 399 | ISN 693 Vol.2.2-a | Detainee Medical Record | 26 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 400 - 449 | ISN 693 Vol.3.1-a | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 450 - 478 | ISN 693 Vol.3.2-a | Detainee Medical Record | 29 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 479 - 509 | ISN 693 Vol.3.2-b | Detainee Medical Record | 31 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 510 - 548 | ISN 693 Vol.3.2-c | Detainee Medical Record | 39 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 549 - 587 | ISN 693 Vol.3.2-d | Detainee Medical Record | 39 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 588 - 627 | ISN 693 Vol.3.2-e | Detainee Medical Record | 40 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 628 - 684 | ISN 693 Vol.3.2-f | Detainee Medical Record | 57 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 685 - 730 | ISN 693 Vol.3.2-h | Detainee Medical Record | 46 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |

| Folder Name SC 08-075 | Document Name | Document Description | NO. OF PAGES | CLASSIFICATION | Originator of Record | JTF Recommendations | Comments/Exemptions |
|---|---|---|---|---|---|---|---|
| 731 - 751 | ISN 693 Vol.3.2-j | Detainee Medical Record | 21 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 752 - 789 | ISN 693 Vol.3.3-a | Detainee Medical Record | 38 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 790 - 813 | ISN 693 Vol.3.3-b | Detainee Medical Record | 24 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 814 - 851 | ISN 693 Vol.4.1-a | Detainee Medical Record | 38 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 852 - 891 | ISN 693 Vol.4.1-b | Detainee Medical Record | 40 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 892 - 902 | ISN 693 Vol.4.1-c | Detainee Medical Record | 11 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 903 - 952 | ISN 693 Vol.5.1-a | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 953 - 1000 | ISN 693 Vol.5.1-b | Detainee Medical Record | 48 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1001 - 1038 | ISN 693 Vol.5.1-c | Detainee Medical Record | 38 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1039 - 1088 | ISN 693 Vol.5.1-d | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |

| Folder Name SC 08-075 | Document Name | Document Description | NO. OF PAGES | CLASSIFICATION | Originator of Record | JTF Recommendations | Comments/Exemptions |
|---|---|---|---|---|---|---|---|
| 1089 - 1135 | ISN 693 Vol.5.1-e | Detainee Medical Record | 47 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1136 - 1181 | ISN 693 Vol.6.1-a | Detainee Medical Record | 46 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1182 - 1221 | ISN 693 Vol.6.1-b | Detainee Medical Record | 40 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1222 - 1265 | ISN 693 Vol.6.1-c | Detainee Medical Record | 44 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1266 - 1315 | ISN 693 Vol.6.2-a | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1316 - 1365 | ISN 693 Vol.6.2-b | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1366 - 1415 | ISN 693 Vol.6.2-c | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1416 - 1465 | ISN 693 Vol.6.2-d | Detainee Medical Record | 50 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1466 - 1507 | ISN 693 Vol.6.2-e | Detainee Medical Record | 42 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| 1508 - 1512 | ISN 693 Vol.7.1 | Detainee Medical Record | 5 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |

| Folder Name SC 08-075 | Document Name | Document Description | NO. OF PAGES | CLASSIFICATION | Originator of Record | JTF Recommendations | Comments/Exemptions |
|---|---|---|---|---|---|---|---|
| 1513 - 1534 | ISN 693 Vol.3.1.b | Detainee Medical Record | 22 | FOUO | JTF/JMG | Release with redaction | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities |
| | **Total:** | | **1534** | | | | |

* These documents contain information about securing patients during certain medical procedures. This information has been redacted using FOIA exemption (b)(2) because this information, if released, would divulge internal practices that would risk circumvention of camp rules and regulations. Other (b)(2) redactions pertain to detainee's cell location. The cell location has been released in other documents.

| | *VAUGHN INDEX FOR INVESTIGATION REPORT & TABS A-K* | | |
|---|---|---|---|
| **PAGES COVERED** | **DOCUMENT TYPE** | **DOCUMENT DESCRIPTION** | **COMMENTS/EXEMPTIONS** |
| 1-102 | **SJA DEATH INVESTIGATION** | ENDORSEMENT OF AR 15-6 INVESTIGATION, 6 SEPT 06, WITH INVESTIGATION REPORT, 31 AUG 06 | *(b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement* |
| 103-111 | Investigation Documents | 525 Military Police Preservice Training Schedule, Sign-In Roster, Guard Cadre Certification | *b(2) internal rule, interfere with camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement* |
| 112-116 | *WITNESS STATEMENT 1.* | *STATEMENT OF SERVICE MEMBER BEING INTERVIEWED* | *(b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement* |
| 117-119 | *WITNESS STATEMENT 2* | *STATEMENT OF SERVICE MEMBER BEING INTERVIEWED* | *b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement* |
| 120-122 | *WITNESS STATEMENT 3* | *STATEMENT OF SERVICE MEMBER BEING INTERVIEWED* | |
| 123-126 | *WITNESS STATEMENT 4* | *STATEMENT OF SERVICE MEMBER BEING INTERVIEWED* | |
| 127-130 | *WITNESS STATEMENT 1* | *STATEMENT OF SERVICE MEMBER BEING INTERVIEWED* | *(b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement* |
| 131-133 | *WITNESS STATEMENT 2* | *STATEMENT OF SERVICE MEMBER BEING INTERVIEWED* | *(b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities,* |

| 134-136 | WITNESS STATEMENT 3 | STATEMENT OF SERVICE MEMBER BEING INTERVIEWED | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, |
|---|---|---|---|
| 137 | TAB D, TABLE OF CONTENTS | STATEMENTS FROM JOINT DETENTION GROUP LEADERSHIP PERSONNEL | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 138-139 | GUARD STATEMENT | VOLUNTARY STATEMENT MADE FROM GUARD ABOUT THE INCIDENT | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 140 | TAB F, TABLE OF CONTENTS | STATEMENTS FROM CAMP DFELTA MEDICAL PERSONNEL | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 141-144 | AMBULANCE REPORTS | AMBULANCE REPORTS, TRANSFER OF DETAINEES | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 145 | TAB G, TABLE OF CONTENTS | STATEMENTS FROM GUANTANAMO BAY NAVAL HOSPITAL MEDICAL PERSONNEL | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 146 | TAB B, TABLE OF CONTENTS | STATEMENTS OF ALPHA DUTY BLOCK PERSONNEL BEING INVESTIGATED AND THE DATES OF INVESTIGATION | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 147 | TAB C, TABLE OF CONTENTS | STATEMENTS OF CAMP ONE DUTY GUARD FORCE PERSONNEL BEING INTERVIEWED | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |

| 148 | TAB A, TABLE IF CONTENTS | miscellaneous items | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
|---|---|---|---|
| 149-150 | APPOINTMENT LETTER AND EXTENSION LETTER | APPOINTS A-R 15-6 INVESTIGATING OFFICER, AND EXTENSION OF APPOINTMENT | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 151-167 | GUARD MESSAGE | LISTS THE SUBJECT, STATUS, DATE, RELEASE DATE, AUTHOR, MESSAGE, APPROVED BY, AND KEYWORDS OF THE DETAINEES REPORT | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 168-184 | GUARD MESSAGE | LISTS THE SUBJECT, STATUS, DATE, RELEASE DATE, AUTHOR, MESSAGE, APPROVED BY, AND KEYWORDS OF THE DETAINEES REPORT | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 185 | INTERVIEW SUMMARY | SUMMARIZES ON ACTION TAKEN ON SPECIFIC DATE OF WHAT INVESTIGATING OFFICER DID WITH MEMO, GUARD MOOUNT MESSAGES, ETC.. | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 186 | AUTHORIZES/UNAUTHORIZED ACTIVIITIES | LIST OF AUTHORIZED ACTIVITIES FOR DETAINEES | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 187 | EMAIL ABOUT AUTHORIZED /UNAUTHORIZED DETAINEE ACTIVITIES | EMAIL EXPLAINS THAT THIS IS LATEST APPROVED LIST OF DETAINEE ACTIVITIES | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |

| 188 | Table of Content, TAB E | OTHER CAMP PERSONNEL | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
|---|---|---|---|
| 189-192 | WITNESS STATEMENT | STATEMENT OF SERVICE MEMBER BEING INTERVIEWED | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 193-195 | WITNESS STATEMENT | STATEMENT OF SERVICE MEMBER BEING INTERVIEWED | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 196-198 | WITNESS STATEMENT | STATEMENT OF SERVICE MEMBER BEING INTERVIEWED | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 199-200 | WITNESS STATEMENT | STATEMENT OF SERVICE MEMBER BEING INTERVIEWED | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 201-214 | RECORDS OF ENLISTED COUNSELING | DOCUMENTATION OF COUNSELING SESSION PERTAINING TO SERVICE MEMBER BEING COUNSELED FOR PERSONAL BEHAVIOR | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 215-216 | SECOND INTERVIEW | INTERVIEW OF PERSON | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |

| 217 | CELL BLOCK LINGUIST DAILY ACTIVITY REPORT | NAME OF LINGUIST AND TIME OF ACTIVITY | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
|---|---|---|---|
| 218 | TABLE OF CONTENTS | LEARNED SOURCES FROM LINGUIST, AND INTERVIEW SUMMARY | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 219 | INTERVIEW SUMMARY | INTERVIEW SUMMARY | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 220 | INTERVIEW SUMMARY | INTERVIEW SUMMARY FROM INVESTIGATING OFFICER | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 221 | EMAIL dtd 21 AUGUST 2006, @ 0740 | EMAIL FROM SERVICE MEMBER DISCUSSING MOONRISE/MOONSET PERCENTAGE ILLUMINATION | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 222 | EMAIL dtd 21 AUGUST 2006, @ 0908 | DISCUSSION ABOUT SKY COVER ON 9 JUNE 2006 | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 223 | SUMMARY OF INTERVIEW | DISCUSSION FROM SPECIAL AGENT ABOUT SUMMARY FROM PROFESSOR OF PATHOLOGY | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 224-232 | ARTICLE "DEATH BY STRANGULATION" | EXPLAINING THE PROCEDURES OF STRANGULATION | release |

| 233-234 | RESUME DOWNLOADED 14 AUGUST 2004 | RESUME ABOUT PROFESSOR | release |
|---|---|---|---|
| 235 | PUBLICATIONS DOWNLOADED 14 AUGUST 2004 | PUBLICATIONS FROM DIFFERENT PATHOLOGIES | release |
| 236 | TAB K, TABLE OF CONTENTS | NAVAL CRIMINAL INVESTIGATIVE SERVICE EXHIBITS | release |
| 237-242 | NCIS REVIEW OF STANDARD OPERATING PROCEDURES | FURTHER INVESTIGATION REGARDING SOP | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 243 | INFORMATION REGARDING VICTIM'S TIME OF DEATH | NCIS DISCUSSION ABOUT VICTIM'S TIME OF DEATH | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 244-247 | GUARD LOGS | GUARD LOG TRANSCRIPTS | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| 248 | TABLE OF CONTENTS, TAB J | JOINT DETENTION GROUP DOCUMENTS | release |
| 249-250 | CAMP DELTA MAP WITH ALPHA BLOCK | LINE DRAWINGS OF CAMP DELTA AND ALPHA BLOCK WITH CELLS | (b)(2) circumvention of rules, camp operations |
| 251-267 | BLOCK HEADCOUNT | BLOCK HEAD COUNT FROM DETAINEE INFORMATION MANAGEMENT SYSTEM | (b)(2) circumvention of rules, camp operations, b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |

| 268 | ADMIRAL HARRIS LETTER | | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
|-----|-----------------------|--|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|

