UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **DICKSTEIN SHAPIRO LLP** | ) ) ) | |
| *Plaintiff*, | ) ) | |
| *v.* | ) ) | Case No. 1:08-cv-00226-FPS |
| **DEPARTMENT OF DEFENSE**, *et al.*, | ) ) ) | |
| *Defendants*. | ) ) | |

### SUPPLEMENT TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR *IN CAMERA* REVIEW

Plaintiff Dickstein Shapiro LLP respectfully submits this supplement to its briefs in opposition to Defendants' Motion for Summary Judgment and in support of Plaintiff's Cross-Motion for *In Camera* Review in this FOIA action (Docs. 16, 26). The purpose of this supplement, as explained in the parties' joint status report of March 23, 2010 (Doc. 45), is to "updat[e] the statement of facts for this case and explain[] how the records recently reviewed by Defendants fit within the parties' pending cross-motions." Accordingly, this supplement will account for the additional records Defendants have released, and the revised *Vaughn* indices and declarations they have filed, in response to the Court's Order of December 22, 2009 (Doc. 30). Despite Defendants' revised responses, their justifications for their claimed FOIA exemptions remain inadequate for the same reasons set forth in Plaintiff's earlier briefs. Therefore, Plaintiff will not belabor this supplement with repetition of the same legal argument.

### BACKGROUND

This litigation stems from a FOIA request dating back nearly three years, to June 2007. As time has worn on, suspicions have only grown about the veracity and completeness of

the information the government has made public concerning the three detainee deaths at Guantanamo in June 2006.[1] Despite this litigation and the public outcry for *facts* about the deaths, Defendants have continued their mechanical reliance upon various FOIA exemptions to avoid full disclosure. Briefing concluded in December 2008 in this action explained why Defendants' showing in support of their claimed exemptions was vague, confusing, internally inconsistent, and inadequate, and why, therefore, summary judgment was inappropriate. (*See* Docs. 16, 26.) Plaintiff also moved for *in camera* review of at least a sample of those documents being withheld so that the Court could more meaningfully evaluate the merits of Defendants' claimed exemptions. (*Id.*) On December 22, 2009, this Court ordered Defendants to file a revised *Vaughn* index providing "as much clarification on the exemptions as possible" and "any revisions that would be as a result of administrative policy or changes to the law" since Defendants' original submissions. (Doc. 30.)

In response to the Court's Order, Defendants have, with minor exceptions, either re-submitted the same kind of inadequate and piecemeal declarations or indices, or simply refused to comply. Defendants filed their revised submissions on February 1, March 1, and March 9, 2010, and released a total of 304 pages of various components' records, which were received by Plaintiff on three CDs with no covering correspondence on March 5, 12, and 23, 2010. As explained in Plaintiff's supplement (Doc. 46) to the joint status report filed March 23, 2010, after tens of hours spent attempting to reconcile the now more than *four dozen* separate indices and

---

[1]   *See generally* Mot. for Reconsideration, *Al-Zahrani v. Rumsfeld*, No. 09-cv-00028 (ESH), Doc. 27 (D.D.C. filed Mar. 16, 2010); Scott Horton, The Guantanamo "Suicides": A Camp Delta sergeant blows the whistle, Harper's, Jan. 18, 2010, *available at* http://www.harpers.org/ archive/2010/01/hbc-90006368, and as Exhibit to Mot. to Amend Compl., *Al-Zahrani v. Rumsfeld*, No. 09-cv-00028 (ESH), Doc. 28-1 (D.D.C. filed Mar. 16, 2010) (revealing military witness accounts conflicting with official story of coordinated "suicides" in the cell block and suggesting instead that deaths resulted from violent interrogation tactics and/or torture at a previously-unacknowledged government installation).

declarations Defendants have filed (approximately *three dozen* of which comprised the confused state of the record even before the Court's order to revisit them) with the records they have withheld in whole or in part, or released in full, Plaintiff still cannot make sense of Defendants' fragmented documentation.