| | | U.S. SOUTHERN COMMAND INDEX | | | |
|---|---|---|---|---|---|
| DETAINEE'S NAME | DOCUMENT FILE TYPE | LIST OF DOCUMENT TYPE | DOCUMENT DESCRIPTION | PAGES COVERED | COMMENTS/EXEMPTIONS |
| | | | | | |
| ZAHRANI, YASSIR TALAL | U.S. SOUTHERN COMMAND PART 1 SECT 1 | CAMP PHOTOS(Enclosures A1-A29) | ALPHA BLOCK (INTERIOR/EXTERIOR OF CELL) | 1-30 | (b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcement techniques |
| | | CAMP PHOTOS (Enclosures A30-A39) | CAMP DELTA (INTERIOR/EXTERIOR SIDE) OF CAMP ONE, ALPHA BLOCK | 31-40 | (b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcement techniques |
| ZAHRANI, YASSIR TALAL | U.S. SOUTHERN COMMAND PART 1 SECT 2 | PHOTO LOG-INTERIOR OF CAMP DELTA, CAMP 1, CELL BLOCK ALPHA | LIST THE CELL BLOCK # STATUS AND THE MATERIAL FOUND AT EACH CELL # | 41 | release |
| | | CAMP PHOTOS(Enclosures B1-B13) | EXTERIOR OF CELL BLOCK ALPHA | 42-54 | (b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcemnt techniques |
| AHMED, ALI ABDULLAH | U.S. SOUTHERN COMMAND PART 1 SECT 2 | PHOTO LOG-CAMP ONE | LIST OfFPHOTOS OF CELL BLOCK ALPHA, CELL FIVE | 55 | release |
| | | CAMP PHOTOS CELL 5 (Enclosures C1-C6) | EXTERIOR OF CELL BLOCK 5,sheets,knotted cloth | 56-61 | b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcement techniques |
| AHMED, ALI ABDULLAH | U.S. SOUTHERN COMMAND PART 2 SECT 1 | CAMP PHOTOS, Cell 5(Enclosures C7-C40) | PHOTOS OF ITEMS FOUND IN CELL 5 | 62-95 | b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcement techniques |
| ZAHRANI, YASSIR TALAL | U.S. SOUTHERN COMMAND PART 2 SECT 1 | PHOTO LOG-CAMP DELTA, CAMP ONE | CELL BLOCK ALPHA, CELL 8 DETAINEE'S LIST OF ITEMS HE HAD IN HIS CELL | 96-103 | release |
| ZAHRANI, YASSIR TALAL | U.S. SOUTHERN COMMAND PART 2 SECT 2 | CAMP PHOTOS(Enclosures D8-D46) | CELL 8, PHOTOS OF INTERIOR PORTION OF CELL WITH ITEMS SUCH AS MULTIPLE SHEET CLOTHS TIED TOGETHER, ID card | 104-142 | b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcement techniques |

| | | *PHOTO LOG-CAMP ONE, CELL BLOCK ALPHA CELL 12* | *CELL BLOCK ALPHA, CELL 12 LIST OF ITEMS DETAINEE HAD IN HIS CELL* | 143-144 | *release* |
|---|---|---|---|---|---|
| *AL TABI, MANA SHAMANA* | *U.S. SOUTHERN COMMAND PART 2 SECT 2* | | | | |
| | | *CAMP PHOTOS,CELL 12 (Enclosure E1)* | *PHOTO OF CELL 12 WITH CLOTH MATERIAL CLOSED IN FROM TOP OF CELL DOOR* | 145 | *(b)(2) circumvention of rules, camp operations, (b)(7(e) law enforcement techniques* |
| *AL TABI, MANA SHAMANA* | *U.S. SOUTHERN COMMAND PART 2 SECT 3* | *CAMP PHOTOS, CELL 12(Enclosures E2-E44)* | *PHOTOS OF INTERIOR/EXTERIOR PORTION OF CELL 12 WITH ITEMS: ROPE AND SHEET CLOTH APPEARED TIED TOGETHER, AND IDENTIFICATION CARD ON THE FLOOR OF CELL. ALSO, PHOTOS OF SHEET CLOTH APPEARED TO BE WRAPPED AROUND THE INNER CELL WALL AND PIECES OF LINEN/CLOTH LAYED ON THE FLOOR.* | 146-188 | *(b)(2) circumvention of rules, camp operations, (b)(7(e) law enforcement techniques* |
| *AL TABI, MANA SHAMANA* | *U.S. SOUTHERN COMMAND PART 3 SECT 1* | *CAMP PHOTOS, CELL 12 (Enclosures E45-E47)* | *PHOTOS OF INTERIOR PORTION OF CELL 12 WITH TWO RAG CLOTHS TDED* | 189-191 | *(b)(2) circumvention of rules, camp operations, (b)(7(e) law enforcement techniques* |
| | | *JTF GTMO SUICIDE ATTEMPT CHART DATED 10 JUNE 2006 @ 0630* | *LIST OF DETAINEES' ISNs, DATE OF DETAINEES' ATTEMPT TO COMMIT SUICIDE, TYPE OF SUICIDE ATTEMPT, CONDITION OF DETAINEE* | 192-197 | *b(2) ISNs of detainees, impair camp operations, b(6) protection of detainee identities* |
| | | *PHOTO LOG- EXTERIOR OF CAMP DELTA, CAMP ONE CELL BLOCK ALPHA* | *CELL BLOCK ALPHA, CELL ONE INMATE'S LIST OF ITEMS HE HAD IN HIS CELL* | 198 | *release* |
| | | *CAMP DELTA STANDARD OPERATING PROCEDURES* | *TO COMPLETE, REVIEW, AND REORGANIZE THE STANDARD POLICIES REGARDING TO CAMP DELTA DETAINEES* | 199-242 | *b(2) internal procedures, release would circumvent rules and regulations, impair orderly and secure operation of camp* |

| | | | | | |
|---|---|---|---|---|---|
| | *U.S. SOUTHERN COMMAND PART 3 SECT 2* | *CAMP DELTA STANDARD OPERATING PROCEDURES* | *DETAILED PROCEDURES FOR OPERATING SAFE AND SECURE DETENTION CAMP. CHAPTERS 8-21 IN SEQUENCIAL ORDER: UNIFORM & DRESS RULES, DETAINEE BEHAVIOR MANAGEMENT AND DOCUMENTATION, DOCUMENTATION AND DETAINEE INFORMATION MANAGEMENT SYSTEM(DIMS), SALLY PORT OPERATIONS, CAMP DELTA BADGE INDENTIFICATION PROCEDURES, MAXIUM SEGREGATION UNIT AND DISCIPLINE OPERATIONS, MAXIMUM SEGREGATION UNIT AND DISCIPLINE OPERATIONS, INITIAL RESPONSE FORCE OPERATIONS, NAVSTA BRIG OPERATIONS, DETAINEE PROPERTY, DETAINEE MAIL OPERATIONS, RELIGIOUS SUPPORT, DETAINEE LIBRARY, INTERNATIONAL COMMITTEE OF THE RED CROSS, AND MEDICAL RESTRAINT.* | *243-297* | *b(2) internal procedures, release would circumvent rules and regulations, impair orderly and secure operation of camp* |

| | | | | | |
|---|---|---|---|---|---|
| | *U.S. SOUTHERN COMMAND PART 4 SECT 1* | *CAMP DELTA STANDARD OPERATING PROCEDURES* | *DETAILED SUBJECTIVE PROCEDURES OF CHAPTERS 22-30 IN SEQUENCIAL ORDER: ENGINEER SECTION, KEY CONTROL, EXTERNAL SECURITY OPERATIONS, QUICK RESPONSE FORCE(QRF), MILITARY WORKING DOGS(MWD), PUBLIC AFFAIRS, DELTA BEHAVIOR HEALTH SERVICES, SUPPLY OPERATIONS, AND EMERGENCY ACTION PLANS(EAP)* | *298-345* | *b(2) internal procedures, release would circumvent rules and regulations, impair orderly and secure operation of camp* |
| | *U.S. SOUTHERN COMMAND PART 4 SECT 2* | *CAMP DELTA STANDARD OPERATING PROCEDURES* | *DETAILED SUBJECTIVE PROCEDURES OF CHAPTERS 31-35 IN SEQUENTIAL ORDER: TRANSITION, CAMP 1V OPERATING PROCEDURES, CAMP V OPERATING PROCEDURES, DETAINEE RECEPTION OPERATIONS, GUIDELINES FOR ATTORNEY VISITATION, -INDEX, -APPENDIX, -DETAINEE OFFENSE MATRIX, -DETAINEE DISCIPLINE MATRIX* | *346-394* | *b(2) internal procedures, release would circumvent rules and regulations, impair orderly and secure operation of camp* |
| | *U.S. SOUTHERN COMMAND PART 5 SECT 1* | *CAMP DELTA STANDARD OPERATING PROCEDURES* | *BASIC ISSUE/COMFORT ITEMS CHART, AUTHORIZED/UNAUTHORIZED ACTIVITIES CHART, BLOCK NCO CHECKLIST, 508 PROCESS, 508-1 PROCESS, MCI TRIAGE CHECKLIST, MCI NOTIFICATION MATRIX, FIRE NOTIFICATION CHECKLIST.* | *395-408* | *b(2) internal procedures, release would circumvent rules and regulations, impair orderly and secure operation of camp* |

| | | | | | |
|---|---|---|---|---|---|
| | | GUARD MESSAGES | | 409-441 | b(2) internal procedures, release would circumvent rules and regulations, impair orderly operation of camp;(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| | | | PROVIDES THE SUBJECT, STATUS, DATE, RELEASE DATES, AUTHOR, APPROVED BY, MESSAGE, AND KEY WORDS | | |
| | U.S. SOUTHERN COMMAND PART 5 SECT 2 | GUARD MESSAGES | PROVIDES THE SUBJECT, STATUS, DATE, RELEASE DATES, AUTHOR, APPROVED BY, MESSAGE, AND KEY WORDS | 442-447 | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen |
| | | MEMO-REQUEST FOR ASSISTANCE BY STAFF JUDGE ADVOCATE, JTF-GTMO | REQUESTING FOR ASSISTANCE FROM NCIS AGENT FOR FURTHER INVESTIGATION | 448-450 | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen |

| | | | | 451-463 | |
|---|---|---|---|---|---|
| | | *POWERPOINT PRESENTATION TITLED "THREE DETAINEE SUICIDES" dated 10 Jun 06* | *DESCRIPTION OF CAMP DELTA OVERVIEW LAYOUT OF THE CAMP, THE LOCATION OF THE THREE DETAINEES CELL, WHERE THEY WERE LOCATED AT THE TIME OF COMMITTING SUICIDE* | 451-463 | *b(1),Section 1.4C Close-up photos of detainees, release would impair intelligence collection, b(2),internal procedure, impair camp operations, camp layouts, location of other ISNs,.guard force training b(7)(e)law enforcment techniques* |
| | | *SECURITY CLASSIFICATION GUIDE FROM JTF GTMO J-2* | *PROVIDES INSTRUCTIONS AND GUIDANCE ON CLASSIFICATION LEVELS FOR FREQUENTLY RECURRING ITEMS RELATED TO DETAINEES OPERATIONS OF JOINT TASK FORCE GUANTANAMO IN SUPPORT OF GLOBAL WAR ON TERRORISM* | 464-475 | *b(2) internal procedures, release would circumvent rules and regulations, interfere with camp, security, and intelligence operations* |
| | | *EMAIL FROM JTF GTMO JIG PERSONNEL* | *LIST of PROPOSED FINAL PLACEMENT OF HUNGER STRIKERS* | 476-477 | *b(1)1.4A; 1.4C information reveals locations of particular detainees with particular cell numbers; b(2);internal procedures, interference with camp operations; (b)(6) protection of identities* |
| | | *DECLARATION FROM NCIS AGENT* | *INVESTIGATION FROM NCIS REGARDING THE DEATH OF THE DETAINEES* | 478-480 | *b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen* |

| | | | | | |
|---|---|---|---|---|---|
| | — | *DETAINEE SPREADSHEET* | *LISTS THE ISN'S AND MISCELLANEOUS PILE #* | 481-488 | *b(2) internal procedures, release would circumvent rulesand regulations, impair orderly operation of camp* |
| | *U.S. SOUTHERN COMMAND PART 6 SECT 1* | *DETAINEE SPREADSHEET* | *LISTS THE ISN'S, CAMP #, BLOCK LOCATION, CELL #, AND MISCELLANEOUS PILE #* | 489-523 | *b(2) internal procedures, release would circumvent rulesand regulations, impair orderly operation of camp* |
| | | *DEPARTMENT OF THE NAVY DESK JOURNAL* | *FORM USED TO ANNOTATE THE ENTRY, TIME, INCIDENT(WHO, WHAT, WHEN, & WHERE), AND ACTION OF DETAINEE BEING REPORTED* | 524 | *b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen* |
| | | *DEPARTMENT OF THE NAVY INTERVIEW/INTERROGATION LOG* | *FORM USED TO SPECIFY INTERVIEW LOCATION, DATE OF INTERVIEW, TIME, AND INFORMATION OF PERSONNEL GENERATION THE REPORT ON PERSONNEL BEING INTERROGATED* | 525,527 | *b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen* |
| | | *DEPARTMENT OF THE NAVY VOLUNTARY STATEMENT FROM MILITARY PERSONNEL AT NAVSTA GTMO SECURITY* | *DESCRIPTIVE WRITTEN REPORT FROM MILITARY PERSONNEL EXPLAINING WHAT THEY SAW AT SCENE OF DETAINEE'S DEATH* | 526,528-529 | *b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen* |