**UPDATED FACTS BEARING ON THE PARTIES' MOTIONS**

This section is organized by component and describes for each: (1) Plaintiff's position with regard to the component's submission as of the briefing concluded in December 2008; (2) the component's 2010 revised submission, if any; and (3) any resulting changes to what remains in dispute.[2]

I. JTF-GTMO

Encompassed within the submission of Joint Task Force – Guantanamo ("JTF-GTMO") are the records of a number of different components: the J-3 Directorate of Operations, the Joint Detention Group, the Joint Intelligence Group, and the Joint Medical Group. *See* Decl. of Rear Adm. Thomas H. Copeman III (Doc. 33-2) ("Copeman Decl.") ¶ 4. In addition, the 2008 JTF-GTMO declaration also addressed records of SOUTHCOM and the Army Regulation (AR) 15-6 death investigation. Decl. of Rear Adm. David M. Thomas, Jr. (Doc. 13-9) ("Thomas Decl.") ¶ 43. Examples of the records at issue, identified in Plaintiff's earlier briefing, include but are not limited to investigative photographs, Information Reports, Summary Interrogation Reports, and Memoranda for the Record, for which the components relied primarily on Exemptions 1 and 7(E) to justify their withholding.

Instead of submitting a revised index or declaration providing more detail about the components' claimed exemptions as ordered by the Court, JTF-GTMO has submitted a new

---

[2]   On the basis of the submissions by DIA and AFIP, whose documents appear to comprise 12 pages, Plaintiff does not consider records from those agencies to remain in dispute.

3

declaration which states: "JTF-GTMO will not be making another declaration, but will rely on the original declaration filed in the case, as well as all submitted information." Copeman Decl. ¶ 6. This new declaration notes, without detail, the components' reliance on Exemptions 1, high 2, 3, and 6, but omits any mention of Exemption 7(E) or others. *Id.* ¶ 5. No revised *Vaughn* index was provided to replace the six different ones filed by the various JTF-GTMO components in 2008, so there has been no effort to revise the exemption explanations as they are alleged to apply to specific records being withheld. There is also no mention whatsoever in the new declaration of the SOUTHCOM and AR 15-6 records; those records are completely absent from Defendants' revised submissions. Thus, there is no change in Plaintiff's position as to these components' records as a result of Defendants' response to the Court's December 22, 2009 Order.[3]

II.  NCIS

According to the original declaration of the Naval Criminal Investigative Service ("NCIS"), that agency withheld a number of documents pursuant to Exemptions 2 and 7. *See* Decl. of Joseph P. Ceglio (Doc. 13-7) ("Ceglio Decl.") ¶ 14. Plaintiff disputed its justifications,

---

[3] In addition, and as noted in Plaintiff's supplement (Doc. 46) to the joint status report, JTF-GTMO apparently has submitted *in camera* affidavits in lieu of the revised and clarified index ordered by the Court (Doc. 42 at 3 n.1; *see also* Doc. 39 at 3 n.2). To the extent that these affidavits are unavailable to Plaintiff, they cannot effectively be challenged – in particular because the components' *public* declarations are inadequate to support their claimed exemptions. *See Armstrong v. Exec. Ofc. of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996) (noting that *in camera* affidavits generally are disfavored). It controverts the adversarial process to permit the only justification supporting these components' nondisclosure under FOIA to be something inaccessible to Plaintiff. Accordingly, Plaintiff opposes this *ex parte* submission and considers such affidavits unresponsive to the Court's order. Should the Court give any consideration to these affidavits, Plaintiff requests that it be provided a copy of them. *See id.* at 580-81 ("[W]hen a district court uses an in camera affidavit, it must both make its reasons for doing so clear and make as much as possible of the in camera submission available to the opposing party. These procedures ensure that the use of such affidavits has the smallest possible negative impact on the effective functioning of the adversarial system."), citing *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984).