| | | | | | |
|---|---|---|---|---|---|
| | | NAVY PERSONNEL CAMP 1 WATCHBILL | LISTS ENLISTED PERSONNEL TYPE AND TIME OF DUTY ASSUMED FOR WATCH STANDING PURPOSES | 530 | (b)(2) internal procedure, interference with camp operations; b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen |
| | | PHOTOS OF CAMP AND OF DEAD DETAINEE (ENCLOSURES A-N) | PHOTOS OF CAMP, HOSPITAL, DETAINEE'S BODY, APPARENT SUICIDE NOTE | 531-544 | b(1) classified information, face of detainee, b(2) internal procedures, circumvention of rules, impair camp operations, b(6)  family privacy b7(c); protection of identities, law enforcement, (b) 7(e) investigative techniques |
| | U.S. SOUTHERN COMMAND, PART 6 SECT 2 | PHOTOS OF DEAD DETAINEE (ENCLOSURES O-EE) | MEDICAL CLINIC, PHOTOS OF DETAINEE'S BODY ((588). DETAINEE IS ON TABLE IN CLINIC, ,PHOTOS OF HANDS, FEET, FACE, BODY | 545-561 | (b)(1) classified, photos of detainee,(2) internal procedures, circumvention of rules, impair camp operations, b(6)  family privacy, b7(c); protection of identities, law enforcement, (b) 7(e) investigative techniques |
| | | DETAINEE TRACKING SHEET | 2 WEEK TRACK SHEET THAT LIST CELL BLOCK # OF DETAINEE, # OF MEALS, AND THE START/END DATE FO THIS EVENT | 562 | (b)(2) circumvention of rules, camp operations, (b)(7(e) law enforcement techniques |
| | | DETAINEE REGULAR MEAL MENU | MONTHLY/WEEKLY MEAL MENU LIST FOR THE DETAINEES | 563-566 | release |

| | | "ALPHA" BLOCK CRIME SCENE LOG | LIST ALL MILITARY PERSONNEL OF THAT WATCH WHO HAVE WALKED THE TIER @ 0525,    10 JUNE 2006 | 567-572, 581-586, 596-600 | (b)(2) internal procedure, interference with camp operations; b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcemen |
|---|---|---|---|---|---|
| | | DIAGRAM MAP OF CAMP 1, | DRAWN DETAILED MAPS OF CAMP ONE, LOCATION OF DETAINEE'S CELL BLOCKS AND NUMBERS | 573-578, 593-594 | b(1) Section 1.4A, classified, specific details of camp layout,dimensions; b(2 )internal procedure, impair camp operations |
| | | INDEX FOR DIAGRAM OF CELL 12 | ALPHABETIZED,DESCRIPTIVE LIST  AND CHART OF WHAT WAS FOUND IN DETAINEE'S CELL THAT WAS USED TO COMMIT SUICIDE | 579-580, 587-592 | release |
| | U.S.  SOUTHERN COMMAND PART 7 SECT 1 | DIAGRAM MAP OF CAMP 1 | DRAWN DETAILED MAPS OF CAMP ONE, LOCATION OF DETAINEE'S CELL BLOCKS AND NUMBERS | 601-606 | b(1) Section 1.4A, classified, specific details of camp layout,dimensions; b(2 )internal procedure, impair camp operations |
| | | INDEX/MAP FOR DIAGRAM OF CELL 5 | ALPHABETIZED,DESCRIPTIVE LIST  AND CHART OF WHAT WAS FOUND IN DETAINEE'S CELL | 607-608 | release |
| AHMED, ALI ABDULLAH | | UNTRANSLATED LETTERS WRITTEN FROM DETAINEE AND HIS BROTHER-TRANSLATED VERSION | LETTERS WRITTEN BY THE DETAINEE, WHICH WAS ADDRESSED TO HIS FAMILY MEMBERS.   LETTER FROM BROTHER TO DETAINEE | 609-623, 647-648 | (b)(6) protection of identities, |
| ZAHRANI, YASSIR TALAL | | UNTRANSLATED LETTERS WRITTEN FROM DETAINEE/ TRANSLATED VERSION OF DETAINEE | LETTERS WRITTEN BY THE DETAINEE, WHICH WAS ADDRESSED TO HIS FAMILY MEMBERS | 624-646 | (b)(6) protection of identities, |

| | | | | 649-651 | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
|---|---|---|---|---|---|
| | | "ALPHA" BLOCK CRIME SCENE LOG | LIST ALL MILITARY PERSONNEL OF THAT WATCH WHO HAVE WALKED THE TIER | | |
| | | "ALPHA" BLOCK CRIME SCENE LOG | LIST ALL MILITARY PERSONNEL OF THAT WATCH WHO HAVE WALKED THE TIER | 652-654 | b(3), 10 USC 130(b) statute exempts from disclosure names of military members and DoD employees deployed overseas, (b)(6) protection of identities, b(7) protection of identities, law enforcement |
| | U.S. SOUTHERN COMMAND PART 7 SECT 2 | TRANSLATED/UNTRANSLATED LETTERS FROM DETAINEE | LETTERS WRITTEN BY THE DETAINEE, WHICH WAS ADDRESSED TO HIS FAMILY MEMBERS | 655-672 | (b)(6) protection of identities, |
| | | PHOTOLOG CHART OF CELL A-8, ALPHA BLOCK, CAMP ONE, CAMP DELTA | LIST THE DESCRIPTION OF THE PHOTOS TAKEN OF THE CELL IN NUMERICAL ORDER | 673 | release |
| ZAHRANI, YASSIR TALAL | | CAMP PHOTOS, ALPHA BLOCK (Enclosures B1-B10) | CAMP ALPHA BLOCK, PHOTOS OF ITEMS UNDER THE BUNK, INCLUDING THE MATRESS ON THE FLOOR | 674-683 | b)(2) circumvention of rules, camp operations, (b)(7(e) law enforcement techniques |
| | | PHOTO Log OF CELL A-12, ALPHA BLOCK, CAMP ONE, CAMP DELTA | LIST THE DESCRIPTION OF THE PHOTOS TAKEN OF THE CELL IN NUMERICAL ORDER | 684 | release |
| | | CAMP PHOTOS (Enclosures C1-C7) | PHOTOS OF THE OUTSIDE OF CELL 5 SHOWING THE PRAYER RUG HANGING FROM THE WALL, MATRESS BELOW THE BUNK IN CELL 5, MATTRESS ON THE FLOOR UNDER THE BUNK | 685-691 | b)(2) circumvention of rules, camp operations, (b)(7(e) law enforcement techniques |

| | | | | 692 | release |
|---|---|---|---|---|---|
| | | *PHOTO LOG OF CELL A-5, ALPHA BLOCK, CAMP ONE, CAMP DELTA* | *LIST THE DESCRIPTION OF THE PHOTOS TAKEN OF THE CELL IN NUMERICAL ORDER* | | |
| | | *CAMP PHOTOS, CELL 8 (Enclosures D1-D9)* | *PHOTOS TAKEN OUTSIDE/INSIDE A-8 CELL FROM DIFFERENT ANGLES* | 693-701 | (b)(2) circumvention of rules, camp operations, (b)(7)(e) law enforcement techniques |
| | | *THREE DETAINEES PHOTO ID CARD* | *DETAINEES PICTURE ID WITH THEIR DATE OF BIRTH, ISN#, AND SPOKEN LANGUAGES THEY SPEAK* | 702 | b(1)1.4.c close-up photo, classified; b(2) internal information, release would impair operations |

| SC 08-075 J3 Documents | Document Name | Document Description | NO. OF PAGES | CLASSIFICATION | Originator of Record | JTF Recommendations | Comments/Exemptions |
|---|---|---|---|---|---|---|---|
| GTMO J-3, 1-4 | INFORMATION PAPER Hunger Strike 05 AAR exec sum v2 | Executive summary explaining after action reviews to include the history and events of the Hunger strike beginning Jun 05 | 4 | N/A | JTF | Release with redaction | (b)(2) - interfere with internal camp operations; (b)(3), (b)(6)privacy; |
| GTMO J-3, 5 | OPREP 03 (10 Jun 06 follow-up information) | Follow-up information on 3 JTF-GTMO detainees who died of apparent suicide in their cells | 1 | N/A | JTF | Release with redaction | b(2) - full ISN #, internal procedure/camp operation; b(5) - internal recommendation |
| GTMO J-3, 6 | OPREP 03 (10 Jun 06) | Provides information on the events surrounding the apparent suicide of the three dead detainees | 1 | N/A | JTF | Release with redaction | b(2) (interfere with internal procedures- full ISN #) |
| GTMO J-3, 7 | SC-08-075 (693)JOC | entry log of events during the time of the apparent suicide | 1 | N/A | JTF | Release with redaction | b(2) - interfere with internal procedures; b(6) - personal privacy |
| GTMO J-3, 8-9 | 136 13 JUN 06 | Joint Staff Action Processing form which outlines the events related to release of | 2 | N/A | JTF | Release with redaction | b(2) - full ISN #; b (6) - privacy |
| GTMO J-3, 10-12 | Master ISN for 693 588 093 | Master ISN Slides outlining information on each detainee to include pictures, birth date, etc | 3 | N/A | JTF | Release with redaction | b1 Section 1.4c - intelligence; b(2) - full ISN # |
| GTMO J-3, 13 | Msg Txt - 13 1200 Jun 06 | gives information on release of remains, dates, times, personnel | 1 | N/A | JTF | WITHOLD | b2 (interfere with operations) |

**Total: 13**

| DETAINEE'S NAME | DOCUMENT FILE TYPE | U.S. SOUTHERN COMMAND INDEX LIST OF DOCUMENT TYPE | DOCUMENT DESCRIPTION | PAGES COVERED | COMMENTS/EXEMPTIONS |
|---|---|---|---|---|---|
| AKHMED, ABDULLAH ALI | ISN 693 | PERSONAL INFO PAGE | DOB/PHOTO/NATIONALITY/CLOSE-UP PHOTO | 1-3 | b(1) classified;b(2) internal procedure impair camp operations |
| | | RECORD OF INFRACTIONS | RECORD OF INFRACTIONS | 4 | N/A |
| | | REPORT OF OBSERVATION/ DISCIPLINARY INFRACTION | REPORT OF OBSERVATION/ DISCIPLINARY INFRACTION | 5 | N/A |
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 6-21 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | GUARD STATEMENTS | GUARD EXPLAINING THE DETAINEE INCIDENT | 22 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 23-35 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |

| | | | | | |
|---|---|---|---|---|---|
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 36-40 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 41-46 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 47-52 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | COMBATANT STATUS REVIEW TRIBUNAL | INFORMING THE DETAINEES THEY ARE BEING HELD AS ENEMY COMBATANT | 53 | N/A |
| | | ARABIC PAGE | ARABIC PAGE | 54-55 | N/A |
| | | CERTIFICATE OF SERVICE | SERVICE PROVIDED TO THE DETAINEE | 56 | b(3)names of military members and DOD employees deployed overseas;b(6)protection of identities;b7c protection of identities law enforcement |

| | | | | | |
|---|---|---|---|---|---|
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 57 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | DISCIPLINE LEVEL/COMFORT ITEMS/MP POSTURE LEVEL | DETAINEE CURRENT STATUS ON THOSE LEVELS AND COMFORT ITEMS | 58 | b(2)internal procedure;b(3)names of military members and DOD employees deployed overseas;b(6) protection;b7c protection of identities law enforcement |
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 59-67 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | DETAINEE ROSTER | DETAINEE NAMES/CELL NUMBERS | 68-70 | b(1) classified;b(2) internal procedure impair camp operations;1.4A military plans operations |
| | | GUARD STATEMENTS | GUARD EXPLAINING THE DETAINEE INCIDENT | 71-72 | b(2)internal procedure;b(3)names of military members and DOD employees deployed overseas;b(6) protection;b7c protection of identities law enforcement |
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 73-103 | b(2)internal procedure;b(3)names of military members and DOD employees deployed overseas;b(6) protection;b7c protection of identities law enforcement |

| | | | | | |
|---|---|---|---|---|---|
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 104 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | GUARD STATEMENTS | GUARD EXPLAINING THE DETAINEE INCIDENT | 105-256 | b(2)internal procedure;b(3)names of military members and DOD employees deployed overseas;b(6) protection;b7c protection of identities law enforcement |
| | | FORCE CELL EXTRACTION PAGE | PERSONNEL INVOLVED AND THEIR PERSONNEL INFO (name,race,SSN) | 257-259 | b(2)internal procedure;b(3)names of military members and DOD employees deployed overseas;b(6) protection;b7c protection of identities law enforcement |
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 260-271 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | GUARD STATEMENTS | GUARD EXPLAINING THE DETAINEE INCIDENT | 272 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | REPORT OF/OR RECOMMEDATION FOR DISCIPLINARY ACTION | DETAINEE OFFENSE/DISCIPLINARY ACTION TAKEN | 273 | b(2)internal procedure;b(3)names of military members and DOD employees deployed overseas;b(6) protection;b7c protection of identities law enforcement |

| | | | | | |
|---|---|---|---|---|---|
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 274-290 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | INDIVIDUAL DETAINEE STATUS | DETAINEE REC,SHOWER AND MEAL STATUS | 291 | b(2) internal procedure impair camp operations |
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 292-304 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | MEMORANDUM | MEMO FOR MEDICAL ITEMS FOR DETAINEE | 305 | b(3) names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | INSPECTION RECORD OF DETAINEE IN SEGREGATION | OBSERVE DETAINEE CONDUCT WHILE IN SEGREGATION | 306-311 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | PERSONAL INFO PAGE | DOB/PHOTO/NATIONALITY/NEXT OF KIN/TATOOS/CLOSE-UP PHOTO | 312-325 | b(1) classified; b(2) internal procedure impair camp operations; b(6) protection of identities |