including specifically as to records concerning DoD guidelines for detainee handling and facility security. In response to the Court's December 22, 2009 Order, NCIS submitted a new declaration of Lt. Shaka Thorne, which described how the agency's original *Vaughn* index was revised "by adding a descriptive word/s following each description of the exemption taken for every document listed in the Vaughn index provided." Decl. of Shaka L. Thorne (Doc. 33-5) ("Thorne Decl.") ¶ 6. These "descriptive word/s" are: "1) Special Agent; 2) Name; 3) Social Security Number; 4) Detainee Number; 5) Detainee Name; 6) Initials; Standard Operating Procedure; and 7) Interpreter." *Id.* (despite the declaration's typo, there are actually 8 – "Initials" and "Standard Operating Procedure" being separate descriptors). Those descriptors are the only clarifications added to the agency's index (Doc. 33-6), which Lt. Thorne sums up by stating "All of the original exemptions remain valid." Thorne Decl. ¶ 7. This example is indicative of all that NCIS has done to "clarify" the bases for its claimed exemptions.

       Moreover, Lt. Thorne's declaration omits entirely *any* explanation of the bases for the claimed exemptions, and in that regard is even less helpful that the original Ceglio Declaration. In addition, the index notes that a substantial number of documents were referred to other components (Doc. 33-6), one of which is SOUTHCOM, but there is no new SOUTHCOM index or declaration. Withholding of records such as these remains unjustified. Finally, there still are redactions in the released NCIS records that remain unjustified, *i.e.*, the *Vaughn* index contains *no* asserted exemption *or* explanation (*see* Doc. 33-6, records bates numbered 1297-1301, 1305-1309, which appear to be photographs redacted upon release with the label "b(2), b(7)(C), b(7)(E)" but for which the *Vaughn* index is blank).

       For these reasons, there is no change in Plaintiff's position as to the NCIS records as a result of Defendants' response to the Court's December 22, 2009 Order.

III.     CITF

        The Criminal Investigation Task Force ("CITF") has withheld records, in whole or in part, including photographs, Reports of Investigative Activity, CITF Memoranda, Investigative Summaries, Summaries of Case Files, and Intelligence Assessments, asserting a variety of FOIA exemptions. Plaintiff has contested CITF's justifications for these withholdings, in particular their application of Exemption 1. CITF has now filed four different declarations in this action (Docs. 13-1, 24-2, 33-9, 40-4), plus the March 9, 2010 Declaration of Rear Adm. Thomas H. Copeman III (Doc. 42-1) ("Second Copeman Decl.") purports to justify, as the original classification authority, the withholding of certain CITF documents under Exemption 1.[4] No revised *Vaughn* index has been filed. Furthermore, the Cox and Copeman Declarations offer *no* additional detail as to the claimed exemptions. Therefore, Plaintiff believes the same deficiencies identified in its earlier briefing remain a problem.

        In addition, Plaintiff is concerned about records that CITF recently has determined should be released. First, the Feb. 2010 Cox Declaration (Doc. 33-9, at ¶ 7) indicated that a further portion of the document numbered CITF 130 would be released due to withdrawal of Exemption 5; however, this record has not been produced to Plaintiff in lesser-redacted form. Second, CITF's release of Reports of Investigative Activity is inexplicably limited, in nearly every instance, to only the *first page* of such reports. Neither CITF's declarations nor its original *Vaughn* index explain why succeeding pages have been withheld in full. All of these records should be released immediately.

---

[4]    Notably, each time CITF has revisited its withholding, fewer exemptions have been asserted and/or additional records or portions of records have been released. *Compare* Decl. of Lt. Col. Jefferson Kaster (Doc. 13-1, Aug. 2008, asserting Exemptions 1, 2, 3, 5, 6, 7) *with* Decl. of Capt. Tyson Kindness (Doc. 24-2, Nov. 2008, asserting Exemptions 1, 6, 7) *and* Decl. of David Troy Cox (Doc. 33-9, Feb. 2010, asserting Exemptions 1 and 3, withdrawing 5) *and* Second Decl. of David Troy Cox (Doc. 40-4, Mar. 2010, asserting Exemptions 3, 6, 7, withdrawing 2). This confusion alone calls into question CITF's claimed exemptions.