| | | NOTIFICATION OF ADDRESS | DETAINEE CHANGE OF ADDRESS | 326-327 | N/A |
|---|---|---|---|---|---|
| | | PERSONAL INFO PAGE | OCCUPATION,COUNTRY, BIRTH CITY,HOME CITY | 328 | N/A |
| | | WEIGHT REGISTER | DETAINEE HEIGHT AND WEIGHT | 329 | N/A |
| | | RECEIPT FOR DETAINED PERSON | RECEIPT FOR DETAINED PERSON | 330 | b(2)internal procedure impair camp operations;b(3)names of military members and DOD employees deployed overseas;b(6) protection of identities;b7c protection of identities law enforcement |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Bates Numbers | Document Description | Date | Pages | Classification | Originator of Records | Comments | Exemptions |
|---|---|---|---|---|---|---|---|
| 1-3 | Knowledgeability Brief | 22 Jun 2002 | 3 | SECRET | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 4 | Summary Interrogation Report | 12 Dec 2003 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. |
| 5 | Summary Interrogation Report | 16 Jan 2004 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. |
| 6-8 | Summary Interrogation Report | 18 Jul 2002 | 3 | SECRET//NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 9 | Summary Interrogation Report | 21 May 2004 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 10 | Summary Interrogation Report | 28 Jun 2004 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 11 | Summary Interrogation Report | 20 Aug 2004 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 12-14 | Summary Interrogation Report | 7Sep2004 | 3 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 15-16 | Summary Interrogation Report | 28 Sep 2004 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification.  Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |

| | | | | | | |
|---|---|---|---|---|---|---|
| 17-22 | Retain in DOD | 1 Oct 2004 | 6 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 23 | Memorandum for Record | 01 May 2003 | 1 | SECRET | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5),  Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 24-25 | Basic Source Data | 01 Jan 2001 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. |
| 26-29 | Memorandum for Record | 17 Jan 2003 | 4 | SECRET | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5),  Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 30-31 | Summary Interrogation Report | 14 Oct 2005 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 32 | Interrogation Plan Form | 14 Oct 2005 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 33-34 | Summary Interrogation Report | 04 Nov 2005 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5),  Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. |
| 35-36 | Summary Interrogation Report | 22 Nov 2005 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5),  Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 37-38 | Summary Interrogation Report | 13 Dec 2005 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5),  Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. |
| 39-40 | Summary Interrogation Report | 22 Dec 2005 | 2 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5),  Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources.          (b)(6)  Personal privacy of all individuals. |
| 41-46 | Knowledgeability Brief | 22 Jun 2002 | 6 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(6) Personal privacy of all individuals. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 47-49 | Knowledgeability Brief | 29 Jun 2002 | 3 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information, including reliability of sources. **(b)(6)** Personal privacy of all individuals. |
| 50-57 | Assessment | 06 Jan 2006 | 8 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. **(b)(6)** Personal privacy of all individuals. |
| 58 | Interrogation Plan Form | 4 Nov 2005 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. **(b)(6)** Personal privacy of all individuals. |
| 59 | Interrogation Plan Form | 21 Dec 2005 | 1 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. |
| 60-62 | Certificate of Transfer | 14 Jun 2006 | 3 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(6) Personal privacy of all individuals. |
| 63-65 | Interrogation Plan | 30 Nov 2005 | 3 | SECRET/NOFORN | JTF-GTMO | RELEASE WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting future operations, including reliability of sources. **(b)(6)** Personal privacy of all individuals. |
| 66 | Photo | 4 ASep2002 | 1 | SECRET | JTF-GTMO | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 67 | Photo | 14 Jul 2003 | 1 | SECRET | JTF-GTMO | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 68 | Photo | 18 Jun2002 | 1 | SECRET | JTF-GTMO | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 69 | Photo | 23 Aug 2002 | 1 | SECRET | JTF-GTMO | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. |
| 70 | Photo | 08 aug 2005 | 1 | Unmarked | JTF-GTMO | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 71-81 | Information Report | 20 Aug 2003 | 11 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 82-88 | Information Report | 24 Sept 2002 | 7 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 89-94 | Information Report | 22 Sept 2002 | 6 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 95-97 | Information Report | 21 July 2004 | 3 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 98-102 | Information Report | 6 July 2003 | 5 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 103-106 | Information Report | 22 July 2003 | 4 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 107-111 | Information Report | 20 Aug 2003 | 5 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 112-114 | Information Report | 3 Jun 2005 | 3 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |

| 115-117 | Information Report | 5 May 2003 | 3 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 118-123 | Information Report | 15 MAY 2002 | 6 | SECRET//NOFORN | OGA | Denied In Full | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. |
| 124-129 | IIR | 24 Oct 2002 | 6 | SECRET | JTF-GTMO | RELEASE TO FBI WITH REDACTIONS | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting |
| 130- 132 | IIR | 04 Jun 2003 | 3 | SECRET/NOFORN | JTF-GTMO | FBI EQUITIES | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting |
| 133-136 | IIR | 2 Jun 2003 | 4 | SECRET/NOFORN | JTF-GTMO | FBI EQUITIES | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(6) |
| 137 | Information Report | 11 Dec 2002 | 1 | UNK | JTF/FBI | FBI EQUITIES | N/A |
| 138-143 | IIR | 24 Sep 2002 | 6 | SECRET | JTF-FBI | FBI EQUITIES | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(3) 10 USC 130b, Identifying information of DOD Personnel or Units. (b)(5), |
| 144-149 | IIR | 21Oct 2002 | 6 | SECRET | JTF-GTMO | FBI EQUITIES | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting |
| 150-154 | IIR | 24 Sep 2002 | 5 | SECRET | JTF-GTMO | FBI EQUITIES | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(6) ,Personal privacy of all individuals. |
| 155-160 | IIR | 09 Oct 2002 | 6 | SECRET | JTF-GTMO | FBI EQUITIES | (b)(1) Sec 1.4c, Classified information that reveals intelligence activities, including sources, methods, and approaches. (b)(2), Internal rules and practices, including codes and dates (of operations, publication, and declassification). Use also for sensitive, but UNCLASSIFIED information. (b)(5), Deliberative process, pre-decisional, recommendations, evaluations affecting |
| BSCT 1-2 | Assessment | 4 Apr 2004 | 2 | SECRET | CITF-BSCT | FORWARD FOR REDACTIONS | N/A |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Dickstein Shapiro LLP | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Case No. 1:08-cv-00226 |
| Department of Defense | ) |
| | ) |
| and | ) |
| | ) |
| Department of the Navy | ) |
| | ) |
| Defendants | ) |
| | ) |

DECLARATION OF JOHN P. PETERSON

I, John P. Peterson, hereby declare under penalty of perjury that the following information is true and correct to the best of my knowledge:

1. I am currently the Freedom of Information Act (FOIA)/Privacy Act (PA) Specialist for the Office of the Surgeon General (OTSG) and United States Army Medical Command (MEDCOM). I have held this position since June 9, 2003. Prior to my current position, I was a Colonel in the United States Army, having served for 31 years. My last military assignment, prior to my military retirement, was Inspector General, Great Plains Regional Medical Command, from July 16, 1999, to June 7, 2003.

2. In my current capacity as the FOIA/PA Specialist, OTSG/MEDCOM, I have been delegated Initial Denial Authority OTSG/MEDCOM, Department of the Army. The Office of The Surgeon General is the Executive Agent for the Armed Forces Institute of Pathology (AFIP).

3. Inherent in my duties as the OTSG/MEDCOM FOIA/PA Specialist, I am familiar with the procedures followed to process FOIA requests and am charged with the responsibility to respond to requests for information from its files pursuant to the provisions of 5 U.S.C. 552, commonly known as the Freedom of Information Act (FOIA), and 5 U.S.C. 552a, commonly known as the Privacy Act of 1974. I also supervise the processing of FOIA appeals for the OTSG/MEDCOM and its Executive Agencies.

4. I am familiar with the subject litigation and the FOIA request submitted by the plaintiff in this case. The statements in this declaration are based upon my personal knowledge, upon my review of information available to me in my official capacity, and upon my conclusions.

5. I have caused to be made a search of records maintained at the Armed Forces Institute of Pathology for documents concerning the detention and death of Guantanamo detainee: Ahmed, Ali Abdullah. The statements contained in this declaration are based on my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

6. A manual search of hardcopy records and an electronic record search using the keywords: Ahmed, Ali Abdullah, was performed at the Armed Forces Institute of Pathology and yielded only one responsive document. The OTSG/MEDCOM is withholding information pursuant to FOIA exemption (b)(6). Exemption 6 of the FOIA

2

permits the government to withhold information about individuals when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Information being withheld includes the names of Special Agents, Medical Examiners and their assistants identified in the performance of the autopsy whose personal privacy interest is threatened by disclosure.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of August 2008.

JOHN P. PETERSON
MEDCOM FOIA/PA Specialist

3

## MEDCOM FOIA/PA Vaughn Index

| Bate Stamps | Document Date | Document Description | Exemptions Claimed |
|---|---|---|---|
| 1-10 | 1-Aug-06 | Final Autopsy Report | All (b)(6) |

# MEDCOM FOIA/PA Vaughn Index

| Justification |
| --- |
| (b)(6) Permits the government to withhold information about individuals when the disclosure would constitute a clearly unwarranted invasion into the personal privacy of a third person. When weighing the public interest in knowing how the government works against the privacy interests of individual persons, we may conclude no significant public interest will be served in the release of that information. |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Dickstein Shapiro LLP | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.  1:08-cv-00226 |
| Department of Defense | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Department of the Navy | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

---

## DECLARATION OF WILLIAM T. KAMMER

---

I, William T. Kammer, hereby declare under penalty of perjury that the following information is true and correct to the best of my knowledge:

1.  I am the Chief, Office of Freedom of Information (OFOI), Executive Services Directorate, Washington Headquarters Service, a Component of the Department of Defense (DoD), and have held that position since August 2005.  As Chief, I am responsible for implementation of the DoD Freedom of Information Act (FOIA) Program and issuance of agency-wide policy guidance and instruction on FOIA matters.  See 32 CFR 286.  Additionally, I supervise the processing of initial FOIA requests for documents within the possession and control of the Office of the Secretary of Defense (OSD) and the Office of the Chairman of the Joint Chiefs of Staff.  I also supervise the processing of FOIA appeals for the OSD and the Joint Staff.

1

2. I am familiar with the subject litigation and the FOIA request submitted by the plaintiff in this case. The statements in this declaration are based upon my personal knowledge, upon my review of information available to me in my official capacity, and upon my conclusions.

3. On June 14, 2007, OFOI received a FOIA request from Ms. Lisa Kaas of Dickstein Shapiro LLP (plaintiff) for documents concerning the detention and death of Guantanamo detainee Salah Ali Abdullah Ahmed A. Salami. See Exhibit 1. Plaintiff agreed to pay up to $50 in processing fees for this FOIA request. On July 12, 2007, OFOI sent an interim response letter to plaintiff. See Exhibit 2. In this response, OFOI advised plaintiff that since the Naval Criminal Investigative Service (NCIS) would have documents related to the death of the detainee, that portion of her request was referred to NCIS for processing and direct response to her. See Exhibit 3. Additionally, plaintiff was advised that she is considered a "commercial" requester for the purpose of FOIA fee assessment and, as such, must commit to paying search, review, and reproduction fees for the processing of her request. Because the fees were expected to be greater than the $50 agreed to by the plaintiff, OFOI advised her that any processing of the request by OFOI was on administrative hold until she agreed to paying additional fees.

4. Plaintiff sent OFOI a letter on August 1, 2007, stating a commitment to pay $2000 for the processing of her request. See Exhibit 4. OFOI subsequently tasked the following DoD Components to search for documents: Joint Task Force – Guantanamo Bay through the U.S. Southern Command, the Armed Forces Institute of Pathology through the Army Medical Command, the DoD Office of General Counsel, the Office of the Assistant Secretary of Defense for Detainee Affairs, the Office for the Administrative Review of the Detention of Enemy Combatants, and the Criminal Investigation Task Force. Plaintiff filed suit in district court on February 11. 2008.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 15th day of August 2008, at Arlington, Virginia.

*William T. Kammer*
William T. Kammer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DICKSTEIN SHAPIRO, LLP, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:08-CV-226 |
| DEPARTMENT OF DEFENSE | ) | |
| and | ) | |
| DEPARTMENT OF THE NAVY | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF DAVID M. HARDY</u>

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 194

employees who staff a total of ten (10) Units and a field operational service center whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to the Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA; Privacy Act of 1974; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1.