6

IV.     OARDEC

In August 2008, the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC") released in part a 10-page ARB-3/CSRT Schedule, portions of which it later determined it had erroneously withheld and re-released to Plaintiff. *See* Second Decl. of Margaret A. Johnson (Doc. 24-4) ("Second Johnson Decl.") ¶ 4. There is no issue remaining as to those records. However, 32 additional pages of heavily redacted ARB and CSRT records were released in November 2008, as to which OARDEC asserted Exemptions 1, 2, 3, 5, 6, and 7. Second Johnson Decl. ¶¶ 2-3. No revised declaration or *Vaughn* index concerning these records appears to have been provided in response to the Court's Order. Plaintiff therefore relies upon its earlier legal arguments against application of Exemptions 1, 2, 5, and 7 as to these records.

OARDEC also recently has addressed more than 400 pages of CSRT and ARB records which, due to apparent oversight, were not reviewed in response to the original FOIA request. *See* Decl. of Capt. Gregory P. Noone (Doc. 33-7) ("Noone Decl.") ¶ 16. Most pages were referred to other agencies for release decisions. *Id.* OARDEC has asserted a variety of exemptions for the records it has withheld, *id.* ¶¶ 17-18, yet the Noone Declaration offers only the same sort of boilerplate language concerning these exemptions as complained of in Plaintiff's earlier briefing. *Id.* ¶¶ 23-29. The same is true of the Second Copeman Declaration (Doc. 42-1), which purports to justify the application of various exemptions to certain OARDEC records. OARDEC also filed a revised *Vaughn* index purporting to cover "document[s] denied in part" (Doc. 33-8), but the numbering does not match up with that appearing on the documents released to Plaintiff in March 2010 (which arrived in two separate productions) or at any other time. Nor does the index provide any detail whatsoever to enable evaluation of the claimed exemptions. In fact, it is not tailored to the documents at all; rather, it lists a generic description of each claimed exemption, and then lumps together all the document numbers for which that exemption is

7

asserted. Because Plaintiff cannot ascertain to what documents the exemptions are claimed to apply, it must reassert its previous arguments as to the inadequacy of justification for all of them.

Yet another index (Doc. 42-2), pertaining to the "referral documents" (*see* Doc. 42, at 3), was filed in final form on March 9, 2010 and purports to cover records of OARDEC and other components (presumably those that received referral records from OARDEC and CITF). Unfortunately it contains the same inadequate, boilerplate language regarding the asserted exemptions. Plaintiff therefore relies upon its earlier arguments concerning the inadequacy of Defendants' justifications for their claimed exemptions, including Exemptions 1, 2, and 5, with respect to these newly-reviewed OARDEC records.[5]

V.      CENTCOM

The U.S. Central Command (CENTCOM) originally released an unredacted copy of Al Salami's passport and redacted Summary Interrogation Reports (SIRs), asserting Exemptions 1, 2, and 6 as to those redactions. First Decl. of Jacqueline J. Scott (Doc. 13-6) ¶¶ 3-5. Plaintiff challenged the application of Exemptions 1 and 2 "high." In February 2010, CENTCOM withdrew its reliance on Exemptions 1 and 2 and indicated that the SIRs would be re-released, some in full and some with fewer redactions (only under Exemption 6). Second Decl. of Jacqueline J. Scott (Doc. 33-3) ¶¶ 4-6. Then, in March 2010, CENTCOM changed its mind again and re-asserted Exemption 2 "high" as to portions of the SIRs. Third Decl. of Jacqueline J. Scott (Doc. 40-3) ¶ 8. The re-released SIRs subsequently were received by Plaintiff on March 5, 2010. Plaintiff continues to contest the application of "high 2," specifically, to the "approaches" described in the SIRs. This is the only dispute remaining as to the CENTCOM records.

---

[5]   The "referral documents" index does not assert Exemption 7 as to any OARDEC documents, despite its general assertion in the Noone Declaration (Doc. 33-7), ¶ 29, and the revised OARDEC index (Doc. 33-8). Its application is contested to the extent it actually is asserted.