(4)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware that as a result of a June 14, 2007 FOIA request to the Department of Defense ("DOD"), including the Department of Navy, plaintiff Dickstein Shapiro, LLP has sought access to "[a]ll documents, including but not limited to photographs, video tapes, memoranda, reports, and electronic mail or other digital

---

[1] 60 Fed. Reg. 19825 (1995) and 68 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

-2-

media, relating in any way to the detention at Guantanamo Bay, Cuba ("GTMO") of **Salah Ali Abdullah Ahmed Al Salami**, whose ISN at Guantanamo Bay was 693, as well as all documents, including but not limited to photographs, video tapes, memoranda, reports, and electronic mail or other digital media, relating in any way to the death of Salah Ali Abdullah Ahmed Al Salami, ISN 693, at Guantanamo Bay in June 2006." (See Exhibit A.)

(5)    In the process of responding to plaintiff's FOIA request, defendants identified approximately 45 pages which contained FBI-originated information.  On May 21, 2008, defendants referred to the FBI approximately 45 pages for consultation.  As a result of further review by RIDS in preparation for this declaration, we have determined that only four out of the approximately 45 referred pages relate to the subject sought by plaintiffs -- Salah Ali Abdullah Ahmed Al Salami.  The remaining pages relate to other Guantanamo Bay detainees who are not the subject of this litigation.  Thus, in total, the FBI has reviewed and processed: two pages of FBI information that are potentially responsive;[3] one page of a DOD document that includes FBI information; and a one-page FBI document.  FBI information has been withheld pursuant to 5 U.S.C. §§ 552 (b)(1), (b)(6), (b)(7)(C) and (b)(7)(D).  The withholding of this information will be addressed in greater detail infra.

(6)    In the process of responding to plaintiff's FOIA request, defendants identified 49 pages which contained FBI-originated documents.  On May 29, 2008, Navy referred to the

---

[3]  The two pages contained a name similar to the subject; however there were no identifiers or ISN numbers to verify whether the information is identical to the subject. In order to ensure that all responsive information was reviewed, these two pages were considered responsive.

FBI 49 pages for direct response to the requester. However, it was later determined by the Navy that per DOD's request it would be treated as a consultation. As a result of further review by RIDS in preparation for this declaration, we have determined that only eight out of the 49 referred pages relate to the subject sought by plaintiffs -- Salah Ali Abdullah Ahmed Al Salami. The remaining pages relate to other Guantanamo Bay detainees who are not the subject of this litigation. Thus, in total, the FBI has reviewed and processed: eight pages of FBI-originated documents that are responsive. FBI information has been withheld pursuant to 5 U.S.C. §§ 552 (b)(1), (b)(6), (b)(7)(C) and (b)(7)(D). The withholding of this information will be addressed in greater detail infra.

(7)    As a result, the FBI submits this declaration in accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), in support of defendants' motion for summary judgment. In so doing, the FBI will provide the Court with an explanation for the procedures used in reviewing and processing of the FBI information referred by defendants, and provide justifications for the withholding of this information pursuant to 5 U.S.C. §§ 552 (b)(1), (b)(6), (b)(7)(C), and (b)(7)(D).

## JUSTIFICATION FOR WITHHOLDING FBI INFORMATION IN THE DOD REFERRAL

(8)    Each of the four referred pages were reviewed, word-by-word, line-by-line and document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. Copies of the four pages as released are attached as Exhibit B. Each page of Exhibit B is numbered "AL SALAMI-1 through

-4-

AL SALAMI-4," at the bottom right-hand corner of each page. The documents contain information which is exempt from disclosure pursuant to FOIA Exemptions (b)(1), (b)(6), (b)(7)(C), and (b)(7)(D).

## JUSTIFICATION FOR WITHHOLDING FBI-ORIGINATED DOCUMENTS IN THE NAVY REFERRAL

(9)     Each of the eight referred pages were reviewed, word-by-word, line-by-line and document-by-document, to achieve maximum disclosure consistent with the provisions of the FOIA. Every effort was made to provide plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material. Copies of the eight pages as released are attached as Exhibit C. Each page of Exhibit C is numbered "AL SALAMI-5 through AL SALAMI-12," at the bottom right-hand corner of each page. The documents contain information which is exempt from disclosure pursuant to FOIA Exemptions (b)(1), (b)(6), (b)(7)(C), and (b)(7)(D).

(10)     Copies of the pages contain, on their face, coded categories of exemptions which are provided to aid in the review of the asserted FOIA exemptions. Each instance of information withheld on the attached documents is accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the "(b)(7)(C)" designation refers to "Exemption (b)(7)(C)" of the FOIA concerning an "Unwarranted Invasion of Privacy." The numerical designation of "1" following the "(b)(7)(C)" narrows the main category into the more specific subcategory, "Names and/or Identifying Information Pertaining to FBI Employees." Listed below are the categories used to explain the FOIA exemptions asserted to withhold the protected material.

-5-

## SUMMARY OF JUSTIFICATION CATEGORIES

**EXEMPTION (b)(1)**          **CLASSIFIED INFORMATION**

(b)(1)                       Information Properly Classified by an FBI Official
                             Pursuant to Executive Order 12958, As Amended

**EXEMPTION (b)(6)**          **CLEARLY UNWARRANTED INVASION OF**
                             **PERSONAL PRIVACY**

    **AND**

**EXEMPTION (b)(7)(C)**       **UNWARRANTED INVASION OF PERSONAL PRIVACY**

(b)(6)-1 and (b)(7)(C)-1     Names and/or Identifying Information of FBI
                             Special Agents and Support Employees

(b)(6)-2 and (b)(7)(C)-2     Names and/or Identifying Information of Third Parties Who
                             Provided Information to the FBI [Cited in conjunction with
                             Exemption (b)(7)(D)]

(b)(6)-3 and (b)(7)(C)-3     Names and/or Identifying Information of Third Parties
                             Merely Mentioned

(b)(6)-4 and (b)(7)(C)-4     Names and/or Identifying Information of Non-FBI Federal
                             Employees

**EXEMPTION (b)(7)(D)**       **CONFIDENTIAL SOURCE INFORMATION**

(b)(7)(D)                    Names and/or Identifying Information Furnished by Third
                             Parties with an Implied Assurance of Confidentiality
                             [May be cited in conjunction with Exemption (b)(6)-2 and
                             Exemption (b)(7)(C)-2]

## JUSTIFICATION FOR REDACTIONS

(11)    The paragraphs that follow explain the FBI's rationale for withholding each

particular category of information under the specific exemption categories described above.

## EXEMPTION (b)(1)
## CLASSIFIED INFORMATION

(12)    The FBI's analysis of the withholding of classified information contained in these

DOD and Navy referred documents is based on the standards articulated in the FOIA statute,

5 U.S.C. § 552 (b)(1).  Exemption (b)(1) protects from disclosure those records that are "(A)

specifically authorized under criteria established by an Executive Order to be kept Secret in the

interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to

such Executive Order."

(13)    The FBI's analysis of whether Exemption (b)(1) permits the withholding of

agency records consists of two significant steps.  First, the FBI must determine whether the

information contained in the records is information that satisfies the substantive and procedural

criteria of the applicable Executive Order governing the classification and protection of national

security information; and second, complies with the various substantive and procedural criteria of

the Executive Order.  E.O. 12958, as amended on March 25, 2003, is the Executive Order that

currently applies to the protection of national security information.  I am bound by the

requirements of E.O. 12958, as amended, when making classification determinations.

(14)    In order for information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption (b)(1), it must first satisfy the requirements set forth in Section

1.1 (a) of  E.O. 12958, as amended:

   (1)    an original classification authority is classifying the information;

   (2)    the information is owned by, produced by or for, or is under the control of
          the United States Government;

-7-

(3)    the information falls within one or more of the categories of information listed in § 1.4 of this order; and

(4)    the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage. For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 12958, as amended, § 1.1 (a)

(15)    All information which I determined to be classified, and which is under the control of the United States government, is marked at the "Secret" level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage to national security. See E.O. 12958, as amended, § 1.2 (a)(2). In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 12958, as amended, must be followed before information can be considered to be properly classified, including proper identification and marking of documents. I made certain that all procedural requirements of E.O. 12958, as amended, were followed:

(1)    each document was marked as required and stamped with the proper classification designation;[4]

(2)    each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O. 12958, as amended, §§ 1.4 (c), and which portions are unclassified;[5]

(3)    the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;

(4)    the declassification policies set forth in E.O. 12958, as amended, §§ 3.1 and 3.3 were followed; and

---

[4]  E.O. 12958, as amended, §§ 1.6 (a) (1) – (5).

[5]  E.O. 12958, as amended, § 1.6 (a) (5) (c).

(5)    any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, was declassified and marked for release, unless withholding was otherwise warranted under applicable law.[6]

## FINDINGS OF DECLARANT

(16)    With the above requirements in mind, I personally and independently examined the FBI information contained in the twelve referred pages. As a result of this examination, I determined that the classified information continues to warrant classification at "Secret" level and is exempt from disclosure pursuant to E.O. 12958, as amended, § 1.4 (c), as the release of this FBI information could reasonably be expected to reveal intelligence activities and methods (including special activities).

## INTELLIGENCE ACTIVITIES

(17)    Section 1.4 (c) of E.O. 12958, as amended, exempts intelligence activities (including special activities), intelligence sources or methods, or cryptology. The redacted information on AL SALAMI-1 through AL SALAMI-12 is withheld to protect intelligence activities and methods utilized by the FBI for gathering intelligence data. An intelligence activity has two characteristics. First, the intelligence activity or method and information generated by it is needed by U.S. Intelligence/ Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity, and usefulness of its information is to be preserved.

---

[6] 5 U.S.C. § 552 (b) provides, in part, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." In this case, the information at issue has been carefully re-examined. Based on our re-review, we have determined that no reasonably segregable portions may be declassified and released.

(18)   The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods utilized by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities directed at specific targets. The intelligence activities or methods detailed in the withheld information are effective means for the FBI to gather, store, or disseminate intelligence information. The criteria applied and priorities assigned in these records are used in the FBI's present intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI intelligence or counterintelligence investigations.

(19)   The information in these twelve pages concerning activities is very specific in nature and known to very few individuals. Disclosure of the specific information which describes these intelligence activities are still used by the FBI today to gather intelligence information, and could reasonably be expected to cause serious damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current activities used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal or determine the criteria used--and priorities assigned to--current intelligence or counterintelligence investigations. Hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities. This would severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(20)   The FBI protected specific categories of information related to intelligence activities or methods because disclosure reasonably could be expected to cause serious damage to the national security. First, the withheld information contains code words which are assigned to

-10-

a specific intelligence investigation. Second, the withheld information contains detailed

intelligence information gathered on specific individuals or organizations of national security

interest. Third, the withheld information contains the character of the case, which identifies the

specific intelligence activity directed at a specific target. A more detailed discussion of each of

these categories is contained in the paragraphs below.

## A. Code Word

(21)    The classified information withheld on **AL SALAMI-3**, the third block redaction,

line 1; and **AL SALAMI-4**, the fourth block redaction, contain a code word for an ongoing

investigation.

(22)    More specifically, the withheld information consists of a code word that has never

been publicly revealed and which, if disclosed, will reveal a specific intelligence activity or

method of continuing value to the FBI in its ongoing investigations. Code words are unique and

assigned solely to one particular intelligence activity or method. They are used in lieu of the

actual name, description, and  information concerning a specific investigation of national security

interest. The withheld code word is sensitive and synonymous with on-going investigations that

are still active today in collecting intelligence information. Public disclosure of a code word will

allow a hostile analyst, or one not privileged to this code word, to patch bits and pieces of

information together until the actual use of this application can be determined. In addition, the

disclosure of a code word will inform hostile intelligence of the possible range of our intelligence

capabilities, as well as the probable intelligence that the FBI has gathered, or can collect,

concerning them. This information is properly classified at the "Secret" level and withheld

pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure  pursuant to

Exemption 1.

-11-

## B. Detailed Intelligence Activities

(23)    The classified information withheld on AL SALAMI-1 through AL SALAMI-12 is located as follows and all relate to intelligence activities:

**AL SALAMI-1,** the whole block redaction in its entirety

**AL SALAMI-2,** the second and third block redaction in its entirety

**AL SALAMI-3,** the first, second, fourth and fifth block redaction in their entirety

**AL SALAMI-4,** the first, second, third, fifth, sixth and seventh block redaction in their entirety

**AL SALAMI-5,** the first, second, fourth, sixth, seventh, eight and ninth block redaction in their entirety

**AL SALAMI-6** the first, second, ninth, twelfth, thirteenth, fourteenth, fifteenth and sixteenth block redaction in their entirety

**AL SALAMI-7,** the first, second, fourth, fifth, sixth, seventh and eighth block redaction in their entirety

**AL SALAMI-8,** the first, second, fourth, fifth, sixth, seventh, and eighth block redaction in their entirety

**AL SALAMI-9,** the first, second, fourth, fifth, sixth, seventh, eighth and ninth block redaction in their entirety

**AL SALAMI-10,** the first, second, fourth, fifth, sixth, seventh, eighth and ninth block redaction in their entirety

**AL SALAMI-11,** the first, second, fourth and fifth block redaction in their entirety.

**AL SALAMI-12,** the first, second, fourth, fifth, sixth, and seventh block redaction in

-12-

their entirety.