8

VI.     ODA/DTP and Department of State

The Office of Detainee Affairs (ODA) originally released 26 pages of redacted records, including memoranda and e-mails, asserting Exemptions 5 and 6 as to certain portions. Decl. of Sandra Hodgkinson (Doc. 13-4) ¶¶ 6-7 ("Hodgkinson Decl."). Plaintiff challenged the application of Exemption 5 to these records. ODA's submission was unclear because two conflicting *Vaughn* indices were provided for the same records – one indicating that pages 4-26 would be denied in full, and another indicated that the pages would be released in part. In fact, the documents were released, but corresponded to neither of the two indices. Most pages were denied in full, but a few were released in part. Some redactions were labeled (b)(5) or (b)(6), but most were labeled "Department of State Information." The Hodgkinson Declaration (at ¶ 6) and the two indices made reference to referral of portions of records to the Department of State.

The Department of State submitted the Declaration of Margaret P. Grafeld (Doc. 13-19) ("Grafeld Decl."), who responded as to *42 pages* of materials referred to State by DoD. Grafeld Decl. ¶ 4. The Department of State did not provide a separate index of these records nor specify from which components they were referred, but apparently, given the number of pages, they were not only from ODA. Because of the full-page redactions in the ODA documents and the different numbering systems used by the different agencies, it is impossible to determine whether or which documents (between those released by ODA and those by State) are the same. (*See* Doc. 16 at 23 and n.17.) Like ODA, State asserted Exemptions 5 and 6. Grafeld Decl. ¶¶ 7-12. The redactions in the documents released in part by State, however, were pursuant to Exemptions 2 and 6, neither of which Plaintiff challenged. Plaintiff continues to contest the application of Exemption 5, which was asserted as to one document withheld in full. *Id.* ¶ 8.

The Department of State failed to provide a revised index or declaration pursuant to the Court's Order.[6]

In February 2010, the Office of Detainee Policy (DTP), which we presume to be the new name of ODA, submitted a declaration and revised *Vaughn* index covering the same 26 pages of records. Second Decl. of Jay Alan Liotta (Doc. 33-4). The revised index, however, asserts Exemption 5 only as to one document, ODA 3, which was denied in full (and remains at issue). Only Exemption 6 is asserted as to the remaining redacted records, ODA 4-26. Thus, as an example, ODA 4 would now appear to be at least partly, if not fully, releasable, because Exemption 5 is no longer claimed, and that page bears a full-page redaction labeled only "(b)(5)." But no records have been re-released to Plaintiff by ODA/DTP (or the Department of State). These components should make these records available.

Finally, in March 2010, DTP issued yet another declaration, as an original classification authority, describing documents apparently referred to DTP from another component, potentially OARDEC (although this is not explained). Decl. of William K. Lietzau (Doc. 40-2) ("Lietzau Decl."). A *Vaughn* index is attached listing two page ranges, "Dickstein 98-104" and "Dickstein 165-187," which are heavily redacted "DoD assessments" submitted to ARBs. DTP asserts Exemptions 1 and 6 as to these records. Lietzau Decl. ¶¶ 6-14. In light of the non-specific, boilerplate justification provided in the Lietzau declaration and index as to Exemption 1, Plaintiff continues to contest its application to these records.

---

[6] The bare assertion of counsel for Defendants (Doc. 33, at 2-3) that four agencies, including the Department of State and the FBI, "have determined that there is no additional information to be added to clarify the exemptions that they are claiming" and "there is no additional information to be released" is insufficient to satisfy these agencies' obligations in this litigation. Defendants offer no explanation as to why certain components – *e.g.*, JTF-GTMO, NCIS, OGC – revised their declarations and/or indices despite providing no further detail, while other agencies failed to do so.

VII.    FBI

The FBI was referred records from DoD and the Navy for review in May 2008 and determined that only 12 pages were responsive to Plaintiff's FOIA request. First Declaration of David M. Hardy (Doc. 13-18) ¶¶ 5, 6. These pages were released but almost totally redacted, pursuant to claimed Exemptions 1, 6, and 7. No index of the records was provided, and nowhere does the Hardy Declaration describe the contents of the documents. From what little remains unredacted, the records appear to relate to interviews. Plaintiff challenged the FBI's assertion of Exemption 1 (Doc. 26 at 10 and n.10). In February 2010, the FBI failed to comply with the Court's December 2, 2009 Order to submit a revised index; it submitted nothing.[7] Thus, Plaintiff's position is unchanged as to the FBI records.