(24)    More specifically, the withheld information contains detailed intelligence activities information gathered or compiled by the FBI on a specific individual or organization of national security interest. The disclosure of this information would cause the same harm as previously cited in ¶¶ 17-19, supra. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4(c) and exempt from disclosure pursuant to Exemption 1.

### DEFENDANT'S BURDEN OF ESTABLISHING
### EXEMPTION (b)(1) CLAIMS

(25)    The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files, including the secrecy of that other information. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined, and upon attempts by a hostile entity to analyze such information.

(26)    In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security at the "Secret" level, and invoked FOIA Exemption 1 to prevent disclosure. Likewise, the

-13-

justifications for the withheld classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to the intelligence activities (including special activities), intelligence sources or methods, or cryptology could reasonably be expected to jeopardize the national security of the United States, and as a result, all information appearing in the DOD and Navy referred documents which has been identified as classified has been appropriately classified pursuant to E.O. 12958, as amended, and withheld pursuant to FOIA Exemption 1.

## EXEMPTION (b)(7) THRESHOLD

(27)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subparts of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns invasion of personal privacy and revealing the identity of confidential sources.

(28)    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is

-14-

within the law enforcement duty of that agency.

(29)    The FBI is the principal investigatory component of the U.S. Department of Justice and is mandated by federal law to investigate violations of numerous federal criminal statutes, including criminal statutes pertaining to acts of terrorism. Additionally, the FBI has mandated investigative responsibilities in the areas of the national security of the United States, including counterintelligence activities and counterterrorism activities. The records at issue in this case were compiled during the course of the FBI's interviews and investigations of detainees held at GTMO pursuant to 18 U.S.C. § 2332(b). In support of the FBI's overriding mission of identifying those responsible for the September 11, 2001 attacks and preventing acts of terrorism, the FBI deployed Special Agents ("SAs") and support personnel around the world to interview terrorist suspects detained in GTMO, Afghanistan, Iraq and other locations for the purposes of collection and analysis of investigative and intelligence information.

(30)    The FBI documents and the FBI information contained in the referred DOD documents and the FBI-originated documents referred by Navy relate to the FBI's mission of identifying terrorists and preventing acts of terrorism, these documents were compiled for law enforcement purposes pursuant to 18 U.S.C § 2332(b). The enforcement activities reflected in this collection of documents are well within the law enforcement duties of the FBI and the FBI information at issue readily meets the threshold requirement of Exemption 7. The remaining inquiry is whether their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy;" and " could reasonably be expected to reveal the identity of confidential sources."

## EXEMPTIONS (b)(6) AND (b)(7)(C): CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY

(31)    5 U.S.C. § 552 (b)(6) exempts from disclosure "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

information withheld pursuant to Exemption (b)(7)(C).

(32)    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individual(s) mentioned in these records against any public interest in disclosure.  In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appears in the documents at issue.  When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure.  In making this analysis, the public interest information was determined to be information which would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.  In each instance where information was withheld pursuant to Exemption (b)(6) and (b)(7)(C), the FBI determined that the individuals' privacy interests were not outweighed  by any public interest in disclosure.

-16-

Disclosure of the names, personal identifiers, and other identifying information of third-party individuals in the context of these records could reasonably be expected to cause embarrassment and humiliation, thus constituting a clearly unwarranted and unwarranted invasion of personal privacy. Every effort has been made to release all segregable information contained in these records without invading the privacy interests of these third parties.

### (b)(6)-1 and (b)(7)(C)-1: Names and/or Identifying Information Pertaining to FBI Special Agents and Support Employees

(33)    Exemptions (b)(6)-1 and (b)(7)(C)-1 have been asserted to protect the names and identifying information of the FBI SAs who were responsible for conducting investigations of individuals who pose a threat to the United States in terrorism, espionage, and racketeering cases.

(34)    Disclosure of the names could subject the FBI SAs to unauthorized inquiries by members of the media and the general public who seek access to this type of information. Accordingly, the FBI determined that the FBI SAs referenced in the responsive records maintain a substantial privacy interest in not having their identity disclosed.

(35)    The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs. The FBI could not identify any discernible public interest. The disclosure of the names of the FBI SAs would not demonstrate how the FBI performs its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. There have been no allegations that the FBI SAs engaged in any type of significant misconduct which would establish a public interest in the disclosure.

-17-

Ultimately, disclosure of the names of the FBI SAs would shed no light on the performance of the FBI's mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners. Thus, disclosure of the names of the FBI SAs would constitute a clearly unwarranted and unwarranted invasion of their personal privacy, and the FBI has properly asserted Exemption (b)(6)-1 and (b)(7)(C)-1 on the following page:  **AL SALAMI-2** and **AL SALAMI-5** through **AL SALAMI-6**.

### (b)(6)-2 and (b)(7)(C)-2: Names and/or Identifying Information of Third Parties Who Provided Information to the FBI

(36)     Exemptions (b)(6)-2 and Exemption (b)(7)(C)-2, as well as Exemption (b)(7)(D), have been asserted to withhold the names and identifying information concerning third parties who provided information to the FBI.

(37)     Disclosure of the identities of third parties in this context could cause unsolicited and unnecessary attention to be focused on them, cause embarrassment, humiliation or possible mental or physical harm if their assistance to the FBI became publically known.  For these reasons, the FBI has determined that the third-party individuals mentioned in the responsive communications maintain a substantial privacy interest in not having their identities disclosed.

(38)     After identifying the substantial privacy interest of the third parties in the communications, the FBI balanced those interests against the public interest in disclosure.  The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the

-18-

operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to Exemptions (b)(6)-2 and (b)(7)(C)-2 on the following pages: **AL SALAMI-1 and AL SALAMI-3 through AL SALAMI-12** .

### (b)(6)-3 and (b)(7)(C)-3: Names and/or Identifying Information of Third Parties Merely Mentioned

(39)     Exemption (b)(6)-3 and (b)(7)(C)-3 have been asserted to withhold the names of third parties who are merely mentioned in various communications which reflect the FBI's internal discussion of individuals who are the subjects of law enforcement investigations. These individuals are not of investigative interest to the FBI, but are merely mentioned in these communications.

(40)     Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure could embarrass them. For these reasons, the FBI has determined that the third-party individuals merely mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(41)     After identifying the substantial privacy interest of the third parties merely mentioned in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information

would constitute a clearly unwarranted and unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and identifying information of these third parties merely mentioned in the responsive communications pursuant to Exemption (b)(6)-3 and (b)(7)(C)-3 on the following pages: **AL SALAMI-1 through AL SALAMI-6** and **AL SALAMI-11 through AL SALAMI-12**.

### (b)(6)-4 and (b)(7)(C)-4: Names and/or Identifying Information of Non-FBI Federal Employee

(42)    Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted to protect the name and identifying information of non-FBI federal government employees.

(43)    The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject the employees to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees articulated above.

(44)    After identifying the substantial privacy interests of the non-FBI federal employees, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of the non-FBI federal employees names and identifying information will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted and unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to

-20-

Exemptions (b)(6)-4 and (b)(7)(C)-4 on the following pages: **AL SALAMI-2** and

**AL SALAMI-6.**

## EXEMPTION (b)(7)(D)
## CONFIDENTIAL SOURCE INFORMATION

(45)    5 U.S.C. § 552 (b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of law enforcement records
> or information . . . could reasonably be expected to disclose the
> identity of a confidential source, including a State, local or foreign
> agency or authority or any private institution which furnished
> information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement agency
> conducting a lawful national security intelligence investigation,
> information furnished by a confidential source.

(46)    Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common definition of the term.  During the course of an investigation,

individuals and organizations provide information under circumstances from which assurances of

confidentiality can be inferred.  These individuals and organizations are considered to be

confidential sources since they furnish information with the understanding that their identities

and information provided will not be divulged outside the FBI.  Information provided by these

individuals and organizations are singular in nature and if released, could reveal the informant's

identity.

(47)    Releasing the information provided by these sources may likely reveal a

confidential source's identity.  The release of a source's identity would forever alleviate that

source as a future means of obtaining information.  In addition, when the identity of one source is

revealed, that revelation has a chilling effect on the activities and cooperation of other sources.  It

-21-

is only with the understanding of complete confidentiality that the aid of such sources can be

enlisted, and only through this confidence that these sources can be persuaded to continue

providing valuable assistance in the future. Thus, any identifying information provided by, as

well as the identities of, has been protected pursuant to Exemption (b)(7)(D).

### (b)(7)(D)    Names and/or Identifying Information Furnished by Third Parties With an Implied Assurance of Confidentiality

(48)    Exemption (b)(7)(D) has been asserted in conjunction with Exemptions (b)(6)-2

and (b)(7)(C)-2 to protect the names and information of individuals, including foreign detainees,

who were interviewed and provided information to the FBI under implied assurances of

confidentiality in the course of the criminal, counterterrorism and national security investigation

reported in these records. Individuals have been interviewed by the FBI in the course of these

investigations who were in a position to possess specific information about the background and

activities of terrorist subjects and/or possess information concerning potential criminal or

terrorist activities. These individuals have provided valuable information during the course of

these investigation and it can be inferred from the nature of these investigations that these

individuals were interviewed under circumstances from which an assurance of confidentiality

may be implied. The nature of these investigations leads to a reasonable inference that the

individuals, including foreign detainees, who assisted the FBI by providing information would

expect an assurance of confidentiality that their identities and cooperation would not be disclosed

to plaintiff and the public. If the identities of these persons were released, both they and their

family members could be subjected to embarrassment, humiliation or possible mental or physical

harm if their assistance to the FBI became publicly known. Therefore, the identities of these

-22-

persons who provided information to the FBI under an implied assurance of confidentiality and any information that they provided which could ultimately identify them was withheld for disclosure. Accordingly, the FBI has properly withheld their names and identifying information pursuant to FOIA Exemption (b)(7)(D) on the following pages: **AL SALAMI-1** and **AL SALAMI-3** through **AL SALAMI-12**.

## CONCLUSION

(49)    The FBI has carefully reviewed and processed the four pages of documents that were referred by DOD in response to plaintiff's FOIA request for records on Salah Ali Abdullah Ahmed Al Salami. Two of the four pages were withheld in full; one page of a DOD document that included FBI information was withheld in full; and one FBI document was withheld in part. The FBI has also carefully reviewed and processed the eight pages of FBI-originated documents that were referred by the Navy in response to plaintiff's FOIA request. All eight FBI-originated documents have been withheld in part. All withholdings have been taken pursuant to FOIA Exemptions (b)(1), (b)(6), (b)(7)(C), and (b)(7)(D). The FBI carefully examined each of the pages withheld in part and in full, and determined that the information withheld from plaintiff in this case, if disclosed, could reasonably be expected to damage national security, cause clearly unwarranted and unwarranted invasions of privacy interests of numerous individuals, and disclose the identities of confidential sources. After extensive review of the documents at issue, the FBI has determined that there is no further reasonably segregable information that can be released.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A, B and C attached hereto are true and correct copies.