In March 2010, the FBI submitted a declaration to address new records that were referred to it during February 2010. Second Declaration of David M. Hardy (Doc. 40-1) ¶ 5. Once again, no separate index was provided, and the declaration again fails to describe the contents of the records. Mr. Hardy indicates that a total of 53 pages were referred to the FBI, 31 pages of which contained FBI-originated or classified material the withholding of which is discussed in the declaration, and the remaining 22 pages of which were to be addressed by "DoD's declaration" (as there is no "DoD declaration," it is unclear where these 22 pages are addressed). *Id.* As to the 31 pages covered in the Hardy Declaration, the FBI asserts Exemptions 1, 2, 6, and 7. However, ***none*** of these 31 pages of records, which the Hardy Declaration indicates were to be released in part (*id.* ¶¶ 7 and n.4, 19), have been released to Plaintiff.[8] Thus, Plaintiff cannot evaluate the FBI's claimed exemptions and must therefore contest all of them. The records should be ordered released immediately.

---

[7]    *See supra* note 6.

[8]    Defendants' combined index of "referral documents" filed March 9, 2010 (Doc. 42-2) seems to indicate that 4 pages of FBI classified records were denied in full pursuant to Exemptions 1, 2, 5, and 6, which may explain their failure to be released (despite that the Hardy

11

VIII.    OGC

DoD's Office of General Counsel (OGC) originally reviewed 83 pages of records, asserting Exemptions 2, 5, and 6 in its declaration and *Vaughn* index as to those withheld in part or in full.  First Decl. of Michael E. Reheuser (Doc. 13-3) ¶¶ 6-7.  Plaintiff contested Defendants' justifications concerning Exemption 5.  In connection with Defendants' November 2008 reply and opposition to Plaintiff's cross-motion, OGC submitted a revised declaration in which Mr. Reheuser endeavored to fix his previous omission of any representation as to segregability, and also asserted that certain records were privileged.  Second Decl. of Michael E. Reheuser (Doc. 24-1) ¶ 4.  In February 2010, OGC submitted a revised declaration containing the same justifications for withholdings as previously asserted, and added a statement that all exemptions remain valid under "the Obama administration's guidance."  Third Decl. of Michael E. Reheuser (Doc. 33-1) ¶ 10.  OGC's *Vaughn* index was not revised, however, and no further explanation is provided as to its claimed exemptions; therefore, Plaintiff's position remains unchanged.

## **CONCLUSION**

Plaintiff respectfully submits that, despite Defendants' revised submissions, summary judgment remains inappropriate for the reasons set forth in Plaintiff's prior briefs (Docs. 16, 26), and Plaintiff continues to seek *in camera* review of withheld records pursuant to the representative sampling procedures it has recommended in the joint status report filed March 23, 2010 (Doc. 45).

---

Declaration implied they were redacted only in part, and pursuant only to Exemption 1).  However, Defendants' "referral" index omits any reference to the other 27 pages of FBI-originated records which were to be released in part.

Dated: April 7, 2010					Respectfully submitted,

                 /s/ Lisa M. Kaas
             David L. Engelhardt (DC429886)
             Lisa M. Kaas (DC492302)
             DICKSTEIN SHAPIRO LLP
             1825 Eye Street, NW
             Washington, DC  20006-5403
             Tel. 202-420-2200
             Fax 202-420-2201

             *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of April, 2010, a true and correct copy of the foregoing document was electronically filed and served on counsel below via the Court's CM-ECF system:

- **David L Engelhardt**
  engelhardtd@dicksteinshapiro.com

- **Joseph Charles Folio , III**
  joseph.folio@usdoj.gov

- **Terry Marcus Henry**
  terry.henry@usdoj.gov

- **Lisa Marie Kaas**
  kaasl@dicksteinshapiro.com

- **John Russell Tyler**
  john.tyler@usdoj.gov

    /s/ Lisa M. Kaas
Lisa M. Kaas