Executed this __18th__ day of August, 2008.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
  Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO LLP )
)
    Plaintiff, )
)
            v. )    Civil Action No. 1:08-CV-226
)
DEPARTMENT OF DEFENSE )
)
  and )
)
DEPARTMENT OF THE NAVY )
)
    Defendant. )
)

# EXHIBIT A

**Tucker, Barbara CIV WHS/ESD**

07-F-1952

| | |
|---|---|
| From: | Lisa Marie Kaas [nobody@dtic.mil] |
| Sent: | Thursday, June 14, 2007 3:34 PM |
| To: | DFOISR, DOD/DFOISR/WHS |
| Subject: | Freedom of Information Act Request |

```
Submitted:    [14/Jun/2007:15:33:46]

Name:         Lisa Marie Kaas
Organization: Dickstein Shapiro LLP
E-mail:       KaasL@dicksteinshapiro.com
Phone number: 2024202733

Address 1:    1825 Eye Street NW
Address 2:
City:         Washington
State:        DC
ZIP Code:     20006-5403
Country:      USA

Requester Control Number:

Request Message:

All documents, including but not limited to photographs, video tapes, memoranda, reports,
and electronic mail or other digital media, relating in any way to the detention at
Guantanamo Bay, Cuba of Salah Ali Abdullah Ahmed Al Salami, whose ISN at Guantanamo Bay
was 693, as well as all documents, including but not limited to photographs, video tapes,
memoranda, reports, and electronic mail or other digital media, relating in any way to the
death of Salah Ali Abdullah Ahmed Al Salami, ISN 693, at Guantanamo Bay in June 2006.

Willing To Pay: $ 50.00

--
Submitted via http://www.dod.mil/pubs/foi/foiarequest.html

Sender Information:
    REMOTE_HOST: 207.138.234.69
    REMOTE_ADDR: 207.138.234.69
    Browser:     Mozilla/4.0 (compatible; MSIE 6.0; Windows NT 5.1; SV1; .NET CLR
1.1.4322)
    E-mail:      KaasL@dicksteinshapiro.com
```

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO LLP              )
                                  )
        Plaintiff,                )
                                  )
            v.                    )     Civil Action No.  1:08-CV-226
                                  )
DEPARTMENT OF DEFENSE             )
                                  )
    and                           )
                                  )
DEPARTMENT OF THE NAVY            )
                                  )
        Defendant.                )
                                  )

# EXHIBIT B

SECRET

b1
b6 - 2,3
b7C - 2,3
b7D

(S)

SECRET

AL SALAMI-1

FD-302 (Rev. 10-6-95)    SECRET
- 1 -

# FEDERAL BUREAU OF INVESTIGATION
Date of

transcription

Investigation on                          at

File #                                                    Date dictated

by

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to
your agency;
it and its contents are not to be distributed outside your agency.

b1
b6 - 3,4
b7C - 3,4

12/11/2002

(S)

        ALI ABDULLAH AKHMED, internment serial number (ISN)
US9YM-00693DP, was interviewed at Camp Delta, United States Naval
Base, Guantanamo Bay, Cuba_____facilitated the
interview by providing_____to English translation.  After being
advised of the identities of the interviewing Agents and the nature
of the interview, AKHMED was shown photographs

(S)

        AKHMED was unable to identify or provide any positive
information relative to the above individuals.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

DATE: 06-05-2008
CLASSIFIED BY 65179 DMH/HKG/VTA
REASON: 1.4 (C)
DECLASSIFY ON: 06-05-2033

12/10/2002        Guantanamo Bay, Cuba

265A-MM-C99102                                    12/10/2002

SA

b6 - 1
b7C - 1        AL SALAMI-2

SECRET

SECRET

(S)



b1
b6 - 2,3
b7C - 2,3
b7D

PAGE 11 BUMTATF4099 S E C R E T

(S)

b1
b6 - 2,3
b7C - 2,3
b7D

FINAL SECTION OF 02

QQQQ

(S) SUBJ [                    ] FD-302 FOR [          ] (S)

10. (U) THE INTERVIEW WAS TERMINATED AT APPROXIMATELY 2000HRS.

----------------------------------TEARLINE----------------------------------

COMMENTS:  (S)

1. (S) b7(1) Sec 1.4(c)(b)(2)
b7(1) Sec 1.4 GUANTANAMO BAY, CUBA.

2. (U) WARNING - THIS FBI 302 MAY CONYAIN INFORMATION THAT IS
DUPLICATED IN REPORTING FROM OTHER DOD REPRESENTATIVES ATTENDING THE
SAME INTERVIEW.

b1
b6 - 2
b7C - 2
b7D

PAGE 07 b7(2) S E C R E T

3. (S) b7(2)

b7(2)

SECRET

AL SALAMI-3

SECRET



(S)

b1
b6 - 2,3
b7C - 2,3
b7D

PAGE 11 RUMIATF4838 S E C R E T

(S)

b1
b6 - 2,3
b7C - 2,3
b7D

(S)

FINAL SECTION OF 02
QQQQ

(S)

SUBJ:                              FD-302 FOR

(S)

b1
b6 - 2,3
b7C - 2,3
b7D

PAGE 07 RUMIATF4839 S E C R E T

(S)

b1
b6 - 2,3
b7C - 2,3
b7D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DICKSTEIN SHAPIRO LLP                      )
                                           )
    Plaintiff,                             )
                                           )
            v.                      )     Civil Action No.  1:08-CV-226
                                           )
DEPARTMENT OF DEFENSE                      )
                                           )
  and                                    )
                                           )
DEPARTMENT OF THE NAVY                     )
                                           )
    Defendant.                             )
                                           )

# EXHIBIT C

SECRET NOFORN

SECRET/NOFORN

b1
b6 -2
b7C -2
b7D -1

(S)

Internment Serial Number (ISN)

(S)                              b1                    (S)

(S)

b1
b6 -2,3
b7C -2,3
b7D -1

(U)  (At approximately 4:35 p.m., IA              b6 -1
returned to the interview room and resumed taking notes.)    b7C -1

(S)    (U)

b1
b6 -2,3
b7C -2,3
b7D -1

(S)    (U)

b1
b6 -2,3
b7C -2,3
b7D -1

(S)    (U)

b1
b6 -2,3
b7C -,2,3
b7D -1

(S)    (U)

b1
b6 -2,3
b7C -2,3
b7D -1

SECRET/NOFORN
13

SECRET NOFORN

AL
SALAMI-5

1185

SECRET/NOFORN

SECRET NOFORN U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

June 14, 2006

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

DATE: 06-16-2006
CLASSIFIED BY 65179 DMH/HKG/VTA
REASON: 1.4 (C)
DECLASSIFY ON: 06-16-2033

(S)    b1
       b6 -2
       b7C -2
       b7D -1

Internment Serial Number (ISN)          (S)

(S)                              b1

(U) On 06/10/2006 FBI Special Agent (SA)          b6 -1
on temporary duty (TDY) to Guantanamo Bay, Cuba (GTMO) b7C -1
from the          office of the FBI, along with Intelligence
Analyst (IA)          TDY to GTMO from the          b6 -1
office of the FBI, interviewed          at Camp Delta, GTMO. b7C -1
The interview was conducted in English and          with the    b6 -4
assistance of contract linguist          . After being    b7C -4
advised as to the identity of the interviewing personnel and the
nature of the interview,          provided the following
information.

b1
b6 -2
b7C -2
b7D -1

(S)    (U)          b1
                    b6 -2
                    b7C -2
                    b7D -1

(S)    (S//NF)          b1
                       b6 -2
                       b7C -2
                       b7D -1

(S)    (U)          b1
                    b6 -2
                    b7C -2
                    b7D -1

(S)    (U)          b1
                    b6 -3
                    b7C -3
                    b7D -1

SECRET/NOFORN
This document contains neither recommendations nor conclusions of the FBI. It is the property of the
FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

SECRET NOFORN

AL SALAMI-6
EXHIBIT ( 88 )

7154

SECRET NOFORN

SECRET/NOFORN

(S)

Internment Serial Number (ISN)

(S)

b1
b6 -2
b7C -2
b7D -1
b1

(S)                                                                    (S)

(S)

b1
b6 -2
b7C -2
b7D -1

(S)                    (X)

b1
b6 -2
b7C -2
b7D -1

(S)                    (X)

b1
b6 -2
b7C -2
b7D -1

(S)                    (X)

b1
b6 -2
b7C -2
b4 -1

(S)                    (X)

b1
b6 -2
b7C -2
b7D -1

SECRET/NOFORN
7

SECRET NOFORN

AL SALAMI-7

1160

~~SECRET~~ ~~NOFORN~~

SECRET/NOFORN

b1
b6 -2
b7C -2
b7D -1

(S)

Internment Serial Number (ISN)

(S)                    b1              (S)

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

SECRET/NOFORN
8

~~SECRET~~ ~~NOFORN~~

AL SALAMI-8



SECRET NOFORN

SECRET/NOFORN

(S)                  b1
                  b6 -2
                  b7C -2
Internment Serial Number (ISN)    b7D -1

(S)       b1      (S)

(S)                  b1
                  b6 -2
                  b7C -2
                  b7D -1

(S)      (S)            b1
                  b6 -2
                  b7C -2
                  b7D -1

(S)    (S//NF)         b1
                  b6 -2
                  b7C -2
                  b7D -1

(S)    (S)                    b1
                  b6 -2
                  b7C -2
                  b7D -1

(S)    (S)                    b1
                  b6 -2
                  b7C -2
                  b7D -1

(S)    (S)                    b1
                  b6 -2
                  b7C -2
                  b7D -1

SECRET/NOFORN
9

SECRET NOFORN

AL SALAMI-9

1162

SECRET NOFORN

SECRET/NOFORN

(S)b1
b6 -2
b7C -2
b7D -1

(S)

Internment Serial Number (ISN)

(S)

b1

(S)

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1

(S)

b1
b6 -2
b7C -2
b7D -1



SECRET/NOFORN
14

SECRET NOFORN     AL SALAMI-10

1167

SECRET NOFORN

SECRET/NOFORN

(S)

(S)                  b1
                     b6 -2
Internment Serial Number       b7C -2
             (S)         b1 b7D -1

(S)
                               b1
(S)                       b6 -2,3
                       b7C -2,3
                       b7D -1

(U) **Derived From :** G-3
      **Declassify On:** 06/10/2006

SECRET/NOFORN
2

SECRET     NOFORN

AL SALAMI-11

113  

SECRET/NOFORN

SECRET/NOFORN

(S)

b1
b6 -2
b7C -2
b1 7D -1

Discernment Serial Number /ISN

(S)                    (S)

(S)

b1
b6 -2
b7C -2
b7D -1

(U)

(S)

b1
b6 -2,3
b7C -2,3
b7D -1

(S)          (U)

(S)

(U)

b1
b6 -2,3
b7C -2,3
b7D -1

(S)

(S)          (U)

b1
b6 -2
b7C -2
b7D -1

(U) **Derived From :** G-3
**Declassify On:** 06/10/2006

SECRET/NOFORN
2

SECRET NOFORN

AL SALAMI-12

1133

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                  )
                                  )
  Dickstein Shapiro LLP,          )
                                  )
          Plaintiff,              )
                                  )
          v.                      )   Civil Action No.
                                  )   1:08-cv-00226-PLF
  Department of Defense et al.,   )
                                  )
          Defendants.             )
                                  )
                                  )
                                  )
                                  )
```

DECLARATION OF MARGARET P. GRAFELD

I, Margaret P. Grafeld, declare and state as follows:

1. I am the U.S Department of State's (the "Department's") Information and Privacy Coordinator and the Director of the Department's Office of Information Programs and Services ("IPS"). In these capacities, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions. I have been in the employ of the Department of State since 1974, and have served with the Department's Information Access Program for

most of my tenure with the Department.  I am authorized to classify and declassify national security information pursuant to Executive Order ("E.O.") 12958, as amended, and Department of State regulations set forth in 22 C.F.R. §§ 9.7, 9.14.  I make the following statements based upon my personal knowledge, which in turn is based on a personal review of the records in the case file established for the processing of the subject request, and upon information furnished to me in the course of my official duties.  I have read the FOIA requests submitted to the Department of Defense ("DoD") by the plaintiff in the above-captioned matter, and submit this declaration in support of DoD's Motion for Summary Judgment.

2.    The core responsibilities of IPS include:  records access requests made by the public (under the FOIA, the Privacy Act, and the mandatory classification review requirements of E.O. 12958, as amended, or the Ethics in Government Act), members of Congress, and other government agencies, and those that have been made pursuant to judicial processes, such as subpoenas, court orders, and discovery requests; records management; privacy protection; national security classification management and declassification review; corporate records archives management; research; operation and management of the Department's Library; and the application of technology that supports these activities.

*Dickstein Shapiro v. Department of Defense, et al.*
*Grafeld Declaration*

3.    The purpose of this declaration is to describe the Department's review of eleven documents that were referred to the Department by DoD as part of the DoD's response to the FOIA request at issue in this lawsuit.

## I. ADMINISTRATIVE PROCESSING OF REFERRAL FROM DoD

4.    DoD referred 42 pages of materials to the Department for review, which the Department subsequently divided into eleven documents: seven Department of State documents (regarding which the Department communicated the review determinations to the requester), and four DoD documents that implicated Department of State information and interests (regarding which the Department responded to DoD and requested that DoD withhold certain information on behalf of the Department of State).   The Department assigned case control number 200804716 to this referral.

5.    After reviewing the documents under FOIA, the Department communicated to the plaintiff that, of the seven Department of State documents referred by DoD, one document was released in full, five documents were withheld in part, and one document was denied in full.   The withholdings made at the initiative of the Department of State in the six documents denied in part or in full are described below.   Additional excisions from these documents were made at the request of DoD, and are described separately by DoD.

*Dickstein Shapiro v. Department of Defense, et al.*
*Grafeld Declaration*

6.    The Department returned the remaining four documents to DoD and requested that certain information in three of the documents be withheld.    The Department's requested withholdings in these documents are described in more detail below.    DoD's additional excisions from these documents are described separately by DoD.

## II. EXEMPTIONS CLAIMED BY THE DEPARTMENT OF STATE

### FOIA Exemption (b)(5) – Deliberative Process

7.    Title 5 U.S.C. Section 552(b)(5) states that the FOIA does not apply to:

> Inter-agency or intra-agency memoranda or
> letters which would not be available by law to
> a party other than an agency in litigation with
> the agency....

8.    This exemption is meant to protect, inter alia, the candid views and advice of U.S. Government officials in their pre-decisional deliberations respecting policy formulation and administrative direction.    Disclosure of material containing such deliberations or of material on which such deliberations are based would prejudice the free flow of internal recommendations and other necessary exchanges.    It would severely hamper the ability of responsible officials to formulate and carry out executive branch programs.    This exemption is also intended to avoid public confusion that might result from the circulation of drafts and other

deliberative documents containing ideas or positions that are not reflected in the final document.  One document, a draft text of a diplomatic communication to a foreign government, has been withheld on the basis of exemption (b)(5) and the deliberative process privilege.

<u>FOIA Exemption (b)(6) - Personal Privacy</u>

9.  Title 5 U.S.C. Section 552 (b)(6) states that the FOIA does not apply to:

> ...personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy....

The courts have interpreted the language of exemption (b)(6) broadly to encompass all information that applies to an individual without regard to whether it was located in a particular type of file.  Five Department of State documents and portions of three DoD documents in this case contain information that has been withheld BY the Department of State under this privacy exemption by excising government employees' names and other identifying personal information (specifically, job titles, email addresses, and phone numbers).

10. Inasmuch as the information withheld is personal to an individual, there is clearly a privacy interest involved. This privacy interest is heightened in the counterterrorism

context, given the sensitivity of the subject matter and the risk of potential harassment of government personnel involved in these issues.  I am required, therefore, to determine whether there exists any public interest in disclosure and to weigh any such interest against the extent of the invasion of privacy.

11. In United States Department of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749 (1989), the Supreme Court laid down two rules for determining public interest in disclosure of information involving a privacy interest:  (1) the relevant inquiry is whether disclosure would serve the "core purpose" for which Congress enacted the FOIA, i.e., to show "what the government is up to," and (2) the relevant public interest is the interest of the public in general, not particular interest of the person or group seeking the information.  Accordingly, where the requester is not the person whose privacy interest is at stake, the identity of the requester as well as the purpose for which the information is sought is irrelevant in making the disclosure determination.

12.  For all material withheld in this case under FOIA exemption (b)(6) by or at the request of the Department of State, I have concluded that (1) disclosure of the information would result in a clearly unwarranted invasion of personal

privacy; and (2) disclosure of the information would not serve the "core purpose" of the FOIA, i.e., it would not show "what the government is up to." Accordingly, the privacy interest clearly outweighs any public interest in disclosure of such personal information and must, therefore, prevail.

### III. DOCUMENT DESCRIPTIONS

13. <u>Document No. D1</u> is an e-mail dated March 17, 2008 from an employee in the Department's Bureau of Near Eastern Affairs to various addressees. One page. UNCLASSIFIED. Denied in part. Exemption (b)(6). This document circulates an attachment (which is document D1A, a draft diplomatic note to the government of Saudi Arabia) to various employees of the Departments of State, Justice, and Defense for their edits and approval. The only information withheld from this document consists of the names and/or email addresses of the employees. As the government employees working on these issues have a privacy interest in avoiding potential harassment or retaliation, and as the release of their personally identifying information would not significantly further any public understanding of the government's activities, the withheld information is exempt under FOIA exemption (b)(6). Because only the names and/or email addresses have been withheld, there is no additional non-exempt information in

this document that can be meaningfully segregated and released.

14.   Document No. D1A is a draft of a diplomatic note to the government of Saudi Arabia, dated March 17, 2008.   Two pages.   UNCLASSIFIED.   Denied in full under exemption (b)(5), with some material additionally withheld under exemption (b)(6).   This document contains draft, pre-decisional language that was circulated and subsequently deliberated within the executive branch and ultimately altered before the diplomatic note was transmitted to the foreign government.   Disclosure of this draft language would inhibit candid internal discussion of such drafts, including the expression of recommendations and judgments regarding preferred courses of action with respect to intergovernmental communications and the substance of those communications.   Because the entire text of the document is a draft, there is no material that may be reasonably segregated and released.   The entirety of this document is, accordingly, exempt from release under FOIA exemption (b)(5).   Additionally, the identity of the drafter and the government personnel to whom this document was circulated for their comments, edits, and approval have been withheld under exemption (b)(6).   As the government employees working on these issues have a privacy interest in avoiding potential harassment or retaliation, and as the release of

their personally identifying information would not
significantly further any public understanding of the
government's activities, the withheld information is exempt
under FOIA exemption (b)(6).

15.  Document D3 is telegram No. 1755 dated July 10, 2007
from the U.S. Mission in Geneva to the Department headquarters
and to the U.S. Mission to the United Nations.  Four pages.
UNCLASSIFIED.  Denied in part.  Exemptions (b)(2) and (b)(6).
All the withholdings from this document are described
separately by DoD.

16.  Document Nos. D4, D5, D6, D7, D8, D9, and D10.

Document No. D4 is an e-mail dated March 26, 2007 at 7:54
a.m. from a Department employee in the U.S. Mission in Geneva
to various addressees, quoting a chain of other emails.  Six
pages.  UNCLASSIFIED.  Denied in part.  Exemptions (b)(2) and
(b)(6).

Document No. D5 is an e-mail dated March 26, 2007 at 3:43
p.m. from a DoD employee to other DoD employees, quoting a
chain of other emails.  Seven pages.  UNCLASSIFIED.  Returned
to DoD, with the request to withhold portions under exemption
(b)(6).

Document No. D6 is an e-mail dated March 23, 2007 at 3:47
p.m. from a Department of State employee to various

addressees, quoting a chain of other emails.  Three pages.

UNCLASSIFIED.  Denied in part.  Exemptions (b)(2) and (b)(6).

Document No. D7 is an e-mail dated March 26, 2007 at 5:00

p.m. from a DoD employee to other DoD employees, quoting a

chain of other emails.  Nine pages.  UNCLASSIFIED.  Returned

to DoD, with the request to withhold portions under exemption

(b)(6).

Document No. D8 is an e-mail dated March 26, 2007 at 5:27

p.m. from a DoD employee to other DoD employees.  One page.

UNCLASSIFIED.  Returned to DoD.  All the withholdings from

this document are described separately by DoD.

Document No. D9 is an e-mail dated March 26, 2007 at 5:57

p.m. from a DoD employee to various addressees, quoting a

chain of other emails.  Six pages.  UNCLASSIFIED.  Returned to

DoD, with the request to withhold portions under exemption

(b)(6).

Document No. D10 is an e-mail dated April 9, 2007 at

12:03 p.m. from a Department of State employee to several DoD

and Department of State addressees, forwarding an e-mail

message from an official in the U.S. Embassy in Madrid.  Two

pages.  UNCLASSIFIED.  Denied in part.  Exemption (b)(6).


These documents are all e-mail messages that concern a

request for guidance on how to respond to press inquiries

concerning the reported June 10, 2006 deaths of three
Guantanamo detainees, or, in the case of Document D10, a
summary of material subsequently published by the press.  Most
of these emails branch from the same email conversation, and
so contain many portions of substantially identical text.  As
a result, many of the Department of State excisions from these
documents are identical.  The only information withheld by the
Department of State in these documents is the names, email
addresses, titles, and/or telephone numbers of government
personnel involved in the email chain.  As the government
employees working on these issues have a privacy interest in
avoiding potential harassment or retaliation, and as the
release of their personally identifying information would not
significantly further any public understanding of the
government's activities, the withheld information is exempt
under FOIA exemption (b)(6).  Because only the personally
identifying information described above has been withheld by
the Department of State, there is no additional non-exempt
information that can be meaningfully segregated from these
withholdings and released.  DoD is describing separately its
own withholdings from these documents, including the
withholdings under exemption (b)(2).

## CONCLUSION

17.    In summary, seven Department of State documents and four DoD documents containing Department of State information were referred by DoD for review by the Department of State. Of these eleven documents, the Department of State withheld five in part, withheld one in full, released one in full, and returned the remaining four documents to DoD with the request that DoD withhold certain information in three of them.   All of the documents addressed herein have been carefully reviewed for reasonable segregation of non-exempt information from the material withheld by or at the request of the Department of State, and I have determined that no segregation of meaningful information in the withheld material can be made without disclosing information warranting protection under the law.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed this _2/st_ day of August 2008.


Margaret P. Grafeld

*Dickstein Shapiro v. Department of Defense, et al.*
*Grafeld Declaration*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DICKSTEIN SHAPIRO, LLP,     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
|     v.     ) | Civil Action No. 08-CV-226 (PLF) |
|     ) | |
| U.S. DEPARTMENT OF DEFENSE,     ) | |
| ET AL.     ) | |
|     Defendants.     ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**REGARDING VARIOUS DEPARTMENT OF DEFENSE COMPONENTS**

1.      Pursuant to local rule 7.1(h), defendants, the United States Department of Defense and the Department of the Navy ("defendants" or "DoD"), submit the following statement of material facts as to which there is no genuine issue:

2.      Salah Ali Abdullah Ahmed Al Salami ("Al Salami") was an alien who was detained by DoD at Guantanamo as an enemy combatant, which is defined as an individual who was part of or who supported Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners.   See CSRT Implementation Order (July 14, 2006), Encl. (1), sec. B. (available at http://www.defenselink.mil/news/Combatant_Tribunals.html).

3.      On June 14, 2007,  plaintiff submitted a FOIA request to DoD's FOIA office for records relating to Al Salami.  Specifically, the FOIA request sought

> all documents, including but not limited to photographs, video tapes, memoranda, reports, and electronic mail or other digital media, relating in

> any way to the detention at Guantanamo Bay, Cuba of Salah Ali Abdullah
> Ahmed Al Salami, whose ISN at Guantanamo Bay was 693, as well as all
> documents, including but not limited to photographs, video tapes,
> memoranda, reports, and electronic mail or other digital media, relating in
> any way to the death at Guantanamo Bay, Cuba of Salah Ali Abdullah
> Ahmed Al Salami, ISN 693, at Guantanamo Bay, in June 2006.

Complaint Exhibit 1; Kammer Decl. Exhibit 1.  Shortly thereafter, DoD's FOIA office forwarded

plaintiff's request to the Naval Criminal Investigative Service ("NCIS"). NCIS received the

request on July 19, 2007.

4.    On August 16, 2007, Chris D. Connor, Lieutenant Commander, Judge Advocate

General's Corps, U.S. Navy, denied the request based on Exemption 7(A), 5 U.S.C. §

552(b)(7)(A), because the information sought pertained to a pending law enforcement

investigation, and release of the details of the investigation could be reasonably expected to

interfere with law enforcement proceedings.  Complaint Exhibit 3.

5.    On October 11, 2007 plaintiff appealed the denial of the request to the Office of

the Judge Advocate General.  Complaint Exhibit 4.  On January 18, 2008, James A. Protin,

Commander, Judge Advocate General's Corps, U.S. Navy, affirmed the NCIS' denial of plaintiff's

request.  Complaint Exhibit 7.  On February 27, 2008, plaintiff filed the Complaint in this action

in U.S. District Court.

6.    On May 12, 2008, the NCIS officially closed its investigation into the death of Al

Salami.

Ceglio Declaration, ¶ 11.

7.    The DoD Office of Freedom of Information tasked the following DoD

Components to search for documents:  Joint Task Force - Guantanamo Bay through the U.S.

Southern Command, the Armed Forces Institute of Pathology through the Office of the Surgeon General;  the DoD Office of General Counsel; the Office of the Assistant Secretary of Defense for Detainee Affairs; the Criminal Investigation Task Force; the Naval Criminal Investigative Service; The Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC");.  Kammer Decl. ¶ 4; Reheuser Decl. ¶ 4.

8.      The United States Central Command ("Centcom") and the Defense Intelligence Agency ("DIA") reviewed documents that were referred to them by the DoD Office of Freedom of Information.  Scott Declaration ¶ 2; Williams Decl. ¶ 5.

9.      In addition, two outside agencies were referred responsive records that either originated with them or contained information that originated with them: the Department of State; and the FBI.  Grafeld Decl. ¶ 4; Hardy Decl. ¶¶ 5-6.

10.      Defendant  has withheld responsive documents under FOIA Exemptions 1, 2, 3, 5, 6 and 7.  The bases of the withholding are fully explained in the declarations attached to the motion for partial summary judgment.  The withheld documents are also described in detail in the *Vaughn* indexes, attached as exhibits to their respective declarations.

Dated: August 22, 2008                          Respectfully submitted,

                                                GREGORY G. KATSAS
                                                Assistant Attorney General

                                                JEFFREY A. TAYLOR
                                                United States Attorney

                                                JOHN R. TYLER
                                                Senior Trial Counsel

                                                _____ */s/* William B. Jaffe _____
                                                WILLIAM B. JAFFE
                                                Federal Programs Branch, Civil Division

United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Tel: (202) 353-7633
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2008, a true and correct copy of the foregoing

Statement of Material Facts in Support of Motion for Summary Judgment was served via ECF

upon plaintiffs' counsel of record at the address listed below:

David L. Engelhardt, Esq.
Lisa M. Kaas, Esq.
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, D.C. 20006

*Counsel for Plaintiff*

Dated: August 22, 2008

<u>s/ William B. Jaffe</u>
WILLIAM B. JAFFE